# EXHIBIT D

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE



## ADMINISTRATIVE REVIEW
## &
## RISK MANAGEMENT

## DIVISION

## Offender Grievance Operations Manual

## (Revised 01/12)

## OFFENDER GRIEVANCE OPERATIONS MANUAL
## TABLE OF CONTENTS

**I.     Introduction**

*    History of the Offender Grievance Program

*    Mission Statement, Philosophy, and Goals

*    Relationship to Ombudsman


**II.    Authority**

*    Board Policy 03.77, "Offender Grievances"

*    Administrative Directive 03.82, "Management of offender Grievances"

*    Texas Statutes Applicable to the Offender Grievance Procedure

     *    Government Code §§ 493.014, 500.002, 501.007 and 501.008

     *    Civil Practice and Remedies §§ 14.005 and 30.006

*    *Prison Litigation Reform Act* (1995)

*    *Civil Rights of Institutionalized Persons Act* (1980)

*    Legal Liabilities

     *    Spears and Chapter 14 Hearings

*    American Correctional Association (ACA) Standards


**III.   Principles and Practices**

*    Code of Ethics

*    Confidentiality

*    Grievable and Non-Grievable Issues

*    Available and Non-Available Remedies

*    Informal Resolution

*    Access

*    Translating Grievances Written in Spanish

*    Guidelines for Investigations

*    Guidelines for Written Responses

*    Departmental Involvement

*    Networking – Sources of Information

*    Grievance Time Limits

\*      Reprisals

\*      Records Management

    \*   Step 1 Grievances

    \*   Step 2 Grievances

    \*   Records Retention and Purging of Files

    \*   Mailing Options

**IV.   Step 1 – Grievance Processing**

\*      Flow Charts (Emergency, Specialty, Regular)

\*      Collection

\*      Sorting and Prioritizing

\*      Issue Codes

\*      GR00 Tracking System

\*      Screening Criteria

\*      Grievances That Do Not Qualify for Processing

\*      Grievances That Qualify for Processing

\*      Transferring a Grievance to the Unit of Incident – Other Transferred Inmate (OTI)

\*      Categories of Grievances

    \*   Emergency

        \*   Fear of Another Offender

        \*   Fear of Staff

        \*   Sexual Abuse and Sexual Assault

        \*   Medical Emergency

        \*   Extortion

    \*   Specialty

        \*   Excessive or Unreported Use of Force (UOF)

        \*   Office of Inspector General (OIG) Referrals

        \*   Harassment/Retaliation for Exercising Access to Courts or Use of Grievance Procedure

        \*   Medical (Non-Emergency) – ***See Chapter IX***

        \*   Americans with Disabilities Act (ADA)

        \*   Religion

        \*   Impermissible Conduct by Offenders

    \*   Regular

* Outcome Codes
* Final Step 1 Processing

**V.**   **Step 2 Grievance Processing**

* Flow Charts (Emergency, Specialty/Regular)
* Collection
* Sorting/Prioritizing Grievances
  * Emergency
  * Specialty
  * Regular
* Issue Codes
* GR00 Tracking System
* Screening Criteria
* Grievances That Do Not Qualify for Processing
* Grievances That Qualify for Processing
* Office of Inspector General (OIG) Referrals
* Medical (Non-Emergency) – ***See Chapter IX***
* Staff Use of Slurs / Hostile Epithets Referrals
* Outcome Codes
* Final Step 2 Processing

**VI.**   **Processing Property Claims**

* Step 1 Property Investigation
* Step 2 Property Appeals
* The Payment Process

**VII.**   **Processing Disciplinary Appeals**

* Processing Disciplinary Appeals
  * Basic Grounds for Disciplinary Appeals
  * Guidelines
* Major disciplinary Case
  * Documentation Required
  * Additional Documentation Required
* Minor Disciplinary Hearing

        *   Documentation Required

        *   Additional Documentation Required

*   Reviewing for Due Process Violations

*   Reviewing for Sufficient Evidence

*   Reviewing Confidential Informant Testimony

*   Disciplinary Penalties

*   Remedies Available for Disciplinary Appeals

*   Step 2 Appeals

*   Rehearing the Disciplinary Case

*   Processing the Correction

*   Instructions for Completing the Request for Disciplinary Case Correction (E-Form)

**VIII.   Processing Transportation Grievances**

*   Grievances Relating to Property Issues

*   Grievances Relating to Operational Issues and Actions of Transportation Staff

*   Step 1 Transportation Grievance Processing

*   Step 2 Transportation Grievance Processing

**IX.   Processing Medical Grievances**

*   Step 1 Medical Grievances

*   Step 1 Medical Multiple Issue Grievances

*   Step 2 Medical Grievances

*   Step 2 Medical Multiple Issue Grievances

**X.   Meetings / Training / Program Monitoring**

*   Staff Meetings

*   Training for Unit Grievance Staff

*   Training for Regional Grievance Staff

*   Training for Central Grievance Office Staff

*   Offender Grievance Program Monitoring

     *   Bi-Annual Reviews

     *   Unit-Level Operational Reviews

     *   Division-Level Operational Reviews

     *   Offender Grievance Operations Manual Annual Reading

     *   Additional Mechanisms

**XI.**   **Clerical Duties**

    *         Unit Grievance Clerk / Step 1

    *         Central Grievance Clerk / Step 2

**Appendix**

A      Grievance Forms List

B.     Instructions on How to Write and Submit Grievances (English / Spanish) – OG-02

C.     Non-Grievable Issues Return Form

D.     Issue Codes Table of Contents / Issue Codes List

E.     Outcome Codes

F.     Step 1 Offender Grievance Form, English and Spanish – I- 127

G.     Step 2 Offender Grievance Form, English and Spanish – I-128

H.     Grievance Investigation Worksheet – OG-01

I.      Emergency Checklist – OG-004

J.      Fact Sheet for OIG Investigation OG-009

K.     Disciplinary Worksheet and Document Checklist – OG-005

L.     Documents and Forms Required for Investigation of Medical Grievances Checklist

M.    Notice of Extension – OG-007

N.     Property Settlement Agreement Form

O.     Monetary Reimbursement Agreement Form

P.     Use of Force Transmittal Cover Letter.

Q.     AD-02.29, "Records Management", Attachment, A – Records Disposition Log

R.     Staff Use of Slurs or Epithets Referral Form

S.     New Grievance Employee Training Verification Form

T.     Offender Grievance Operations Manual Employee Verification Form

         E-mails, Memos, Amendments, and Other Similar Documents

# INTRODUCTION

An effective grievance program extends far beyond the staff of the grievance department. It involves an ongoing commitment to solving problems by each staff member at every unit. One sign of a well-managed correctional facility is the sensitivity of staff to the problems and complaints of offenders under their care. A large portion of complaints being resolved at the lowest level characterizes an effective grievance mechanism.

The grievance program provides a variety of supportive and protective functions. It gives offenders an alternative to confrontation, thereby increasing facility safety and decreasing offender aggression. The program offers the offender a less formal alternative to litigation, thus saving taxpayers the cost of defending the agency in court. Grievances, when taken collectively, provide a wealth of insight into the daily operations of the unit. Grievances are self-monitoring tools, which help reduce the need for external monitoring, such as the judicial oversight, which the Texas Department of Criminal Justice (TDCJ) has experienced in the past.

## HISTORY OF OFFENDER GRIEVANCE PROGRAM

On July 14, 1975 the Texas Department of Corrections Litigation Support Division initiated a formal procedure for the review of offender grievances patterned after existing programs in other states.  The procedure consisted of two steps:  Step 1 submitted to the warden; and Step 2 to the director.

A change in directorship to the Classification and Treatment Division coincided with the first major revision to the procedure on June 21, 1984.  This revision incorporated the provisions of the Civil Rights Institutionalized Person Act (CRIPA), 42 U.S.C. § 1997e into the grievance procedure.  That section, entitled "Exhaustion of Remedies" provided the minimum standards necessary to establish a procedure for administrative remedies and laid the groundwork for a certified grievance procedure.  After much research, discussion with Federal Bureau of Prisons staff, and numerous revisions, the Department posted notice of its intent to request certification of its grievance procedure in March of 1988.  The Texas Department of Corrections Inmate Grievance Procedure was eventually certified by the United States District Court for the Eastern and Southern Districts of Texas on May 31, 1989.

By the time of certification, the grievance procedure had evolved into a three-step process: Step 1 complaints were investigated and responded to at the unit level; Step 2 complaints were investigated and responded to in the respective regions; and Step 3 complaints were investigated and responded to at the Director's level.  Although a three-step procedure provided the agency with more opportunity to rectify problems, the process was cumbersome and time consuming.

The offender population significantly increased from 62,322 offenders in January 1994 to 98,701 offenders in January 1995.   While an increase in workloads for departmental staff was predicted, it was determined that the elimination of one step of the procedure would reduce the overall numbers of grievances being submitted.  Additionally, there was a need to consolidate and utilize resources more effectively by integrating regional grievance staff into the new Step 2 process.

On June 1, 1995 the unit grievance coordinator positions were reclassified from a lieutenant of correctional officers to non-uniformed, investigator II positions.  Administrators believed this change would further the concept of separating unit grievance staff from other unit functions.

Another critical development occurred on September 1, 1995 when the classification case manager positions were drastically reduced throughout the Agency.  Issues which offenders previously discussed and resolved with case managers were now addressed through the grievance procedure.  Finally, on September 1, 1996, the Offender Grievance Procedure was officially converted from a three-step process to a two-step process.

The grievance policy was modified in 1997 and on January 5, 1998, the Offender Grievance Procedure Automated Tracking System (GR00) was implemented.  The automated system eliminated the need for manual tracking of grievances and provided a computer generated numbering system and a means of retrieving statistical information.

In 1998, Sunset Advisory Committee recommendations were adopted to reorganize the grievance procedure to the Executive Division and the Office of Administrative Review was created.  As a result, the Offender Grievance Program and the Ombudsman Program were paralleled to share information and improve communication not only between departments, but also offender family organizations and the general public.

In 1998 offenders filed a combined 382,000 grievances at Step 1 and Step 2. By spring 1999, grievance numbers increased and the quantity became difficult to manage effectively; therefore, the quality of the program suffered. There was a growing concern that legitimate complaints could be overlooked or lost in the large numbers of non-meritorious grievances and the agency suffered because they were unable to capitalize on a wealth of information gained from offender complaints.

Administrators began studying trends and identified that offenders often submitted grievances on issues that were not grievable, could not be remedied at the appellate level, or had another mechanism for appeal. Consequently, in early 1999, the goal was to more efficiently process offender complaints.

On September 1, 1999, the Texas Board of Criminal Justice (TBCJ) and agency officials approved a plan to manage offender grievances by utilizing 11 screening criteria designed to require offenders to utilize the procedure responsibly and reduce the numbers of grievances. The anticipated result was fewer grievances filed, allowing grievance staff at all levels to focus on the quality of the investigation and the response to the offender.

As a result of these steps, the number of offender grievances was reduced by 46% the first year and have remained generally steady over time. Grievance staff is able to devote more time to investigate issues such as offender protection concerns, liberty interests as the result of disciplinary cases, and other issues that affect the lives of offenders.

Of significance to the revised Offender Grievance Procedure was the *Prison Litigation Reform Act* (PLRA) of 1995. Section 803 of this act amended the exhaustion requirements of 42 U.S.C.1997e, CRIPA as follows:

> **"SEC.7. SUITS BY PRISONERS."**
>
> > "(a) APPLICABILITY OF ADMINISTRATIVE REMEDIES. – No action shall be brought with respect to prison conditions under section 1979 of the Revised Statues of the United States (42 U.S.C.1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

In effect, this legislation negated the need for a certified grievance procedure by giving judges the latitude to require exhaustion of any and all administrative remedies prior to bringing a suit before the courts. Previously, exhaustion could only be required where a certified grievance procedure was in place. Although not required, the Texas Department of Criminal Justice grievance procedure generally follows standards established by CRIPA.

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**
**ADMINISTRATIVE REVIEW AND RISK MANAGEMENT DIVISION**
**OFFENDER GRIEVANCE PROGRAM**

---

**MISSION:**       To promote awareness and positive intervention between staff and offenders to identify and resolve issues at the lowest possible level, and to facilitate the flow of information between the units and agency leaders.

---

**PHILOSOPHY:**       Provide a means for identifying issues and facilitating corrective action, thereby contributing to a safer environment for staff and offenders.

Afford offenders a formal mechanism for review and redress of pertinent issues, and ensure them fair and timely decisions.

Provide agency administrators with current information for direct interaction and proactive planning.

---

**GOALS:**       Ensure the quality of the Offender Grievance Program.

Ensure offenders utilizing the program receive a timely evaluation and resolution by the appropriate reviewing authorities.

Assess the productivity of the grievance process and procedures.

## RELATIONSHIP TO OMBUDSMAN

The Offender Grievance Program and the Office of Ombudsman are similar in function as both process issues concerning the TDCJ Justice; however, dissimilar as defined by the recipient of the service provided.

The Office of Ombudsman provides information to the public in response to specific inquiries regarding an offender or staff.  This office responds to inquiries or complaints from individuals that are neither employed by, nor incarcerated by the TDCJ.  Most often, their contacts are from elected officials, other state agencies, family and friends of offenders, and the general public.

The responsibilities of the Office of Ombudsman include:  responding to inquiries regarding specific offenders; explaining the agency's policies and procedures; and referring the public to the most appropriate source of assistance.  In short, the Office of Ombudsman serves as a central point of contact between the agency and the public.

The Offender Grievance Program responds to formal, written complaints from individuals in the custody of the TDCJ.  The responsibility of the grievance procedure is to not only provide offenders with a fair, objective avenue to resolve complaints, but also to provide agency leaders with valuable information and statistics necessary to ensure a safe environment for staff and offenders alike.

The Office of Ombudsman and the Offender Grievance Program function as liaisons for the TDCJ.  Since many of the questions or complaints received from the public are the same as those received from offenders', continuity between the two departments is essential to reduce duplicate efforts in responding to complaints.



| Texas Department | **Number:** | **BP-03.77 (rev. 8)** |
|---|---|---|
| of | **Date:** | **December 11, 2009** |
| Criminal Justice | **Page:** | **1 of 1** |
| | **Supersedes:** | **BP-03.77 (rev. 7)** **July 13, 2007** |

# BOARD POLICY

**SUBJECT:**          **OFFENDER GRIEVANCES**

**AUTHORITY:**     Texas Civil Practice and Remedies Code §14.005 and Ch. 110; Texas Government Code §§ 493.014 and 501.008; and 42 U.S.C. § 1997e

                       References:  American Correctional Association (ACA) Standard 4-4284

**APPLICABILITY:**  Texas Department of Criminal Justice (TDCJ)

**POLICY:**

The Texas Board of Criminal Justice (TBCJ) encourages the resolution of grievances at the lowest possible level.  The purpose of this policy is to enable the development, implementation, and operation of a grievance program for offenders within the TDCJ, and to provide appropriate documentation to the courts.

**PROCEDURES:**

The resolution support manager shall establish and maintain the *Offender Grievance Operations Manual* (OGOM) to provide guidance to employees regarding the offender grievance procedure. The manual shall list those matters which are grievable, and those which are not.  Instructions on how to use the offender grievance procedure shall be established separately from the OGOM for distribution to offenders and employees.  Provisions for training, education, and implementation of the offender grievance procedure shall be established in AD-03.82, "Management of Offender Grievances" and the OGOM.

_____
Oliver J. Bell, Chairman
Texas Board of Criminal Justice



| | | | |
|---|---|---|---|
| **TEXAS DEPARTMENT** | **NUMBER:** | AD-03.82 (rev. 7) |
| **OF** | **DATE:** | January 4, 2012 |
| **CRIMINAL JUSTICE** | **PAGE:** | 1 of 9 |
| | **SUPERSEDES:** | AD-03.82 (rev. 6) December 11, 2009 |

# ADMINISTRATIVE DIRECTIVE

**SUBJECT:**      **MANAGEMENT OF OFFENDER GRIEVANCES**

**AUTHORITY:**   Texas Civil Practice and Remedies Code § 14.005 and Chapter 110; Texas Government Code §§ 493.014 and 501.008; and 42 U.S.C. § 1997e

References:  American Correctional Association (ACA) Standard 4-4284

**APPLICABILITY:**  Texas Department of Criminal Justice (TDCJ)

**POLICY:**

The TDCJ shall establish processes for the management and resolution of grievances submitted by offenders.

   DEFINITIONS:

"Emergency Grievance" is a written complaint about matters for which the disposition within regular time limits would subject the grieving offender to a substantial risk of personal injury or cause other serious or irreparable harm, such as sexual assault, life endangerment, extortion, or medical emergencies.

"Grievance" is a written complaint.

"Offender," for the purpose of this directive, is a person in the physical custody of the TDCJ.

"Reprisal" is any coercion, threat, or harassment against anyone for the use of, or participation in, the offender grievance procedure.

"Resolution Support Manager" is the position in the Administrative Review and Risk Management (ARRM) Division responsible for oversight of Access to Courts, Offender Grievance, and the Ombudsman Program.

"Specialty Grievance" is a written complaint regarding matters that require prompt attention or special processing, such as allegations of criminal acts by staff, and excessive or unreported use of force.

## PROCEDURES:

An effective offender grievance program has many valuable benefits for the TDCJ, including conflict resolution, cost savings and efficiency from improved management information, averting litigation, and minimizing judicial oversight through comprehensive self-monitoring. The following procedures shall generally guide the management and resolution of offender grievances. More specific, detailed guidelines and forms are provided in the *Offender Grievance Operations Manual* (OGOM).

I.      Grievable Issues

      A.      The interpretation and application of TDCJ policies, rules, regulations, and procedures as they apply to the offender personally;

      B.      Offender or employee action, including any denial of access to the grievance procedure;

      C.      Reprisals against offenders for submitting a complaint under the procedures of this directive;

      D.      The loss or damage of authorized offender personal property possessed by persons in the physical custody of the TDCJ and for which the TDCJ or its employees, through negligence, are the cause of any damage or loss; and

      E.      Any other matter within the authority of the TDCJ.

II.     Non-Grievable Issues

      A.      State and federal court decisions, laws, and regulations;

      B.      Parole decisions;

      C.      Time-served credit disputes, which should be directed to the Classification and Records Office, Time Section;

      D.      Matters for which other formal appeal mechanisms exist; and

      E.      Any matter beyond the control of the TDCJ.

III.     Formulation and Implementation

    A.     Changes in the offender grievance procedure shall be posted in prominent locations within each unit for the offender population.  A Spanish translation shall be available for those offenders whose primary language is Spanish.  In addition, the changes shall be explained to those offenders who are illiterate or whose primary language is neither English nor Spanish.

    B.     The resolution support manager shall develop, coordinate, and initiate training programs to ensure all employees and offenders are knowledgeable in the purpose, intent, and operation of the offender grievance procedure.

    C.     Any person having comments on the effectiveness and credibility of the offender grievance procedure may write to the resolution support manager, TDCJ, P.O. Box 99, Huntsville, Texas, 77342-0099.

IV.     Offender Accessibility

    A.     Copies of BP-03.77, "Offender Grievances" and this directive, as well as the instructions on how to use the offender grievance procedure shall be available at each unit, to include copies in the law library.  In addition, the instructions on how to use the offender grievance procedure shall be posted in prominent locations throughout the unit.

    B.     Provisions shall be made to ensure offenders who are impaired, have a disability or who speak a language that is not spoken by a substantial portion of the population are adequately apprised of the purpose, intent, and operation of the offender grievance procedure, as well as provided an opportunity to ask questions regarding the procedure.

    C.     All offenders shall be entitled to use the offender grievance procedure.

    D.     Offenders may not submit a grievance on behalf of another offender; however, assistance may be sought from an employee or another offender when necessary to communicate the issue on the grievance form.

    E.     The I-127, Step 1 Offender Grievance Form and I-128, Step 2 Offender Grievance Form shall be readily available to all offenders.

V.     Reprisal

Persons participating in the offender grievance procedure shall not be subject to reprisal. Allegations of this nature may be pursued by an offender through the offender grievance procedure.

VI.     Responsibility

A.      The resolution support manager shall direct, administer, supervise, and manage the implementation and operation of the offender grievance procedure without interference by any employee.

B.      In order to ensure the proper handling of grievances, each unit shall have staff members selected as grievance investigators in accordance with the TDCJ selection procedures.

1.      The investigator shall be responsible for carrying out the duties outlined in the OGOM.

2.      An alternate grievance investigator may be designated to carry out the duties as deemed appropriate and necessary by the warden.

C.      Grievance staff shall have access to all documents necessary to conduct an investigation of a specific grievance.

D.      All employees are required to cooperate with grievance staff conducting an investigation.  Failure to cooperate with an official grievance investigation shall subject an employee to appropriate disciplinary action in accordance with PD-22, "General Rules of Conduct and Disciplinary Action Guidelines for Employees."

E.      Access to the offender grievance procedure shall not be inhibited by any policy, procedure, rule, or action.

F.      Grievance staff shall be professional, objective, and sensitive to cultural diversity at all times.

VII.    Emergency and Specialty Grievances

A.      Every grievance shall be reviewed by the unit grievance investigator, at which time the determination shall be made as to the status of the complaint.

1.      Grievances alleging sexual assault or sexual abuse shall be coordinated with the Office of the Inspector General (OIG) and the *Prison Rape Elimination Act* (PREA) ombudsman as provided for in the TDCJ *Safe Prisons Plan.*

2.      Grievances determined to involve an offender protection or extortion issue shall be processed in accordance with the TDCJ *Safe Prisons Plan*.

3.      Grievances alleging excessive or unreported use of force, criminal acts by staff, or harassment or retaliation for exercising access to courts rights shall be given priority attention and shall be coordinated with the OIG.

4.      Grievances involving health care issues of a quality of care or technical nature shall be coordinated with the Health Services Division.

5.      Grievances involving *Americans with Disabilities Act* (ADA) issues shall be coordinated with the Risk Management Department.

6.      Grievances involving claims of burden on the free exercise of religion shall be coordinated with the Chaplaincy Department.

7.      Allegations of impermissible conduct by offenders as defined in AD-03.02, "Impermissible Offender Conduct" shall be coordinated between grievance and monitoring and standards staff.

B.      If the unit grievance investigator determines a grievance does not qualify as an emergency or specialty grievance, the grievance may be processed as a regular grievance.

VIII.    Processing

Emergency grievances shall be processed regardless of any of the following requirements or screening criteria.

A.      Informal Resolution

1.      All staff shall informally resolve issues when possible.

2.      Offenders shall pursue an informal resolution with staff, when possible, prior to filing a formal grievance. When an attempt to informally resolve an issue is not documented on the grievance form, the unit grievance investigator may return the grievance to the offender without an investigation.

3.      When informal resolution is not possible, for example, the outcome of a disciplinary hearing or use of force, the unit grievance investigator shall accept and process the grievance as outlined in this directive.

B.      Step 1 Grievance - Processed at the unit level (Form I-127)

1.      An offender may submit one step 1 grievance within a seven calendar day period.

2.      The incident or issue grieved must be stated on the I-127, Step 1 Grievance Form and in the space provided.  Only official documents to support the issue presented may be attached, such as I-60s, property receipts, or other official documents.

3.      The offender shall submit the grievance within 15 days from:

   a.      The date of the alleged incident or problem; or

   b.      When the offender became aware or should have become aware of the incident or problem.

4.      The grievance shall state the relief requested.

5.      Grievance staff shall have 40 calendar days from the receipt of the grievance in which to investigate, respond, sign, and return the grievance to the offender.  Grievances concerning the outcome of a disciplinary hearing shall be processed within 30 days of receipt from the offender.

C.   Step 2 Grievance - Appeal of the step 1 grievance decisions by grievance staff not under the control of the unit (Form I-128)

1.      The offender has 15 calendar days from the receipt of the step 1 response in which to appeal to step 2, via the unit grievance investigator.

2.      The completed I-128, Step 2 Grievance Form, along with the original I-127, Step 1 Grievance Form, shall be submitted to the unit grievance investigator.

3.      The unit grievance investigator shall forward the original I-127, Step 1 Grievance Form and I-128, Step 2 Grievance Form and all investigative notes to the administrator of the Offender Grievance Program using the most expeditious, yet cost effective method possible.

4.      Grievance staff shall have 35 calendar days from receipt of the I-128, Step 2 Grievance Form in which to investigate, respond, sign, and return the grievance to the offender.  Medical staff shall have 45 calendar days from the receipt of the I-128.

An offender may not withdraw a grievance at any time during the process.  Once a step 1 or step 2 grievance has been submitted, the grievance shall be processed according to the guidelines set forth in the OGOM.

D.    Screening

Unit grievance staff shall review incoming offender grievances to identify emergency grievances and to ensure the grievances are submitted according to established procedures.   Emergency grievances are exempt from all screening criteria.   Specialty grievances and grievances involving offender disciplinary are exempt from the submission criteria of one grievance within a seven calendar day period.

Grievances that meet the established criteria shall be processed, have an appropriate response, a reason for the response, and provide closure of the issue. Offenders shall be notified when grievances are submitted that do not meet the established criteria.   Grievances that do not meet the established criteria shall be entered into the GR00 Tracking System, a copy of the grievance placed in the offender's unit grievance file, and the original returned to the offender.   The following are reasons for screening a grievance:

1.    The grievable time period has expired;

2.    Submission is in excess of one grievance within a seven calendar day period;

3.    The original was not submitted;

4.    Inappropriate or excessive attachments;

5.    No documented attempt at informal resolution;

6.    No requested relief is stated;

7.    Malicious use of vulgar, indecent, or physically threatening language directed at an individual;

8.    The issue presented is not grievable;

9.    Redundant issue;

10.    Illegible or incomprehensible; and

11.    Inappropriate requests for employee disciplinary action or compensation for punitive damages.

E.    Investigations

1.    The unit grievance investigator is responsible for the investigation of step 1 grievances.   Supervisory staff and departmental supervisors shall actively participate in the investigation and resolution of grievance issues. When requests are made by the unit grievance investigator, assistance shall be provided in a timely manner.   Employees or persons in custody who appear to be involved in the matter of a grievance are prohibited from participating in any capacity in the review and resolution of that grievance.

2.    The following are signature authorities for the response at step 1.

a.    Regular step 1 grievances – warden or assistant warden

b.    Multiple issue grievances that include at least one regular grievance issue and one medical grievance issue – warden or assistant warden.   The unit practice manager, facility health administrator, unit director of nursing, or nurse administrator, as appropriate, shall acknowledge a review of the multiple issue grievance response by initialing the front, upper left-hand corner of the original form.

c.    Medical step 1 grievances – unit practice manager, facility health administrator, unit director of nursing, or nurse administrator, as appropriate.   The warden shall acknowledge a review of the medical grievance response by initialing the front, upper left-hand corner of the original form.

3.    Investigation responsibility and signature authority for step 2 grievances are defined in the OGOM.

F.    Time Limits and Extensions

If staff need more than the allotted time to complete an investigation and formulate a response at either step, written notification shall be provided to the offender that an additional 40 days at step 1 and 35 days at step 2, or 45 days at step 2 for medical grievances is necessary before a response shall be given.

G.    Remedies

The following are possible remedies:

1.    Restitution of property, either monetary or compensatory;

2.    Change of policy, procedure, rule, or practice;

3.      Correction of records; and

4.      Other relief, as appropriate.

Requests for disciplinary action against employees or compensation for punitive damages shall not be addressed through the offender grievance procedure.

H.    Responses

Responses to grievances shall clearly state the result of the investigation and the reasons for the decision.  When a grievance response specifies that an action is to be taken, it shall include a date for completing the action when possible.  When no corrective action is warranted, an explanation shall be provided to the offender.

IX.    Records

A.    A copy of each completed grievance shall be maintained by grievance staff and retained in accordance with the TDCJ *Records Retention Schedule*.  Step 1 grievance records shall be maintained at the offender's current unit of assignment. When an offender is transferred, the step 1 grievance records shall be forwarded to the offender's new unit of assignment.  The resolution support manager shall establish an office of record for all step 2 grievance appeals.

B.    Grievance records are confidential.  Records may only be processed, investigated, or analyzed by authorized staff as defined in the OGOM.

X.    Evaluation

The resolution support manager is responsible for developing internal performance measures that assess the quality and timeliness of the offender grievance procedure.

_____
Brad Livingston*
Executive Director

_____
* Signature on file

# AUTHORITY

The following legislative, operational, and professional documents direct the function of the TDCJ Offender Grievance Program. The role of the grievance program has evolved over the years and several documents are necessary to explain the structure.

1.   BP-03.77 "Offender Grievances". The Texas Board of Criminal Justice directed the agency to operate an Offender Grievance Program based on specific elements and established guidelines.

2.   AD-03.82 "Management of Offender Grievances". Establishes agency expectations and the fundamental groundwork for the effective operation of the Offender Grievance Program. The administrative directive is more specific than the board policy and supports the grievance process by providing a basis for the *Offender Grievance Operations Manual*.

3.   State Law. Section 14.005, Chapter 110 Texas Civil Practice and Remedies Code; Sections 493.014 and Section 501.008, Texas Government Code mandate that TDCJ operate an Offender Grievance Program that qualifies for federal certification and that we obtain and maintain that certification.

4.   Federal Laws.

   a.   The *Prison Litigation Reform Act* (PLRA) of 1995 increased the utility of Offender Grievance Programs as an alternative to litigation by eliminating the prerequisite for certification standards. It mandated exhaustion of administrative remedy prior to the filing of litigation, regardless of procedural composition.

   b.   The *Civil Rights of Institutionalized Persons Act* (CRIPA) of 1980, although having no authority itself, established the standards that we embrace. As it was voluntary, only 18 states acquired Department of Justice certification. In 1995, standards were tempered to encourage adoption and in 1996, federal certification was completely eliminated.

5.   American Corrections Association Standards. Finally, American Correctional Association (ACA) standards represent the national consensus on contemporary correctional practice.

**TEXAS STATUTES RELATED TO THE OFFENDER GRIEVANCE PROCEDURE**

## I.   Texas Government Code

### A.  § 493.014 Applicability of Certain Grievance Procedures

*Text of section as renumbered from § 493.013 by Acts 1995, 74th leg., ch.. 76 § 17.01(15)*

A grievance procedure of the department or a division of the department, including the procedure established under Section 501.008, applies to the grievance of an offender or other person under the custody or control of the department relating to a rule or internal procedure of the board or department.

Added Acts 1993, 73rd Leg., ch. 988 § 9.02, eff. Sept. 1, 1993.  Renumbered from VTCA, Government Code § 493.013 by Acts 1995, 74th Leg., ch. 76 § 17.01(15), eff, Sept. 1, 1995.

### B.  § 500.002 Destruction of Property

(a)   An offender housed in a facility operated by the department or under contract with the department is liable for the offender's intentional damage to property belonging to the state.  If more than one offender is involved in damage to property, each offender involved in the damage is jointly and severally liable.

(b)   The department shall establish a hearing procedure, giving consideration to the due process rights of offenders, for the adjudication of claims for property damage under this section.  Damages may be awarded to the department only after a hearing and may not exceed the value of the property damaged.

(c)   If at a hearing it is determined that an offender is liable for property damage, the department may seize the contents of inmate trust funds established for the offender under Section 501.004.

(d)   An offender, after exhausting all administrative remedies provided by the grievance system developed under Section 501.008, may appeal a final decision under this section by filing a petition for judicial review in a district court having jurisdiction in the county in which the alleged damages occurred.  On judicial review, the district court shall follow the rules governing judicial review of contested cases under Subchapter G, Chapter 2001.  Appeals may be taken from the district court as in other civil cases.

(e)   If an offender fails to file a petition seeking judicial review of an adverse decision within 30 days after exhausting all administrative remedies, a district court may not review the final decision.

Added by Acts 1989, 71st Leg., ch. 212. § 2.01, eff. Sept. 1, 1989.  Renumbered from § 499.003 and amended by Acts 1991, 72nd Leg., ch. 16 § 10.01(a), eff. Aug. 26, 1991.  Amended by Acts 1995, 74th Leg., ch. 76, § 5.95(54), eff. Sept. 1, 1995, 74th leg., ch. 321, § 1.066, eff. Sept. 1, 1995.

Prior Law:  Acts 1987, 70th Leg., ch. 12 § 1. Vernon's Ann. Civ. St. art 6184p.

**C.  § 501.007 Offender Claims for Lost or Damaged Property**

The department may pay from the miscellaneous funds appropriated to the division claims made by offenders housed in facilities operated by the department for property lost or damaged by the division. The department shall maintain a record of all transactions made under this section and shall send a copy of that record to the state auditor at least annually.  The records must show the amount of each claim paid, the identity of each claimant, and the purpose for which each claim was made.  The department may not pay under this section more than $500 on a claim.

Added by Acts 1989, 71st Leg., ch. 212. § 201, eff. Sept. 1, 1989.  Renumbered from § 500.007 and amended by Acts 1991, 72nd Leg., ch. 16 § 10.01(a), eff, Aug. 26, 1991.  Amended by Acts 1995, 74th Leg., Leg., ch. 321, § 1.066, eff. Sept. 1, 1995.

Prior Law:  Acts 1987, 70th Leg., ch. 1049 § 18. Vernon's Ann. Civ. St. art 6184q.

**D.  § 501.008 Offender Grievance System**

a)  The department shall develop and maintain a system for the resolution of grievances by offenders housed in facilities operated by the department or under contract with the department that qualifies for certification under 42 U.S.C. Section 1997e and the department shall obtain and maintain certification under that section. A remedy provided by the grievance system is the exclusive administrative remedy available to an offender for a claim for relief against the department that arises while the offender is housed in a facility operated by the department or under contract with the department, other than a remedy provided by a writ of habeas corpus challenging the validity of an action occurring before the delivery of the offender to the department or to a facility operated under contract with the department.

b)  The grievance system must provide procedures:

(1) for an offender to identify evidence to substantiate the offender's claim; and
(2) for an offender to receive all formal written responses to the offender's grievance.

c)  A report, investigation, or supporting document prepared by the department in response to an offender grievance is considered to have been prepared in anticipation of litigation and is confidential, privileged, and not subject to discovery by the offender in a claim arising out of the same operative facts as are alleged in the grievance.

d)  An offender may not file a claim in state court regarding operative facts for which the grievance system provides the exclusive administrative remedy until:

(1) The offender receives a written decision issued by the highest authority provided for in the grievance system; or
(2) If the offender has not received a written decision described by Subdivision (1), the 180th day after the date the grievance is filed.

e)  The limitations period applicable to a claim arising out of the same operative facts as a claim for which the grievance system provides the exclusive remedy:

(1) is suspended on the filing of the grievance; and

(2)  remains suspended until the earlier of the following dates:
  (A) the 180th day after the date the grievance is filed; or
  (B) the date the offender receives the written decision described by Subsection (d)(1).
f)  This section does not affect any immunity from a claim for damages that otherwise exist for the state, the department, or an employee of the department.

Added by Acts 1989, 71st Leg., ch. 212. § 201, eff. Sept. 1, 1989.   Renumbered from § 500.008 and amended by Acts 1991, 72nd Leg., ch. 16 § 10.01(a), eff, Aug. 26, 1991. Amended by Acts 1995, 74th Leg., Leg., ch. 378, § 6, eff. June 8, 1995.

Prior Law:  Acts 1987, 70th Leg., ch. 1049 § 18. Vernon's Ann. Civ. St. art 6184r.

## II.   Texas Civil Practice and Remedies Code

**A.  § 30.006.  Repealed by Acts 1995, 74th Leg., ch. 378, § 8, eff. June 8, 1995.**

**B.  §14.005.  Grievance System Decision; Exhaustion of Administrative Remedies**

a)  An offender who files a claim that is subject to the grievance system established under Section 501.008, Government Code, shall file with the court:

(1)  an affidavit or unsworn declaration stating the date that the grievance was filed and the date the written decision described by Section 501.008(d), Government Code, was received by the offender; and

(2)  a copy of the written decision from the grievance system.

b)  A court shall dismiss a claim if the offender fails to file the claim before the 31st day after the date the offender receives the written decision from the grievance system.

c)  If a claim is filed before the grievance procedure is complete, the court shall stay the proceeding with respect to the claim for a period not to exceed 180 days to permit completion of the grievance system procedure.

Added by Acts 1995, 74th Leg., ch. 378. § 2, eff. June 8, 1995.

# PRISON LITIGATION REFORM ACT, 1995
## (PLRA)

**Mandatory Exhaustion of Administrative Remedies**

The PLRA creates major changes in 42 U.S.C. § 1997e.  The previous section 1997e authorized the court to stay a prisoner's suit for 180 days while the prisoner exhausted administrative remedies, but only if the U. S. Attorney General had certified, or the court had determined, that the administrative remedies were in compliance with "minimum acceptable standards" that the Attorney General was to promulgate, based on guidelines in section 1997e.

The PLRA amended section 1997e(b) to eliminate the requirement that the Attorney General provide the minimum acceptable standards for development and implementation of administrative remedies.  New section 1997e(b) essentially is a redesignation of the old section 1997e(d).  The new section 1997e(b) continues the old statue's provision that the failure of a state to adopt or adhere to an administrative grievance procedure is not a basis for an action under section 1997a (allowing the Attorney General to bring a cause of action challenging the conditions of penal institutions in certain circumstances) or under section 1997c (allowing the Attorney General to intervene in certain actions challenging conditions of confinement).  The PLRA also amended 42 U.S.C. § 1997e(c) to eliminate the requirement that the Attorney General develop a procedure for prompt review and certification of grievance procedures at jails and other penal institutions of states and political subdivisions of states.

## 1.  Court's discretion to stay an action pending administrative exhaustion

Section 1997e(a) now provides that "no action shall be brought with respect to prison conditions….by a prisoner…until such administrative remedies as are available are exhausted."  The court no longer has the option to stay actions while prisoners exhaust such remedies, and there is no longer any requirement that either the Attorney General certify or the court find that those administrative remedies are acceptable.

Neither the new version nor the old version of the statue defines exhaustion.  Under old section 1997e, courts held that to meet the exhaustion requirement, the prisoner had to exhaust all levels of administrative remedy that were available within the 180-day continuance period provided under the section (*Lewis v. Meyer*, 815 F.2d 43 (7th Cir.1987); *Maulick v. Central Classification Bd*., 659 F. Supp. 24 (E.D. Va. 1986)).  In addition, a penal institution may have been deemed to have waived the exhaustion requirement by, for example, dismissing without further review the prisoner's administrative complaint (*Robinson v. Young*, 674 F. Supp. 1356 [W.D. Wis. 1987]).

It remains to be determined whether a prisoner must exhaust administrative remedies when the particular relief sought in the federal action is unavailable under the administrative remedy.  Section 1915(e)(2) does not specify that a court must dismiss a complaint, despite collection of the filing fee, when a person fails to exhaust administrative remedies before attempting to bring a federal action challenging conditions of confinement.  Therefore, it appears that if a court determines that a prisoner cannot bring a cause of action because of the prisoner's failure to exhaust administrative remedies, the prisoner will not be charged the filing fee.  A dismissal under section 1997e, likewise, appears not to count against the prisoner in the future for purposes of section 1915(g).

## 2. Impact of dismissal on filing fee requirement is unclear

Amended section 1997e(c)(2) further provides that if a claim, on its face, meets any of the above mentioned grounds for dismissal, the court may dismiss it without requiring exhaustion of administrative remedies. The statue does not specify whether such a dismissal requires the prisoner to pay the filing fee. It is likely, however, that such a dismissal would count against the prisoner in the future for purposes of section 1915(g).

## 3. *Pro se* law clerk's role and administrative remedies available

The *pro se* law clerk can play a major role in handling exhaustion questions. First, to determine the available administrative remedies, the *pro se* law clerk should consult the state statues and regulations applicable to the prisoner litigant. In addition, the *pro se* law clerk should require the prisoner petitioner to indicate whether he or she is aware of the grievance procedure in place at the penal institution. The prisoner petitioner can also be asked whether he or she used the procedures and if so, to what extent. If the prisoner petitioner did not use the grievance procedures, some effort should be made to determine why. The prisoner might indicate, for example, that he or she is under imminent danger of serious physical injury, thereby invoking the exception to the prohibition on filing three or more claims that were dismissed as frivolous, malicious, or failing to state a claim upon which relief could be granted.

### CIVIL RIGHTS OF INSTITUTIONALIZED PERSON ACT, 1980 (CRIPA)

§ 1997e.        Exhaustion of remedies

**Applicability of administrative remedies**

(a)(1)    Subject to the provisions of paragraph (2), in any action brought pursuant to section 1983 of this title by an adult convicted of a crime confined in any jail, prison, or other correctional facility, the court shall, if the court believes that such a requirement would be appropriate and in the interests of justice, continue such case for a period not to exceed ninety days in order to require exhaustion of such plain, speedy, and effective administrative remedies as are available.

(2)       The exhaustion of administrative remedies under paragraph (1) may not be required unless the Attorney General has certified or the court has determined that such administrative remedies are in substantial compliance with the minimum acceptable standards promulgated under subsection 9b) of this section.

**Minimum standards for development and implementation of a system for resolution of grievances of confined adults; consultation, promulgation, submission, etc., by Attorney General of standards.**

(b)(1)    No later than one hundred eighty days after May 23, 1980, the Attorney General shall, after consultation with persons, State and local agencies, and organizations with background and expertise in the area of corrections, promulgate minimum standards for the development and implementation of a plain, speedy, and effective system for the resolution of grievances of adults confined in any jail, prison, or other correctional facility. The Attorney General shall submit such proposed standards for publication in the Federal Register in accordance with section 553 of Title 5. Such standards shall take effect thirty legislative days after publication unless, within such period, either House of Congress adopts a resolution of disapproval of such standards.

(2)    The minimum standards shall provide—

(A) for an advisory role for employees and offenders of any jail, prison, or other correctional institution (at the most decentralized level as is reasonably possible), in the formulation, implementation, and operation of the system;

(B) specific maximum time limits for written replies to grievances with reasons thereto at each decision level with the system;

(C) for processing of grievances which are of an emergency nature, including matters in which delay would subject the grievant to substantial risk of personal injury or other damages;

(D) for safeguards to avoid reprisals against any grievant or participant in the resolution of a grievance; and

(E) for independent review of the disposition of grievances, including alleged reprisals, by a person or other entity not under the direct supervision or direct control of the institution.

**Procedure for review and certification of systems for resolution of grievances of confined adults for determination of compliance with minimum standards; suspension of certification for noncompliance; development, etc., by Attorney General.**

(c) (1)   The Attorney General shall develop a procedure for the prompt review and certification of systems for the resolution of grievances of adults confined in any jail, prison, or other correctional facility, or pretrial detention facility, to determine if such systems, as voluntarily submitted by the various States and political subdivisions, are in substantial compliance with the minimum standards promulgated under subsection (b) of this section.

(2)    The Attorney General may suspend or withdraw the certification under paragraph (1) at any time that he has reasonable cause to believe that the grievance procedure is no longer in substantial compliance with the minimum standards promulgated under subsection (b) of this section.

# LEGAL LIABILITIES

## Spears Hearings

In the past, certification was a requirement for prison grievance procedures.  It allowed the courts to require offenders to pursue a complaint, through the administrative remedies available within the institution, prior to filing a lawsuit against the TDCJ.  This not only eased the overburdened court dockets, but also afforded the Texas Department of Criminal Justice (TDCJ) the opportunity to resolve issues or problems where they arose.  A civil right complaint filed in a case styled *Spears v. McCotter*, 766 F.2d 179 (1985), which was appealed to the Fifth Circuit, became the hallmark upon which exhaustion requirements were based.

The *Spears* hearings, as they are called, are evidentiary hearings in which an offender is questioned by the district judge or magistrate concerning the facts of the complaint.  The offender is asked if he has exhausted his administrative remedies within the prison system.  If not, he may be required to do so before the court will consider his claim.  Recent federal legislation in the form of the *Prison Litigation Reform Act* (PRLA) of 1995 amended the exhaustion requirements of the *Civil Rights of Institutionalized Persons Act* (CRIPA-42 U.S.C. 1997e) so that any and all administrative remedies must be exhausted prior to bringing suit before the courts.  Previously, exhaustion could only be required where certified grievance procedures were in place.

The TDCJ Offender Grievance Program provides assistance to the Texas Attorney General's office by producing certified grievance documentation for these hearings.  In addition, grievance staff attends the *Spears* hearings to provide expert testimony regarding the procedure.


## Chapter 14 Hearings

The *Prison Litigation Reform Act* of 1995 prompted the Texas legislature to enact House Bill 1343 (74th general session, 1995), which created Chapter 14 of the Texas Civil Practice and Remedies Code.  The purpose of these laws is to curtail excessive filing of offender lawsuits.  In Texas, Chapter 14 applies to offender lawsuits filed in the District Courts, County Courts, Justice of the Peace Courts, or Small Claims Courts.  The law provides that hearings may be held at a jail or facility operated by or under contract with the TDCJ.

A claim may be dismissed either before or after service of process if a court finds that:

* The allegation of poverty in the offender's affidavit or unsworn declaration is false,
* That the claim is frivolous or malicious, or
* That the offender knowingly filed a false affidavit or unsworn declaration

Chapter 14 authorizes the various state courts to sanction offenders for the filing of frivolous or malicious lawsuits.  Offenders can be assessed court costs for a first course of action and forfeiture of good conduct time for the second and subsequent frivolous claims.  TDCJ may not restore good conduct time forfeited under this section.

Offenders must provide the court with an affidavit or unsworn declaration that a grievance was filed, the date the grievance was filed and the date the offender received the decision.  The offender must provide a copy of the written decision from the grievance system.  If a claim is submitted prior to the completion of the grievance system procedure, the court can stay the proceeding for up to 180 days. A claim may be dismissed if the offender fails to file the claim before the 31st day after the date the offender receives the written decision.

### American Corrections Association Standards (ACA)

**Grievance Procedures**

4-4284    There is a written offender grievance procedure that is made available to all offenders and that includes at least one level of appeal.

_____

*Comment:*

A grievance procedure is an administrative means for the expression and resolution of offender problems. The institution's grievance mechanism should include provisions for the following: written responses to all grievances, including the reasons for the decision; response within a prescribed, reasonable time limit, with special provisions for responding to emergencies; supervisory review of grievances; participation by staff and offenders in the procedure's design and operation; access by all offenders, with guarantees against reprisals; applicability over a broad range of issues; and means for resolving questions of jurisdiction.

**Disciplinary Hearing Appeal**

4-4248    Written policy, procedure, and practice grant inmates the right to appeal decisions of the disciplinary committee to the warden/superintendent or designee. Inmates have up to 15 days of receipt of the decision to submit an appeal. The appeal is decided within 30 days of its receipt, and the inmate is promptly notified in writing of the results.

_____

*Comment:*

The appeal process should consider three factors: whether there was substantial compliance with institutional standards and procedures in handling inmate discipline; whether the disciplinary committee's decision was based on substantial evidence; and whether, under the circumstances, the sanction imposed was proportionate to the rule violation.

## PRINCIPLES AND PRACTICES

This section is dedicated to the principles and practices necessary to effectively implement and administer the Offender Grievance Procedure.  Complaints are a normal part of life. Complaints should be seen as an opportunity to improve services and not considered a personal attack.

## TEXAS DEPARMENT OF CRIMINAL JUSTICE
## CODE OF ETHICS

The Texas Department of Criminal Justice Code of Ethical Conduct is a fundamental element of the agency's mission of providing public safety, promoting positive offender change and reintegration into society, and assisting victims of crime.

As a reflection of our mission statement, the Code of Ethical Conduct serves as a practical guide for all employees. This code embodies a fundamental respect for the constitutional rights of all people. It is the responsibility of each employee to adhere to the agency's Code of Ethical Conduct.

I shall:

- Maintain the highest standards of honesty, integrity and impartiality.

- Uphold all federal, state and local laws, and adhere to the agency's policies, procedures, rules and regulations.

- Be firm, fair and consistent in the performance of my duties, without retribution, retaliation, harassment or abuse toward others.

- Provide and support the provision of humane custody, supervision and care of offenders.

- Not discriminate against any person on the basis of race, color, religion, national origin, sex, age, disability, geographic location or economic status.

- Not sexually harass or condone sexual harassment against any person, and shall report any violations of this policy to the appropriate authorities.

- Maintain confidentiality of information that has been entrusted to me, in my official capacity, unless legally compelled or authorized to release the information.

- Not use my official position for unauthorized personal gain or the unauthorized personal gain of my friends or family.

- Not conduct myself in any manner which may lead any person or entity to expect official favors.

- Recognize that the Code of Ethical Conduct is a symbol of the agency's commitment to the public and a direct reflection on the employee as an individual.

*Advisory Council on Ethics (ACE)*
*March 17, 2009*

# CONFIDENTIALITY

The operation of the Offender Grievance Procedure is a sensitive process.  Constant vigilance is required to protect the integrity and effectiveness of the program.  The unit grievance investigator (UGI) is entrusted with knowledge of, and access to, grievance documents and information that may only be shared with authorized staff  with a clearly defined need to know (refer to Chapter III).  Except for this provision, the UGI shall ensure that all grievances and related documentation are kept strictly confidential.  The identity of grievants and the nature of complaints are revealed only to the extent reasonable and necessary for a thorough investigation and resolution.  Unit grievance staff are defined as UGI, alternate UGIs, and grievance clerks.

* Access to locked grievance boxes is restricted to the unit grievance staff and warden.

* Unit grievance staff shall collect grievances from offenders who cannot access these boxes for example, when a unit is on lockdown or offenders are housed in administrative segregation.

* Grievances, related materials or any other notation regarding a complaint shall not be placed in any file other than the grievance file, unless otherwise noted in this procedure manual.  If an offender files a grievance that pertains to a loss of property, or loss of money as a result of legitimate transactions, a reference may be included in his institutional record describing the resolution of the matter.  This reference may not give any indication that a grievance was filed.

* The UGI will provide staff assisting in the resolution of a grievance only that information necessary to facilitate their involvement.

* The UGI will share with the warden any and all pertinent information that may impact the safety and security of the unit.

* Grievance investigations and supporting documentation are protected and not available to the offender, or the public through open records.  The UGI should seek guidance from the administrator of Offender Grievance if a subpoena, or any other request for grievances, or grievance related documents is received.

* A grievant is entitled to a written response; however, investigative notes, reports, or written testimony from staff and other offenders should not be provided to the grievant.

* Original grievance forms or copies of grievances may not be removed from the grievance office, except for approval and signature by the warden.  Refer to Chapter IV regarding when the narrative portion of a grievance may be provided.

* Disciplinary action against staff will not be disclosed through the grievance process.  Investigations regarding allegations of misconduct or reprisal by staff is privileged information and will not be revealed to the grievant.  Documents related to employee disciplinary action such as, employee performance log entries, a letter of instruction or employee disciplinary forms shall not be attached to an offender grievance.

* Employee participation in the resolution of grievances is confidential, yet essential to the resolution of problems.

* When an offender grievance is used as evidence against that offender during disciplinary proceedings, the administrator of Offender Grievances must be notified prior to the disciplinary hearing.

* Unit grievance staff and Central Grievance Office (CGO) staff will fold completed Step 1 and Step 2 grievances in a manner that the response and grievance text are not visible, and then tape the grievance to ensure the confidentiality of the document.

* The Offender Grievance Program and the Mail System Coordinators Panel (MSCP) will coordinate procedures to ensure the confidentiality of grievance responses is maintained.

# GRIEVANCE RECORDS ACCESS

**The following employees are authorized to access grievance records, as outlined below:**

*       Unit grievance staff directly involved in the investigation and processing of a grievance.

*       Wardens and department heads, or their designees for investigation, problem resolution, and signature, as appropriate.

*       Central Grievance Office and Regional Grievance staff for investigation and monitoring.

*       Regional directors and regional staff, other than regional grievance staff, for investigation and monitoring.

*       Executive management for inquiries and monitoring.

*       Monitoring and Standards staff for audits and monitoring.

*       Ombudsman staff for inquiry.

*       Prison Rape Elimination Act (PREA) Ombudsman staff for inquiry.

*       Administrative Review staff for trend analysis and reporting.

*       Office of Inspector General (OIG) staff for investigation of criminal acts, use of force, harassment and retaliation for exercising access to courts rights, or any matter affecting the safety and security of the unit.

*       Safe Prisons Program coordinators for investigation of life endangerment allegations and offender requests for protection.

*       Office of General Counsel (OGC) for litigation support.

*       Other authorities may make a formal request for grievance information.  The decision to approve or disapprove the request will be made by the administrator of the Offender Grievance Program.

## GRIEVABLE AND NON-GRIEVABLE ISSUES

One goal of the Offender Grievance Program is to be responsive to legitimate offender problems and improve facility management.  The program is guided by board policy, agency policy, and state and federal laws.  Offenders are not always clear on the boundaries established by the aforementioned authorities and frequently submit claims about matters beyond the purview of the grievance department.  The following guidelines are provided to clarify those issues that are grievable, and those issues that are not grievable through the Offender Grievance Procedure.

**Grievable Issues**

*        The interpretation and application of TDCJ policies, rules, regulations, and procedures as they personally apply to the offender.

*        Offender or employee actions, including any denial of access to the grievance process.

*        Reprisals against offenders for the use of, or participation in the grievance procedure.

*        The loss or damage of authorized offender property possessed by persons in the physical custody of the agency as defined in AD-03.72 "Offender Property", for which the agency or its employees, through negligence, are the cause of any damage or loss.

*        Any other matter within the authority of the TDCJ.

**Non-Grievable Issues**

*        State and federal court decisions, as well as laws and regulations.

*        Parole decisions.

*        Time-served credit disputes.  These issues should be directed to the Classification and Records Office, Time Section.

*        Matters for which other formal appeal mechanisms exist.

*        Any matter beyond the control of the agency.

# REMEDIES

Offenders must state a requested remedy in the section provided on the grievance form regarding the action requested to resolve their complaint.  If the requested remedy is not stated, the grievance <u>may</u> be returned to the offender unprocessed.  **Emergency grievances will be processed even when no requested remedy is stated**.

**Available Remedies**

\*        Restitution of property, either monetary or compensatory in accordance with procedures outlined in AD-03.72, "Offender Property".

\*        Change of policy, procedure, rule, or practice.

\*        Correction of records.

\*        Other relief, as appropriate.

**Non-Available Remedies**

\*        Requests for disciplinary action against employees.

\*        Requests for punitive damages.

# INFORMAL RESOLUTION

The Offender Grievance Procedure is not intended to be the first line of response to offenders' problems. Every employee has a responsibility to resolve problems within their control. Informal resolution can effectively resolve many issues long before they escalate to a formal claim. However, used improperly, informal resolution can actually undermine effective communication and problem solving capabilities of staff by creating resentment and conflict. Using informal resolution to solve problems is not just a requirement of the job, but when applied correctly can be an effective offender management tool.

## Offender Initiative and Documentation Requirements

Offenders must attempt informal resolution of their problems with a staff member before a grievance will be processed. **Emergency and Disciplinary grievances are exempt from this requirement.** Offenders may contact medical staff regarding non-emergent medical concerns by submitting an I-60 Request to Authority. Attempting informal resolution requires the offender to practice responsible patterns of interacting with authority to resolve conflicts while staff benefits from the opportunity to address problems at the lowest possible level. The **attempt** must be documented on the grievance form, in the space provided, identifying the name of staff that was contacted, if known, and what action was taken. This requirement demonstrates that the offender took the initiative and responsibility to try to resolve the conflict and provides unit administration valuable information about staff's ability to solve problems.

## Staff Responsibility

When offenders approach staff with legitimate problems in a courteous and respectful manner, staff shall informally resolve the issue, if it is within the realm of their responsibility. The offender may also be referred to a supervisor for resolution. When offenders use communication instead of confrontation, staff must recognize the benefits of the attempt and respond with appropriate action. An effective grievance procedure provides a tool to resolve problems and is a valuable component of a well-managed facility.

# GRIEVANCE FORMS ACCESS

\*       **Instructions**

How to Write and Submit Grievances Form OG-02 written in English and Spanish (Appendix B) shall be prominently posted in offender housing areas and any other offender high traffic areas, as well as, available for offenders to view in the unit law library.

\*       **Forms Availability**

Requests for Step 1 and Step 2 grievance forms shall be made available to all offenders within a reasonable time period.  A supply of both forms shall be maintained in centrally located areas, for example in housing control pickets, security posts, law library, supervisor offices.  Due to the diverse construction of TDCJ units, specific locations are not identified; however, grievance staff must ensure that offenders have access to grievance forms.  Grievance staff will maintain a supply of forms in the grievance office and routinely check the unit to ensure that forms are available.  Grievance staff shall correct any shortages immediately.

\*       **Collection Methods**

Offenders must have direct access to unit grievance staff without routing grievances through any other staff member.  A locked box, whereby an offender may place their grievance in the box themselves, may be placed in any of the following locations, as appropriate.

\*       Main hallway;

\*       Adjacent to dining hall entry door, commissary, or shower;

\*       Inside or adjacent to each housing area;

\*       Any other area accessible to offenders and approved in writing by the administrator of Offender Grievances.

Keys to grievance boxes are restricted to the warden and grievance staff and should not be kept on the unit keyboard.

Each workday, grievance staff, includes the grievance investigator, alternate investigators, and grievance clerical staff, will collect grievances from the grievance boxes, or receive grievances directly from offenders.

_**At no time should anyone other than grievance staff have access to, or collect grievances from grievance boxes and offenders.**_

# GRIEVANCE TRANSLATION

**Grievances Written in Spanish**

Step 1 and Step 2 grievances written in Spanish must be translated to English in order to identify emergency concerns that require immediate attention. The translation will only be completed by an agency certified interpreter. The certified interpreter will be provided a narrative copy of the grievance in order to complete the translation. The translation will not be paraphrased, even if the offender's comments are repetitive. The certified interpreter should be informed about grievance procedures, with respect to time limit requirements and confidentiality. The translation must include the certified interpreter's name, title and the date the translation was completed. Both documents are to be returned to the UGI. Upon receipt of the interpreted grievance, the UGI will process according to normal procedures.

At no time should a grievance written in Spanish not be interpreted just because a certified interpreter is not available on the unit. If no certified interpreter is available, the UGI is to contact the regional grievance supervisor for assistance.

A Step 2 grievance written in Spanish must be translated to English prior to being mailed to the Central Grievance Office. If an emergency issue is identified in the grievance, the UGI shall proceed as directed in Chapter V and the *TDCJ Safe Prisons Plan.*

All translations will be retained with the file copy and not returned to the offender, maintained in the offender's grievance file at Step 1 and imaged in the computer imaging system at Step 2.

# GUIDELINES FOR INVESTIGATIONS

An effective grievance investigator must possess a vast knowledge of the day-to-day operations of the unit and sharp investigative skills, as well as, be knowledgeable of policies and procedures that may affect the outcome of a grievance. The elements of a good investigation are essential to the quality and validity of the conclusion.

**Fact Based.**  Grievance investigations are a fact-finding mission. The goal of the investigation is to obtain evidence to arrive at a conclusion, one that either supports or does not support the complaint. An investigator must be able to prove, demonstrate, and support all findings and conclusions with facts and support documents.

**Objectivity.**  An allegation and subsequent investigation may involve staff of a higher rank than the UGI, or may dictate that the UGI investigate his peers. The UGI must remain objective at all times, regardless of the circumstances. Good communication, fairness, and professionalism are essential. At times, simply explaining the reason for an outcome, or the limitations of the program can promote the credibility of the response. When the program is administered correctly, staff, offenders, and the agency benefit.

**Integrity and Credibility.**  The effectiveness of a grievance investigator is largely dependent on their integrity and credibility with both staff and offenders. Integrity is more difficult to preserve, than it is to lose. When offenders realize that investigations and outcomes are fair, they are more likely to use the grievance procedure responsibly.

## Organization

Investigations may be organized and accomplished in many ways. One commonly accepted approach to problem solving is the **scientific method** discussed below:

1. **Identify the Problem.**  In the case of a grievance, determine the exact nature of the issue, or the complaint.

2. **Gather Information.**  Research the policies and procedures, interview the complainant and witnesses, review records and attach support documents that validate the investigation, such as property forms, logs, schedules, rosters, and other similar documents.

3. **Form a Hypothesis.**  As information is gathered, begin forming a conclusion based on the facts.

4. **Test the Hypothesis.**  Is the conclusion objective and reasonable? What action is necessary to eliminate the problem in the future? If the hypothesis does not prove correct, it may be necessary to gather additional information.

5. **Document the Findings.**  Document all investigative information on the Grievance Investigation Worksheet **(OG-01)**. Attach the OG-01 and all support documentation to the grievance. Draft a response that is fair, objective and addresses the complaint.

## GUIDELINES FOR WRITTEN RESPONSES

Providing an appropriate response to a complaint is just as important as conducting a thorough investigation.  To some extent, the appropriateness of the response may even be more important than the final outcome of the grievance.  The tone of the response can either resolve the problem, or set the stage for future complaints.  Grievance staff shall treat offenders with fairness, objectivity and professionalism at all times.  These three simple concepts define the philosophy and direction of the grievance program.

1.  A quality response begins with a positive statement, followed with a factual statement, and ends with a useful statement regardless of the outcome of the grievance.
2.  Ensure the response addresses the issue presented in the grievance.
3.  Responses are to be grammatically and punctually correct, as well as, written in complete sentences.
4.  Responses must be accurate, supported by the facts, and based on agency policy.
5.  Always provide responses that are clear, concise, and to the point.
6.  The use of diplomacy in the response is paramount to the credibility of the program.  A technically accurate response that is antagonistic or condescending toward an offender undermines the credibility of the program and may prompt additional grievances.

**Standard responses are unacceptable.**  A grievance response is to be personalized to an offender's specific complaint.  There are certain instances when a grievance response may contain consistent statements due to the nature of the complaint, such as a disciplinary appeal when there is no basis for corrective action.

The response on a disciplinary appeal should include a specific comment to respond to the offender's stated point of appeal listed in the grievance; statements addressing whether due process and procedural requirements were met; whether the evidence presented substantiated the finding; and the appropriateness of the penalty imposed.

> ***Example:***
>
> *(Major or Minor)* Disciplinary Case # _____has been reviewed.  The disciplinary charge was appropriate for the offense and the guilty verdict was supported by a preponderance of the evidence. ***Insert a statement that specifically responds to the offender's stated point of appeal listed in the grievance.*** All due process requirements were satisfied and the punishment assessed by the Disciplinary Hearing Officer was within agency guidelines.  No further action is warranted in this matter.

**Amended Responses**

Occasionally, there are times when an offender receives an incorrect response and an amended response must be provided.

\*   Type the correct response on an Inter-Office Communication (IOC) and acquire the warden's signature at Step 1, or a Central Grievance Office Supervisor at Step 2.  The amended response should inform the offender as follows:

> The response received on grievance (#_____) was incorrect and following is the corrected information.
>
> ***Add correct response here.***

## DEPARTMENTAL INVOLVEMENT

Grievance staff will coordinate the investigation of all offender grievances.  Grievance staff may request that department heads participate in the fact-finding and resolution of grievances as they have the expertise to conduct a meaningful investigation and to provide them an opportunity to identify and resolve issues.  Staff not involved with the grievance will conduct the investigation and all investigative notes will be documented on the grievance investigation worksheet.  Department heads may be asked to conduct the investigation and provide a suggested response and return the information within 10 days.  Additional time may be requested when needed, as long as the 40-day time limit is met.

**Networking:  Sources of Information**

Grievance staff may coordinate problem resolution with a vast array of area specialists, functional managers, and resources.  Because no one can be an expert on everything, networking is extremely valuable in gaining knowledge and exposure not only to the policies and procedures, but also the day-to-day operations of each facility. Remember, every employee shares the responsibility to resolve problems or claims.

A good working relationship with unit level department heads is vital to the success of the program.  If a problem requires additional input, the following list of administrative offices is provided.

| DEPARTMENT | CONTACT |
|---|---|
| Access to Courts | 936-437-4815 |
| Chaplaincy | 936-437-6319 |
| Classification | 936-437-6560 |
| Commissary | 936-437-4721 |
| Counsel Substitute | 936-437-6530 |
| Correctional Training | 936-295-9337 |
| Disciplinary Coordination | 936-437-6536 |
| DNA | 512-406-5733 |
| Freight & Warehousing | 936-437-6074 |
| General Counsel | 512-463-7554 |
| Health Services | 936-437-3618 |
| Laundry, Food & Supply | 936-437-8351 |
| Monitoring and Standards | 936-437-4900 |
| Offender Mail System | 936-437-6336 |
| Offender Property | 936-437-6706 |
| Offender Transportation | 936-293-4180 |
| Office of Inspector General | 936-437-6713 |
| Ombudsman | 936-437-4921 |
| Private Facilities | 936-437-2880 |
| Recreation | 936-291-5393 |
| Risk Management | 936-437-4806 |
| Safe Prisons | 936-437-8918 |
| Sex Offender Rehabilitation Program | 936-437-2840 |
| Substance Abuse Treatment | 936-437-2850 |
| Windham School District | 936-291-5303 |

## GRIEVANCE TIME LIMITS

Offender grievances will be processed in a timely manner.  An efficient and responsive system benefits the facility and builds credibility with the offenders.  Time limits are based on calendar days beginning with the day the grievance is received.  All grievances must be logged into the GR00 Case Tracking System on the same day they are received.  Entries into the GR00 are made at each step of the grievance process in order to track their progress and to ensure that grievance time limits are met.

**Step 1 Grievances, I-127**

1.  The offender must submit an I-127 grievance form within 15 days of the alleged incident/problem, or when he became aware, or should have become aware of the incident/problem.  Grievances will be accepted for review **up to, and including the first working day beyond the 15 day time limit**.

2.  The UGI shall have up to 40 days from receipt of the I-127 to investigate, respond, obtain a signature, and return the grievance to the offender.  Disciplinary appeals are required to be complete in 30 days.  (Refer to Chapter VII)

3.  Should grievance staff need more than the allocated time to complete an investigation, written notification will be provided to the offender stating that an additional 40 days may be required to process the grievance.

4.  Prior to the grievance due date, the UGI shall complete the Notice of Extension (Appendix M), forward the original form to the offender, and attach a copy to the grievance.  **Emergency grievances are not eligible for time limit extension.**

> **Due dates are automatically calculated in the GR00.**

**Step 2 Grievances, I-128**

1.  Any offender wishing to appeal a Step 1 response must submit an I-128 grievance form within 15 days from the date of the signature authority on the back of the I-127 grievance form.

2.  Central Grievance Office (CGO), Regional Grievance Office, or proponent staff shall have 35 days from the date the I-128 form was received at the unit to review, investigate, respond, sign, and return the appeal to the offender.

3.  Health Services staff shall respond to step 2 medical grievances within 45 days from the date the I-128 form was received at the unit to review, investigate, respond, sign and return the appeal to the offender.  Emergency medical grievances and multiple issue medical grievances shall be processed within 35 days from the date the I-128 form was received at the unit.

4.  If staff should need more than the allocated time, written notification shall be provided to the offender stating that up to an additional 35 days may be required to process the grievance; an additional 45 days for medical grievances; or an additional 35 days for multiple issue medical grievances.  **Emergency medical grievances are not eligible for extension.**

5.  Prior to the grievance due date, the Step 2 investigator shall coordinate with designated CGO staff who will complete the Notice of Extension (Appendix M), forward the original form to the offender and ensure a copy is attached to the grievance.

6.  Proponent staff are responsible for sending an email notification to the administrator for Offender Grievance, or designee informing them that further investigation is needed.  The email should include the offender name, TDCJ number, grievance number and the original due date listed in the OFFICE USE ONLY box on the front of the form.

7.  CGO clerical staff are responsible for all GR00 data entry regarding additional time needed to process a grievance, complete the Appendix M form, and forward the notice to the offender.

**Processing medical grievances is discussed in Chapter IX.**

**Screened/Unprocessed**

When a Step 1 or Step 2 grievance is returned to an offender unprocessed for any of the 11 established screening criteria at Step 1 or the six screening criteria at Step 2, an offender will be afforded 15 days from the date documented in the OFFICE USE ONLY box on the back of the form to correct and resubmit the grievance.

Grievances screened for the following may not be corrected and resubmitted:

#1 Grievable time period has expired.

#8 The issue presented is not grievable, unless it is a premature disciplinary appeal.

#9 Redundant of a previous grievance.

**Time Limits Monitoring**

The administrator for Offender Grievances will monitor compliance with established time limits and extensions in order to identify and resolve systemic problems in processing.  Every effort shall be made to ensure no less than 95% of all processed grievances are within established time limits.

An offender **may not withdraw** a grievance at any time during the process. Once a Step 1 or Step 2 grievance has been placed in a locked grievance box, submitted through the mailroom, or handed directly to grievance staff by an offender, the grievance shall be processed according to the guidelines set forth in this procedure manual.

## REPRISALS

Reprisal, to include harassment or retaliation, for participation in the Offender Grievance Procedure is a serious matter that is considered a violation of an offender's access to courts rights.  Evidence of reprisals must be forwarded to the Office of Inspector General in accordance with the guidelines included in this manual.

## RECORDS MANAGEMENT

The purpose of this section is to establish specific guidelines for the management of offender grievance records.  The maintenance of records is crucial, as courts and the Attorney General's Office frequently request these records during litigation to defend the agency's position.

### Step 1 Grievances

* Each UGI is responsible for establishing and maintaining a grievance file for each offender that contains all processed and unprocessed Step 1 grievances and investigative documentation.  The Unit Grievance Office shall be the office of record for all Step 1 grievances until the offender is transferred to another permanent unit of assignment.

  Many offenders are **temporarily transferred** to other units for various reasons.  In this case, grievance files shall be placed in a suspense file and not transferred until the offender reaches a permanent unit of assignment.

* Unit grievance files shall be transferred unit to unit by utilizing the TDCJ truck mail system.

* Unit grievance files are confidential and shall be secured at all times.  Unit Grievance Staff and the warden will have the only keys to access grievance files.

* Step 1 grievance records shall be maintained in accordance with the agency's Records Retention Schedule.

* In the event an offender departs custody prior to a Step 1 grievance being closed, the grievance investigation shall be completed and placed in the offender's inactive grievance file.  The offender's grievance file shall remain on the last unit of assignment until the records retention requirements have been exhausted.

### Step 2 Grievances

* The CGO shall establish and maintain a grievance file for each offender that contains all processed and unprocessed Step 2 grievances and investigative documentation.  Step 2 grievance records are stored electronically in a process known as "imaging" which is the most efficient and cost effective method for storing grievance records.  The CGO shall be the office of record for all Step 2 grievances.

* Copies of Step 2 grievances will not be retained by the UGI.  Step 2 grievances completed by the Regional Grievance Offices and proponents shall be returned to the CGO, to include all investigative notes and documents.

* Step 2 grievance records shall be maintained in accordance with the agency's Records Retention Schedule.

* In the event an offender departs custody prior to a Step 2 grievance being closed, the grievance shall be completed, and maintained with the offenders' imaged records.

### Transferring Grievance Files

* Grievance files being transferred from one unit to another are entered into the GR00 Case Tracking System Screen 24.  **The mailing of individual grievances is not entered into the GR00 Screen 24.**

* The transferring unit enters their unit two digit designator and the date the file was transferred

* The receiving unit enters their unit two digit designator and the date the file was received.

**Records Retention and Purging of Files**

Offender grievance records shall be retained for three years from the date the grievance is closed unless litigation is pending. The UGI will check the grievance record on the GR00, Option 19 screen, and review the litigation field. If a 'Y' appears in the litigation field, the grievance file is not to be purged. Therefore, any grievance still identified on the GR00 should be maintained in the offender's grievance file.

Grievance staff shall ensure that offender grievance files not involved in litigation are purged every six months, in **September** and **February**.

> **The administrator of Offender Grievances will notify grievance staff regarding the specific purge date for all files in order to maintain consistency with the GR00 Tracking System.**

The purging of files must be documented on the AD-02.29, "Records Management", Attachment A, Records Disposition Log (Appendix Q). Once complete, the log is to be forwarded to the TDCJ Records Management Officer, Executive Services Department, to be kept as a permanent record.


**Mailing Options**

All units, regional grievance offices, and the CGO must utilize the most expedient and cost effective means of transporting grievances from location to location. The following guidance is provided:

* Truck mail is the inter-agency mail service most commonly used, and should still be used in those locations where the truck mail has proved to be reliable and efficient, delivered within 2-4 days. Each package must weigh less than 20 pounds.

* Truck mail should be used to transfer grievance files when an offender is transferred to another unit; however, the weight limit should be taken into consideration.

* Those units where truck mail is not available or it has proven unreliable and inefficient should use first class mail for packages and letters weighing less than 13 ounces. If the item to be mailed is 13 ounces or more, priority mail should be utilized. Priority mail envelopes, boxes, and stickers are available from the U.S. Post Office at no charge.

* Except in the most extreme cases and only at the direction of the warden, regional director, or administrator of Offender Grievance should contracted mail carriers such as FedEx, be utilized to mail grievances. For instance, to meet court deadlines.

* All packages containing grievances mailed to any location **must include a cover page listing all grievances by grievance number** contained in the package. The sender shall retain a copy of the cover page. The receiver shall acknowledge receipt by signing the cover sheet and placing it in a file. Any discrepancies shall be reported immediately to the regional grievance supervisor or the CGO. This excludes grievance files sent from unit to unit when offenders are transferred.

# Step 1 Emergency Grievance



Grievance staff will collect grievances each workday either from the grievance box or directly from the offender.

Separate Step 1 and Step 2 grievances and identify Emergency grievances.

**Emergency Grievances require immediate email notification.**

**Emergency notification emails are to be followed up with a telephone call to each email recipient, and a telephone call to the highest ranking supervisor on duty.**

**Screening criteria does not apply.**

Email to Major and Unit Chief of Classification — Fear of Offenders

Email to Warden — Fear of Staff

Email to Major, Unit Chief of Classification, and Unit Safe Prisons Coordinator — Extortion

Email to Unit Practice Manager, Unit Health Authority, Director of Nursing, or Nurse Administrator as appropriate. — Medical Emergency

Sexual Abuse → Email to Major, Office of Inspector General, and Unit Chief of Classification

Sexual Assault → Email to Warden, Office of the Inspector General, Unit Safe Prisons Coordinator

Sexual Harassment
Processed by unit administration through the offender disciplinary procedures or PD-22

Investigation

Evidence

Notify Warden

Investigation conducted by Medical staff

Formulate a suggested response for the Warden

No Evidence

Obtain **signature** from Unit Practice Manager, Unit Health Authority, Director of Nursing, or Nurse Administrator as appropriate, and obtain the Warden's **Initials** on the front of the grievance form.

Obtain the Warden's Signature

For multiple issue medical grievances, the UGI will formulate a response that addresses all issues presented in the grievance, to include the medical response **typed verbatim** and obtain the Warden's **signature.**

Place a copy of the grievance/investigative documents into the offender's grievance file

Return the completed original grievance including response and Warden's signature to the offender

# Step 1 Specialty Grievance



# Step 1 Regular Grievance



Assign an Issue Code that best describes the subject of the grievance. Refer to Appendix D.

Log the grievance into the GR00 and a grievance number will be automatically assigned.

Complete the OFFICE USE ONLY box on the front of the grievance form

Processed

Grievances should be collected each workday either from the grievance box or directly from the offender.

Separate Step 1 and Step 2 grievances.

**Translate Step 2 grievance if written in Spanish**

Review for Emergencies

Unprocessed

Assign an Issue Code that best describes the subject of the grievance, followed by "99" indicating a screened grievance

Log the grievance into GR00 and a grievance number will be automatically assigned.

Complete the OFFICE USE ONLY box on the back of the grievance form indicating the screening criteria, the date returned to the offender unprocessed, the UGI 's printed name and signature, and the "99" issue code used.

Medical

Summarize the grievance on an OG-01 Grievance Worksheet and either conduct an investigation or forward the OG-01 to the appropriate department head for investigation. A summary of fact finding activity is documented on the OG-01 worksheet.

Send to Unit Practice Manager, Unit Health Authority, Director of Nursing or Nurse Administrator, as appropriate.

Investigation conducted by Medical staff

Obtain **signature** from Unit Practice Manager, Unit Health Authority, Director of Nursing or Nurse Administrator as appropriate, and obtain the Warden's **Initials** on the front of the grievance form.

For multiple issue medical grievances, the UGI will formulate a response that addresses all issues presented in the grievance, to include the medical response **typed verbatim** and obtain the Warden's **signature.**

Formulate a suggested response for the Warden

Obtain the Warden's Signature

Place a copy of the grievance into the offender's grievance file

Return the completed grievance including response and Warden's signature to the offender

Place a copy of the screened grievance into the offender's grievance file

Return the screened grievance to the offender to correct and resubmit the grievance within 15 days of UGIs signature. #1, #8 (unless it is a premature disciplinary appeal), and #9 are not eligible for resubmission.

# PROCESSING STEP 1 (I-127) GRIEVANCES

Unit grievance staff is defined as the Unit Grievance Investigator (UGI), alternate UGI, and grievance clerical staff assigned to the Grievance Department. An alternate UGI is further defined as a staff member, designated by the warden, who has: been trained by grievance staff; issued an assigned investigator ID number; granted GR00 Case Tracking System access; is knowledgeable about the grievance process; and who can function as the grievance investigator in the UGIs absence.

**Collection of Grievances**

1. Unit grievance staff will collect grievances each workday from grievance boxes located throughout the unit, or receive grievances directly from offenders. Grievances from offenders confined to administrative segregation, solitary confinement, or on lockdown status will be collected in the same manner as described above, ensuring that each and every offender is afforded unimpeded access to the offender Grievance Procedure. UGIs shall record the cell number at the top of the grievance form for grievances received directly from offenders in cells or housing areas, such as administrative segregation and expansion cellblocks.

2. Step 1 and Step 2 grievances, I-127 and I-128 respectively, will be collected in the same manner and must be sorted. The processing of Step 2 grievances is discussed in Chapter V.

3. Once a grievance is received, it will be entered into the GR00 Case Tracking System as screened or the grievance is investigated and processed.

> *A wealth of information may be obtained from offender grievances, whether processed, or not. Important information should always be communicated to the warden, who may initiate an investigation, or take action based on the information received in a grievance. The investigation may be conducted independent of the offender grievance process.*

**Sorting and Prioritizing Grievances**

1. Once collected, all grievances will be immediately reviewed for **emergency** issues and, those identified as such will be given **immediate attention,** regardless of any screening criteria discussed in these procedures.

2. Grievances will be further sorted into specialty grievances which warrant special consideration and regular grievances which are eligible for all screening criteria.

3. Grievances that do not qualify as an emergency, or warrant special consideration may be screened based on the screening criteria that may be applied as outlined in AD-03.82, "Offender Grievances". Screened grievances are returned to an offender unprocessed. A copy of all screened grievances shall be retained in the offender's grievance file.

4. The warden may instruct the UGI not to utilize any one or all of the screening criteria.

5. If a grievance is received without an offender's name, number, or signature, the UGI will make every effort to positively identify the offender. If the offender can be identified, the grievance may be screened, if appropriate, or processed.

6. If the **offender cannot be identified**, the grievance shall be placed in a **Dead File** with written justification stating why the issue was not addressed.

7. If an offender submits a grievance written in **pencil**, grievance staff will accept the grievance, make a copy to be used in place of the penciled original, and attach the original to the investigative documentation.  Any time that an original grievance must be replaced with a copy of the grievance, the verbiage **Accept as Original & staff initials** are to be written at the top.

8. If during an interview or investigation an offender states that he did not submit the grievance, the UGI will acquire a written and signed statement from the offender, attach the statement to the grievance, and file both in the offender's grievance file.  The UGI will send a TDCJ mainframe email to the regional grievance supervisor requesting that the grievance be administratively closed.  If the regional grievance supervisor is out of the office, the UGI will contact the Central Grievance Office to administratively close the grievance.

9. Unit supervisory staff and department heads shall actively participate in the investigation and resolution of Step 1 grievance issues as they apply to their respective department.

**All grievances referred to OIG require the completion of an OIG Fact sheet and an entry made in GR00 Screen 25 for OIG Referral Tracking.**

**The signature authority for Step 1 grievances is the warden, assistant warden, health services administrator, unit practice manager, director of nursing, or nurse administrator, as appropriate.**

In the event that the signature authority is the subject of an offender's grievance, the appropriate regional director or medical supervisor, as appropriate, will be the signature authority.  It should be noted that just because the name of a signature authority is mentioned in a grievance does not preclude that person from signing the grievance.

**The UGI is responsible for alerting the warden to any and all information that may impact the safety and security of the unit.**

**The administrator for Offender Grievances reserves the right to authorize the processing of any grievance regardless of screening criteria.**

**Issue codes**

Grievance staff must assign an issue code to all grievances.  Refer to the TDCJ Offender Grievance procedure Issue Codes (Appendix D) for a detailed list of the issue codes.  The issue code should reflect the issue presented in the grievance and the action requested.  There should not be more than three issue codes assigned to a grievance.

If several issues arise from **one incident**, the first or primary code should reflect the most serious issue presented.  If a specialty issue is identified in the grievance, the specialty issue must be represented as the first or primary issue code.

In most cases, a single code is sufficient to identify the issue addressed in the grievance.  Additional codes shall be used when there are significant secondary issues arising out of the **same incident**.  However, remember that offenders are instructed to use the grievance procedure responsibly and to present only one issue per grievance.

For grievances that do not qualify for processing, issue codes are assigned by identifying the broad subject category (100, 200, 300, 400, 500, 600, 700, 800 or 900) that best describes the grievance, followed by the numbers **"99".**  For example, a grievance involving a staff complaint that is returned to an offender unprocessed would be coded 899.  The **"8"** represents the broad category staff complaints and the **"99"** indicates that the grievance was screened and returned to the offender unprocessed.

**GR00 Case Tracking System**

**All grievances must be entered into the GR00 Case Tracking System on the date they are received.**

The GR00 Case Tracking System is updated as each stage of the grievance process is completed.  The UGI is authorized to correct 'data entry' errors, but must include a justification statement in the GR00 comment section for that specific grievance record.  When closing a grievance, **back dating records is unacceptable.**   Simply close the record on the same date being entered and enter a note in the comment section as to why the grievance was not closed on the correct date.

Records created in error, such as an incorrect TDCJ# entered, must be reported to the Central Grievance Office via email.  The email should request deletion of the record and shall include the grievance number for which deletion is requested, the new grievance number, offender name, TDCJ#, and the reason for the deletion.  No additional information is to be added to the GR00 comment section for that grievance record after the deletion has been requested.

Following is the required email format to use when requesting deletion of a record:

Please delete the following grievance that was entered in error:

Grievance to be deleted:          20XXXXXXXX
                                  Unit, Offender name and TDCJ #

Correct Grievance:                20XXXXXXXX
                                  Unit, Offender name and TDCJ#

**Screening Criteria**

**Emergency grievances are not eligible for any of the screening criteria and will be processed.**

The Offender Grievance Procedure is dedicated to solving problems and grievance investigators are expected to fulfill that mission whether through the formal grievance process or by taking action on information received in other ways such as, unprocessed grievances, offender interviews and I-60's.

Grievance investigators are expected to apply good correctional practice and exercise sound judgment when applying the screening criteria.  If any level of uncertainty exists concerning the applicability of screening criteria, **grievance investigators should err on the side of caution,** and process the grievance.

**The following criteria noted with an asterisk (*) are eligible for correction and resubmission.**

1. **Grievance time period has expired.**

   Offenders have 15 days to file a grievance, beginning from the date of the alleged incident or issue, or when he should have knowledge of the incident or issue.  When a grievance is returned to an offender unprocessed, the offender is afforded 15 days from the date of return to resubmit any correctable Step 1 grievance.  Grievances will be accepted for review up to and including the first working day beyond the 15 day time limit, whether at the initial submission or resubmission of the grievance.  Grievances received after that time may be returned to the offender unprocessed and they are not eligible for correction.

   NOTE:  **When calculating the 15 day time limit, consideration should be given for the number of days grievances were not collected, such as holidays that fall during the workweek or weekends. Grievances received after that time may be returned to the offender unprocessed.**

2. **Submission in excess of 1 every 7 days. ***

   **Emergency, Specialty, and Regular grievances regarding disciplinary appeals are exempt.**

   Only one Step 1 grievance may be processed every seven days, based on the date of the last processed Step 1 grievance entered in the GR00 Case Tracking System.  The 1 in 7 criteria may be determined by reviewing the GR00 Screen 18.  Unprocessed grievances, such as those ending in **"99"**, are not counted when determining the one in seven criteria.  Grievances submitted in excess of one every seven days may be returned to the offender unprocessed.

   **Exception:**  When an offender does not use the grievance process responsibly and an on-going pattern of abuse of the one in seven days requirement has been established, the UGI may request a deviation from guidelines established in the OGOM. This deviation may only be applied to individuals and must be submitted in writing and approved by the administrator for Offender Grievances.  The administrator will consider:  Is there sufficient evidence to show abuse of the grievance procedure?  Has a less formal means of resolving the issue been attempted?  If the deviation is not approved, is the offender likely to continue to abuse the grievance procedure?  If granted, the time period of a deviation is 90 days.  At the end of that time period the deviation will automatically expire unless a new request is presented for consideration.  The administrator for Offender Grievances will establish and maintain an intra-office tracking system to ensure the appropriate application of this approved deviation.

3. **Original not submitted. ***

   Offender grievances must be submitted in original form.  Hand written or typed carbon copies are not considered original documents; even if an original signature is documented on the signature line. Every effort should be made to make grievance forms available to all offenders; however, any document in original form, identifiable as a grievance, will be considered for processing.  Grievances that are not signed by the offender, or when an offender writes a name on the grievance other than his name of commitment such as, a Muslim name or an alias, the grievance may be returned unprocessed.

**4. Inappropriate/excessive attachments. \***

Offenders must state the nature of the grievance **on a single grievance form** in the space provided. agency documents such as answered sick call request forms, answered I-60's, inventories, and receipts which substantiate or further prove the offenders allegations should be accepted and the grievance processed. Unofficial documents, continuation pages, informal legal-like documents, petitions, unanswered I-60's or sick call requests, and drawings will not be accepted. Items such as insects, food particles, or similar items will not be accepted as attachments. Grievances submitted with excessive or inappropriate attachments may be returned to the offender unprocessed.

**5. No documented attempt at informal resolution. \***

Offenders must document an attempt to informally resolve an issue prior to filing a Step 1 grievance. **Any documented attempt** noted in the appropriate space of the grievance form will fulfill this requirement. The method or appropriateness of the attempt will not be scrutinized. Offenders may contact medical staff regarding non-emergent medical concerns by submitting an I-60 Request to Authority. Offender grievances that do not include a documented attempt at an informal resolution may be returned to the offender unprocessed.

**NOTE:** Informal resolution is not appropriate for disciplinary appeals and use of force.

**6. No requested relief is stated. \***

Offenders must document a request for action to resolve the claim in the space provided on the grievance form. The requested relief often provides valuable information and is helpful to the UGI when assigning an issue code to the grievance. If the offender fails to include a request for relief, the grievance may be returned to the offender unprocessed.

**7. Malicious use of vulgar, indecent, or physically threatening language directed at an individual. \***

Offender grievances that contain blatant or malicious use of vulgar, indecent, or physically threatening language **directed at any individual** may be returned to the offender unprocessed. Threats of physical harm to staff should be reported to unit officials. The administrator for Offender Grievances must be contacted prior to using a grievance as the basis for a disciplinary case.

**8. The issue presented is not grievable.**

Offender grievances regarding issues that are not grievable, as specified in AD-03.82, "Management of Offender Grievances", and may be returned to the offender unprocessed.

* State and federal court decisions, as well as laws and regulations.
* Parole decisions.
* Time served credit disputes.
* Matters for which other formal appeal mechanisms exist. For example, correspondence rules provide a separate mechanism for appealing the rejection of correspondence, publications, negative mailing list and other similar documents utilizing the Director's Review Committee.
* Any matter beyond the control of the agency.

Even though claims regarding time served credit disputes or decisions by the Director's Review Committee (DRC) are not considered grievable, the UGI will attach the Non-Grievable Issues form (Appendix C) directing the offender to the appropriate department. Grievances regarding disciplinary appeals filed prior to the hearing and comments regarding the Offender Grievance Procedure may be returned to the offender unprocessed utilizing this same return form. A grievance regarding the requirement to gather DNA samples is not grievable; however, the selection process and the collection process are grievable through the Offender Grievance Process.

**9. Redundant Issue.**

This screening criterion may be used to manage offenders who continue to file grievances on issues already addressed in a previous grievance. When this criterion is used, the previous grievance number must be documented in the space provided on the back of the Step 1 grievance form, as well as entered into the GR00 designated field.

**10. Illegible/incomprehensible.***

Offender grievances that are illegible, or incomprehensible may be returned to the offender unprocessed. If this criterion is continually utilized for the same offender, the grievance investigator will interview the offender to ensure he knows how to submit a grievance and there are no issues being missed that should be addressed.

**11. Inappropriate.***

Offender grievances requesting disciplinary action against an employee, such as a reprimand, termination, counseling, or disciplinary action; or a request for compensation as a result of consequential or punitive damages may be returned to the offender unprocessed. Requests regarding reimbursement for lost or damaged property are not considered consequential or punitive damages and should not be screened based on this criterion.

## GRIEVANCES THAT DO NOT QUALIFY FOR PROCESSING

Offender grievances that do not qualify for processing utilizing the definitions of the screening criteria may be returned to the offender unprocessed. This means the grievances do not require investigation, response, or an approving signature.

1. The UGI will date stamp the grievance form at the end of the narrative, as well as any sections the offender left blank such as no documented attempt at informal resolution; no requested relief stated; or no signature included.

2. The GR00 Case Tracking System automatically generates a grievance number.

3. The UGI will check all applicable screening criteria on the back of the I-127 grievance form and then record the grievance number, screening criteria used, **"99"** code used, the date the grievance was received and returned to the offender unprocessed (dates will be the same), and the UGI initials in the OFFICE USE ONLY box . The UGI will print and sign their name on the signature line provided.

4. If multiple screening criteria exist, each applicable criterion must be checked, except grievances screened for the following which are not eligible for correction and resubmission by the offender and should not be included with any other criterion:

    * #1 Grievable time period has expired.
    * #8 The issue presented is not grievable, unless it is a premature disciplinary appeal.
    * #9 Redundant of another grievance.

5. The screened grievance is entered into the GR00 using one of the **"99"** issue codes. The UGI will enter data on the GR00 subject line, a brief summary of the grievance on the comment line, and the screening criteria in the designated field of the GR00. It is the responsibility of the UGI to identify all of the screening criteria that apply to the grievance before it is returned to the offender. Up to three criteria may be entered in the designated field.

6. Unprocessed grievances are closed with the **"H"** outcome code on the same date received. When UGIs enter the issue code ending in **"99"**, the GR00 automatically enters the dates and closes the grievance with an **"H"** outcome code. However, if the UGI enters a different issue code other than one ending in **"99"** and then realizes it is eligible to be screened, the UGI will have to manually enter all date fields, as well as the **"H"** outcome code into GR00.

7. The Step 1 record for unprocessed grievances should never be edited or deleted, except as required by the TDCJ Records Retention Schedule.  Offenders will have 15 days from the date the grievance is screened to correct and resubmit the original grievance for processing.

8. Grievances returned to offenders unprocessed will not count when considering the one every seven days screening criteria.

9. A copy of the unprocessed grievance shall be placed in the offender's grievance file and the original returned to the offender.

> *Generally, comments written on returned grievances are discouraged; however, simple guidance may be useful to assist the offender when correcting and resubmitting the grievance.  The UGI should be mindful if the comment includes more than a few words of simple guidance, the grievance should be processed as a regular grievance, to include investigation, response, and a signature by the warden.*

There may be times when returning grievances to offenders to be corrected and resubmitted is no longer productive.  The UGI is to proceed with caution to avoid interfering with an offender's access to courts rights.  Two situations are discussed below:

If an offender underlinedattempts, but fails to correct and resubmit the grievance a second time, the grievance must still be entered into the GR00 and a new grievance number assigned.  The UGI should proceed as instructed in 1 – 4 above.  If an offender attempts, but fails to correct and resubmit the grievance a third time, the UGI will proceed as instructed by 1 – 4 above, and **interview the offender** to ensure he knows how to submit grievances correctly. A copy of the Instructions on How To Write and Submit Grievances should be provided.  **If an offender attempts, but fails to correct and resubmit the grievance a fourth time, the UGI will attach documentation of the interview to the original grievance and place both in the offender's grievance file.**

If an offender does not attempt to correct the screened grievance and resubmits it a second time, the UGI should not enter the grievance into the GR00 Case Tracking System and a new grievance number should not be assigned.  Instead, the UGI should complete the OFFICE USE ONLY section discussed in #3 above and enter comments into the GR00 discussed in #5 above, using the original grievance number.  If an offender fails to correct the grievance and resubmits it a third time, the UGI should complete #3 and #5 using the original grievance number, and **interview the offender** to ensure he knows how to submit the grievance correctly.  A copy of the Instructions on How To Write and Submit Grievances should be provided.  **If an offender fails to correct the grievance and resubmits it a fourth time, the UGI will attach documentation of the interview to the original grievance and place both in the offender's grievance file.**

**Each time the UGI handles the resubmitted, uncorrected grievance, an entry is made into the designated field of the GR00.**

> *Both scenarios where an offender attempts, but fails to correct the grievance or does not attempt to correct the grievance, only apply to grievances submitted **on the same grievance form**.  Grievances submitted on a new form, even if the grievance was previously screened, must be assigned a new grievance number and processed according to 1 – 4 above.*

## GRIEVANCES THAT QUALIFY FOR PROCESSING

1.  Once the grievance has been assigned an appropriate issue code, the UGI will enter the information as prompted by the GR00 Case Tracking System.  The computer will automatically assign a number to the grievance that will remain constant throughout the Step 1 and Step 2 process.

2.  The Step 1 process must be completed within 40 days of receipt from the offender**.**  One extension of the time limits to complete the investigation is permissible; however, extensions should be the **exception**, not the rule.  The UGI is responsible for notifying the offender in writing of the extension, using the Notice of Extension form (Appendix M).  The original form will be sent to the offender and a copy attached to the grievance and maintained in the offender's grievance file.  Extensions are to be entered into the GR00 in the designated field.   **Emergency grievances are not eligible for extensions.**

3.  After final processing of a Step 1 grievance, the offender's current unit of assignment must be verified.  The UGI will make a copy of the completed grievance to place in the offender's grievance file and close the grievance in the GR00 using the appropriate outcome code.  The grievance shall be date stamped on the 'Date Retd to Offender' line of the OFFICE USE ONLY box on the front of the form to indicate the date returned to the offender.

4.  If the offender has transferred, the grievance shall be forwarded to the UGI at the offender's current unit of assignment.  The UGI at the new unit of assignment will be responsible for date stamping above the OFFICE USE ONLY box to indicate the actual return date of the grievance to the offender.  This is crucial in determining time limits for Step 2 appeals.

**If a UGI or other grievance staff is named in a grievance or was involved in the incident grieved in any way, that staff shall not conduct the investigation.**

## TRANSFERRING A GRIEVANCE TO THE UNIT OF INCIDENT

**Grievances will be worked on the unit of incident, except property grievances and disciplinary appeals.**  Refer to Chapter VI, Processing Property Claims and Chapter VII, Disciplinary Appeals.

Occasionally, a Unit Grievance Investigator (UGI) may receive a grievance from an offender about an incident that occurred on another unit which will be forwarded to the unit of incident for investigation. Historically, this process has been referred to as **"Other Transferred Inmate" (OTI)**.  When this situation occurs, the UGI may apply the screening criteria, if applicable, and enter the grievance into the GR00 Case Tracking System.  If the grievance is eligible for processing, the UGI on the unit of assignment will forward the grievance to the UGI at the unit of incident.  **The UGI on the unit of assignment will be responsible for gathering all documentation necessary for the investigation of the grievance prior to forwarding the grievance to the UGI on the unit of incident.**

If a grievance is transferred to a UGI on another unit and they disagree with the initial acceptance, they may contact the administrator of Offender Grievance who will make the final decision.  The following procedure has been developed to track the grievances, protect from accidental loss, and is to be followed on each OTI:

1. The UGI on the offender's unit of assignment shall review the grievance, apply the screening criteria, if applicable, and enter it into the GR00.

2. If the grievance is eligible for processing, the UGI will enter "OTI to **{Unit of Incident}** on **{Date}"** into the GR00 comment section.

3. The UGI on the unit of assignment will send a TDCJ mainframe email to the UGI on the unit of incident and advise that the grievance is being forwarded to them.  The UGI on the unit of assignment will make a copy of the grievance and any investigative documentation before mailing the grievance via **first class mail** to the unit where the incident occurred.  A copy of the documents is placed in an **OTI pending file**.

4. **The investigation, response and authorized signature are the responsibility of the UGI on the unit of incident.**

5. Once the investigation is completed and the grievance signed, the UGI on the unit of incident should copy the completed grievance and all investigative documentation before mailing **the original** completed grievance and all investigative documentation via **first class mail** to the UGI on the offender's unit of assignment.  A copy of the documents is placed in an **OTI pending file**. The UGI on the unit of incident will send a TDCJ mainframe email to the UGI on the unit of assignment stating that the completed grievance is being mailed.

6. The UGI on the offender's current unit of assignment is responsible for closing the grievance in the GR00; placing a complete copy of the grievance and investigative documentation in the offender's grievance file; and forwarding the original completed grievance to the offender.  **The copy of the unprocessed grievance in the OTI pending file at the unit of assignment is to be destroyed.**

7. The UGI on the offender's current unit of assignment will send a TDCJ mainframe email to the UGI on the unit of incident stating that the grievance has been closed and returned to the offender.  **The copy of the grievance in the OTI pending file at the unit of incident is to be destroyed.**

## CATEGORIES OF GRIEVANCES

**EMERGENCY GRIEVANCES.**  Any grievance regarding matters for which disposition within regular time limits would subject the grieving offender to a substantial risk of personal injury or cause other serious or irreparable harm shall be considered an emergency grievance and is not eligible for screening or extension.   See the note below for exceptions.   Emergency grievances require **immediate written notification** to the appropriate authority for initiating an investigation.

Investigations are to be completed and returned to the grievance investigator in a timely manner so that the grievance process may be completed within the required 40 day time limit.

*Grievances alleging sexual assault or sexual abuse shall be coordinated with the Office of Inspector General (OIG) as set forth in the TDCJ Safe Prisons Plan.  Allegations of sexual harassment are handled administratively through the offender disciplinary procedures for offenders or PD-22 for staff.*

1.  **Fear of Another Offender or Request for Protection, Codes 000, 001, 014.**  If an offender alleges or implies that he is in fear for his life due to the actions or threats from another offender, or has requested protection, the UGI will immediately notify the chief of unit classification and major of the claim via TDCJ mainframe email.  The UGI will then telephone the highest ranking security supervisor on duty and notify them of the claim.  A copy of the email, listing the recipients, shall be attached to the grievance investigative documentation.  The UGI will complete the OFFICE USE ONLY portion of the OG-01 investigation worksheet and immediately forward a copy of the narrative portion of the grievance and the worksheet to the chief of unit classification and major.  The investigation will be conducted in accordance with *The TDCJ Safe Prisons Plan*.  The chief of unit classification will document any Unit Classification Committee (UCC) decision; and return all investigative documents to the UGI.  The UGI will review the information provided by the chief of unit classification and the major to formulate a suggested response for the warden's signature.

2.  **Fear of Staff Codes 002, 015.**  If an offender alleges or implies that he is in fear for his life due to the actions or threats from staff, the UGI will immediately notify the warden via TDCJ mainframe email.  The UGI will then telephone the highest ranking security supervisor on duty and notify them of the claim.  A copy of the email, listing the recipients, shall be attached to the grievance investigative documentation.  The UGI will complete the OFFICE USE ONLY portion of the OG-01 investigation worksheet and immediately forward a copy of the narrative portion of the grievance and the worksheet to the warden, or designee.  The warden or designee shall review and investigate the grievance; document all investigative activity; and return the completed worksheet and all documents to the UGI, directing the UGI how to proceed.

3.  **Sexual Assault by Another Offender or Staff Codes 008, 011.  *OIG referral required.***  An offender grievance that includes allegations of sexual assault which is defined as penetration of the anus, sexual organ, or mouth of another person by any means, without that person's consent, shall be processed as an emergency grievance.  The UGI will immediately notify the warden, safe prisons coordinator and the OIG via TDCJ mainframe email.  The UGI will then telephone the highest ranking security supervisor on duty and notify them of the claim.  A copy of the email, listing the recipients, shall be attached to the grievance investigative documentation.  The UGI will complete the OFFICE USE ONLY portion of the OG-01 investigation worksheet and immediately forward a copy of the narrative portion of the grievance and the worksheet to the warden, or designee.  The warden or designee shall review and investigate the grievance; document all investigative activity; and return the completed worksheet and all documents to the UGI, directing the UGI how to proceed.

4. **Sexual Abuse by Another Offender or Staff Codes 009, 012.**   An offender grievance that includes allegations of sexual abuse which is defined as sexual contact between the genitals of one person and the genitals, mouth, anus, or hands of another person, to include sexual fondling, without that person's consent, shall be processed as an emergency grievance.   The UGI will immediately notify the warden, unit safe prisons coordinator, and the OIG via TDCJ mainframe email.   The UGI will then telephone the highest ranking security supervisor on duty and notify them of the claim.   A copy of the email, listing the recipients, shall be attached to the grievance investigative documentation.   The UGI will complete the OFFICE USE ONLY portion of the OG-01 investigation worksheet and immediately forward a copy of the narrative portion of the grievance and the worksheet to the warden, or designee. The warden or designee shall review and investigate the grievance; document all investigative activity; and return the completed worksheet and all documents to the UGI, directing the UGI how to proceed.

5. **Medical Emergency Code 003.**   If an offender alleges or implies that his life is in danger due to a medical emergency such as threats of suicide, chest pains, or difficulty breathing, the UGI will immediately contact the Health Services administrator, unit practice manager, or the director of nursing, nurse administrator as appropriate, who will initiate and coordinate an investigation with the unit medical department.   **Refer to Chapter IX.**

6. **Extortion Code 007.**   An offender grievance that includes allegations of extortion which includes obtaining currency, property, or demanding the performance of an action by coercion, violence, or threats of violence such as sexual favors, commissary items, or trust fund deposits shall be processed as an emergency grievance.   The UGI will immediately notify the chief of unit classification, major, and the unit safe prisons coordinator via TDCJ mainframe email.   The UGI will then telephone the highest ranking security supervisor on duty and notify them of the claim.   A copy of the email, listing the recipients, shall be attached to the grievance investigative documentation.   The UGI will complete the OFFICE USE ONLY portion of the OG-01 investigation worksheet and immediately forward a copy of the narrative portion of the grievance and the worksheet to the unit safe prisons coordinator.   The investigation will be conducted in accordance with the *TDCJ Safe Prisons Plan*.   The unit safe prisons coordinator will forward all investigative documents to the UGI.   The UGI will formulate a response before forwarding the grievance to the warden for signature.

The Emergency Checklist (Appendix I) was developed in an effort to provide staff with a consistent, systematic and efficient tool to identify emergency issues.   The checklist contains five questions that may be applied to any grievance that could present an emergency situation.   The Checklist should be applied by the UGI prior to coding and logging the grievance in the GR00.   Keep in mind that an emergency may not always be stated, but may instead be implied or described in the grievance.   If the person completing the checklist answers YES to any of the five questions, the grievance will immediately be identified as an emergency; coded as an emergency; and processed according to guidelines established in the *TDCJ Safe Prisons Plan*.

If all questions are answered NO, the grievance should be coded in a way that best describes the complaint and should be processed as a regular grievance subject to all the screening criteria.   In either case, the original emergency checklist will be attached to the grievance and maintained in the offender's grievance file.   In the event a grievance is unprocessed after the checklist has been applied, a copy of the unprocessed grievance and the checklist must be maintained in the offender's grievance file.   If the emergency checklist was applied after the grievance was coded an emergency, the issue code may be revised, but only after a note is made in the comment section of the GR00 to justify the change.

The checklist may be applied to any grievance when an emergency claim is not clear.   For those grievances involving emergency claims that are obvious or clearly stated, the grievance should be processed and the checklist is not required.   Once the checklist is applied and it is still unclear, the UGI should err on the side of caution and process the grievance as an emergency.

**SPECIALTY GRIEVANCES.**   Specialty grievances are any grievances that are non-emergency; however, by the nature of the claim, require prompt attention and special processing.   Specialty grievances are eligible for all screening criteria, **except #2 Submission in excess of 1 every 7 days**. UGIs are to only provide a copy of the narrative portion of a grievance with the OG-01 Grievance Worksheet for specialty grievances.


**Office of the Inspector General (OIG)**

Grievances alleging excessive or unreported use of force (issue codes 800 / 801) or criminal acts by staff (issue code 803) shall be given prompt attention and will be coordinated with the OIG.

> **\* Excessive or Unreported Use of Force (UOF)**

> The following procedures shall be followed when processing offender grievances pertaining to documented or undocumented uses of force.   The UGI shall:

> 1. Code the grievance an 800 or 801 and enter it into the GR00 Automated Tracking System.

> 2. Contact the unit UOF coordinator to determine whether the UOF was documented or undocumented.

> **If the UOF was documented, then proceed to #3.   If undocumented, then proceed to #5.**

> 3. Obtain the UOF report number.

> 4. The response to the offender on the original grievance form shall indicate that a copy of his grievance was included with the UOF report for further review and provide the UOF number.   Proceed to #13.

> **All copies of grievances included with a UOF report will be a completed grievance that includes the response and warden's signature.**

> *If the UOF report is no longer at the unit, the UGI shall contact the appropriate regional grievance supervisor to determine if the report is located at the regional office.  if so, a copy of the grievance shall be faxed to the appropriate regional office with the use of force letter (Appendix P) which documents the date and time and to whom the document was sent.  The fax confirmation sheet shall be included and reviewed with all other investigative documents.*

> *The regional grievance supervisor shall be responsible for ensuring the grievance is included with the UOF report for review by the regional UOF reviewer.*

> *If the regional review has been completed and the report is no longer located at the regional office, the UGI shall fax a copy of the grievance to the Office of the Administrative Monitor for Use of Force with the use of force letter (Appendix P) which documents the date and time and to whom the document was sent.  The fax confirmation sheet shall be included with all other investigative documents.*

**If the UOF was not documented – OIG Referral Required:**

5. Forward an OIG Fact Sheet with all information completed in Section I, gather and provide staff statements, and a copy of the grievance to the regional grievance supervisor who will forward to a designated OIG staff member for review. The UGI shall make the initial entry into the GR00 25 screen for OIG Referral Tracking. The responsible staff member handling the referral, either in the regional office or regional OIG office, as appropriate, shall then update GR00 at each step of the process.

6. OIG staff will determine:

   a) If an OIG case will be opened and an OIG investigative case number assigned. The OIG case number will be listed.

   b) If there was insufficient evidence to open an OIG investigation.

   c) If it is appropriate to recommend a review by the warden for possible PD-22 violations that may have occurred.

7. OIG staff will update the GR00 25 Screen OIG Referral Tracking and return the fact sheet to the regional grievance supervisor.

8. The regional grievance supervisor will update the GR00 25 Screen OIG Referral Tracking and review the OIG decision. The regional grievance supervisor will instruct the UGI to either:

   a) Formulate a response for the warden's signature and complete the Step 1 grievance process when the OIG supervisor checks the a or b box in Section III and proceed to #12 below; or

   b) Review the grievance and fact sheet with the warden for any action deemed appropriate. Once the review is completed, the UGI will formulate a response for the warden's signature and complete the Step 1 grievance process when the OIG supervisor checks the c box in Section III.

9. The regional grievance supervisor will return the grievance and the fact sheet to the UGI.

10. The UGI will review the grievance and the OIG decision with the warden prior to formulating a response. The warden will take any action he deems appropriate and direct the UGI to complete the Step 1 grievance process.

11. UGI will place the suggested response on the original grievance form. The response may address additional issues in the grievance not associated with the OIG review. The UGI will make final entry to the GR00 closing the grievance with the appropriate outcome code.

**Documented and Undocumented UOF:**

12. Forward the original I-127 grievance form and OG-01 worksheet with a suggested response to the warden or designee for review and signature;

13. Assign an outcome code to the grievance and make the appropriate entries into the GR00.

   a) If the grievance was included with a documented UOF report, the appropriate outcome code is **"U"**, Included with the UOF Report.

   b) If the grievance was referred to the OIG and they determine <u>further investigation is warranted and an OIG case was opened</u>, the appropriate outcome code is **"T"**, Referred to the Office of the Inspector General.

   c) If the grievance was referred to the OIG and they determine <u>no further investigation is warranted</u>, the appropriate outcome code is **"D"**, No Action.

   d) If the OIG recommends a review by the warden for possible PD-22 violations, the outcome code will be based on the outcome of the warden's review, **"D"**, No Action or **"R",** Resolved.

14. Make a copy of the signed grievance and forward the copy to the unit UOF coordinator along with the Use of Force Letter (Appendix P) to be included with the use of force report;

15. Make a copy of the signed grievance and place the copy and all supporting documentation in the offender's grievance file.

16. Return only the original I-127 grievance form including response and warden's signature, to the offender.  Any documentation submitted by the offender should also be returned.

**\*   Harassment or Retaliation for Exercising Access to Courts Rights or Use of the Grievance Procedure**

Offender grievances that allege harassment or retaliation for exercising access to courts rights or use of the grievance procedure shall be identified and investigated in the same manner as any other staff complaint.

If the investigation <u>fails to reveal evidence</u> of harassment or retaliation for exercising access to courts rights or use of the grievance process, the grievance should be processed as a regular grievance.

If the investigation <u>reveals</u> evidence to support the allegations of harassment or retaliation for exercising access to courts or use of the grievance process, the UGI shall refer the grievance and all supporting documentation to the OIG using the procedure discussed in 5-16 above.

**\*   Medical**

**For additional guidance processing Medical Grievances, refer to Chapter IX.**

**\*   Americans with Disabilities Act (ADA)**

ADA issues include denial of access to a program, service, or activity based on a disability.  Offender grievances that request relief through the ADA will be processed as specialty grievances.  The UGI will complete the OFFICE USE ONLY portion of the OG-01 grievance investigation worksheet and immediately forward a copy of the narrative portion of the grievance and the worksheet to the **unit risk manager** for investigation.

The worksheet, including a recommended response, signature and all investigative notes shall be returned to the UGI within 10 working days.  Additional time may be requested by contacting the UGI; however, the 40 day time limit still applies.  The UGI will review the response for quality and appropriateness before forwarding the grievance to the warden for signature.

#### ∗   Religion

Offender grievances regarding religious activities, dress, appearance, and religious grooming will be processed as specialty grievances.  The UGI will complete the OFFICE USE ONLY portion of the OG-01 grievance investigation worksheet and immediately forward a copy of the narrative portion of the grievance and the worksheet to the **unit chaplain** for investigation.

The worksheet, including a recommended response, signature and all investigative notes shall be returned to the UGI within 10 working days.  Additional time may be requested by contacting the UGI; however, the 40 day time limit still applies.  The UGI will review the response for quality and appropriateness before forwarding the grievance to the warden for signature.

#### ∗   Impermissible Conduct by Offenders

Impermissible offender conduct, as defined in AD 03.02, "Impermissible Offender Conduct", involves an offender exercising authority over another offender; having access to sensitive information; or receiving special privileges.  The UGI will complete the OFFICE USE ONLY portion of the OG-01 grievance investigation worksheet and immediately forward a copy of the narrative portion of the grievance and the worksheet to the **unit operational review sergeant** for investigation.

The worksheet, including a recommended response, signature and all investigative notes shall be returned to the UGI within 10 working days.  Additional time may be requested by contacting the UGI; however, the 40 day time limit still applies.  The UGI shall review the response for quality and appropriateness before forwarding the grievance to the warden for signature.

#### Staff Use of Slurs or Hostile Epithets Referrals

> *A referral regarding allegations of staff use of slurs or hostile epithets, PD-22 14b, is required according to guidelines set forth in PD-31, "Discrimination in the Workplace."  A referral may be identified at any time during a Step 1 or Step 2 offender grievance investigation.*

> *Any time an employee admits to using slurs or hostile epithets, or a witness states that they heard another employee use slurs or hostile epithets, the grievance and staff statements are referred to the Human Resources, Employee Relations Intake Department for TDCJ employees only.*

> *Contract staff referrals are made as follows: Private Facility Contract Monitoring and Oversight Division (PFCMOD) for private facilities and treatment staff, the Office of Professional Standards for medical staff, and the Windham School District General Counsel's Office for Windham staff.*

1.  If an offender alleges that a staff member used slurs or hostile epithets **and** the offender does not state whether any other staff members were present, the grievance investigator is to interview the offender as to the location of where the alleged incident occurred and whether there was anyone else in the area.  If there were only offenders in the area, then acquire a written statement from the staff member who the allegations are against.  If the staff member states the incident did not occur, then the grievance **is not** referred.  If the staff member states the incident occurred, the grievance **is** referred.

2.  If an offender alleges that a staff member used slurs or hostile epithets **and** the offender states another staff member was present, this staff member is a witness.  The **witness is to be interviewed first** and a written statement acquired.  If the witness states the incident did not occur, then acquire a statement from the staff member who the allegations are against.  If the staff member also states the incident did not occur, the grievance **is not** referred.

    If a witness states the incident occurred, **the UGI investigation stops**.  Do not interview the staff member the allegations are against and refer the grievance and witness statement.

3.  Issue Code 811 is documented on grievances that involve staff use of slurs or hostile epithets.

4.  The Staff Use of Slurs or Epithets Referral form (Appendix R) is to be completed and taken to the warden who refers to the appropriate department.  A completed and signed referral form will be attached to all offender grievances that are referred.

5.  Employee information is confidential.  Therefore, employee related information regarding a referral such as an intake number, or any related documents are not to be attached to an offender grievance in order to maintain confidentiality.

6.  The following response will be provided on grievances that are referred to the appropriate department:

    **"The issue regarding staff use of slurs or hostile epithets was referred to the appropriate Agency Official for investigation."**

7.  Outcome Code **"O"**, Referred to Employee Relations for Investigation, was created to apply when:

    *   The only issue listed in the grievance is staff use of slurs or hostile epithets.

    *   The only issue code applied to the grievance is 811.

    *   The grievance was referred to the appropriate department.

8.  Multiple issue Grievances – For example, an offender alleges an undocumented or excessive use of force which is issue code 800 and a staff member used slurs or epithets an issue code 811; an offender alleges that a nurse denied him his medication which is issue code 621 and a staff member used slurs or hostile epithets an issue code 811; or an offender alleges an officer confiscated his personal property which is issue code 512 and  a staff member used slurs or hostile epithets an issue code 811.

    The outcome code for multiple issue grievances also involving staff use of slurs or epithets will be the appropriate outcome code, other than **"O"**, and relate to the response provided the offender.  For example, **"D"** is listed for no action, or an **"R"** is listed when the issue is resolved.

**REGULAR GRIEVANCES.**   Grievances other than those categorized as emergency or specialty grievances shall be processed as regular grievances, **subject to all screening criteria**.  The UGI shall be responsible for investigating or coordinating the investigation of regular Step 1 grievances.  The UGI will ensure that all investigative notes and information are documented and attached to the OG-01 Grievance Worksheet.  The UGI will be responsible for reviewing and formulating the grievance response for quality and appropriateness before forwarding to the warden for signature.

**For additional guidance processing Property Grievances, refer to Chapter VI.**

**For additional guidance processing Disciplinary Grievances, refer to Chapter VII.**

**For additional guidance processing Medical Grievances, refer to Chapter IX.**

\*    When the UGI requests assistance, information, or a complete investigation regarding an offender's claim, that request shall be completed in a timely manner.

\*    The UGI will complete the OFFICE USE ONLY box on the OG-01 worksheet and forward it to the appropriate department head for investigation, suggested response, and signature on the worksheet.

\*    If it is not possible to accurately summarize the grievance, the UGI may make a copy of only the narrative portion of the grievance and provide to the department head.

\*    The UGI will ensure that the OG-01, including a recommended response, signature, and all investigative notes are returned within 10 working days.  Additional time may be requested by contacting the UGI; however, the 40 day time limit still applies.

\*    The UGI will review staff statements for quality and appropriateness before formulating a response and forwarding to the warden for signature.

**Outcome codes**

The outcome code assigned to a completed grievance will reflect the action taken as a result of the grievance.  Refer to the Outcome Codes (Appendix E) for a detailed list and definition of the outcome codes.

Several outcome codes are used in specific circumstances, for example:

    \*   Outcome code **"C"** is only used when a grievance is lost and the offender is allowed to resubmit the grievance under a new grievance number, or an offender informs the grievance investigator that he did not write the grievance.  **This outcome code may only be entered into GR00 by a regional grievance supervisor or central grievance office supervisor.**

    \*   Outcome code **"H"** is only used to identify screened or unprocessed Step 1 or Step 2 grievances.

    \*   Outcome code **"T"** is only used when the response from the OIG states that a case will be opened based on the offender's allegation.

    \*   Outcome code **"U"** is only used when a copy of a grievance is included with a documented use of force report.

    \*   Outcome code **"O"** is only used when a grievance is referred regarding staff use of slurs or hostile epithets.

UGIs are to apply outcome codes in accordance with their definitions and with the primary issue noted in the grievance.

**Final Step 1 Processing**

* A copy of the Step 1 grievance and all investigative documentation are maintained in a file folder labeled with an offender's name and TDCJ number.

* UGIs will fold completed Step 1 grievances being returned to offenders in a manner that the response and grievance text are not visible, then tape the grievance closed.

* The UGI will review the TDCJ mainframe computer screens to determine an offender's current housing location and record the destination if different from when the grievance was submitted.

* If an offender has transferred to another unit, the grievance will be mailed to the offender's current unit.

* If an offender has discharged from TDCJ, the completed grievance will be maintained in the offenders' inactive grievance file.  If the offender provided a forwarding address to the UGI, then the grievance may be mailed to him.

* The folded grievances will be delivered to the unit mailroom for distribution to the offenders.

# Step 2 Emergency Grievance

Grievance staff will collect grievances each workday either from the grievance box or directly from the offender.

**Translate Step 2 grievance to English if written in Spanish.**

**Review for Emergencies**

Enter grievance into GR00 and complete the OFFICE USE ONLY box on the front of the form.

No Emergencies

Forward the original Step 2, Step 1 and a copy of all support documentation from the Step 1 investigation to the Central Grievance Office (CGO).

CGO clerical staff will sort grievances by issue code and forward them to the appropriate investigating authority.

Fear of Offenders

Fear of Staff

Medical Emergency

Sexual Assault

Sexual Abuse

Extortion

**If an emergency is identified after the Step 2 grievance is received at the CGO, the Regional Grievance Supervisor shall be immediately notified and will coordinate with the unit to ensure that an OPI is initiated.**

Disciplinary grievances are investigated by staff in the CGO.

Property grievances are investigated by staff in the regional office or in the CGO.

Grievances concerning operational issues are forwarded to the respective regional office for investigation.

Grievances concerning technical areas such as, medical, mail and legal are forwarded to the appropriate functional area proponent for investigation.

Immediately initiate an Offender Protection Investigation (OPI) including the notification of the Warden, Major, Chief of Classification, or Medical staff, as appropriate.

For Sexual Assault and Sexual Abuse immediately notify the Warden, OIG, and the Safe Prisons Coordinator.

**OPI investigations are to be initiated before the grievance is mailed to the CGO.**

**Sexual Harassment**
Processed by unit administration through the offender disciplinary procedures or PD-22

The original signed Step 2 grievance and all supporting documentation is returned to the CGO to be imaged into the computer and closed in the GR00.

CGO will return the original signed Step 1 and Step 2 grievance to the UGI on the offender's unit of assignment who is responsible for forwarding the documents to the offender.

# Step 2 Regular and Specialty Grievances

Grievance staff will collect grievances each workday either from the grievance box or directly from the offender.

**Translate Step 2 grievance to English if written in Spanish**

**Review for Emergencies**

Log the grievance into GR00 and complete the OFFICE USE ONLY box on the front of the form.

Forward the original Step 2, Step 1 and a copy of all support documentation from the Step 1 investigation to the Central Grievance Office (CGO).

CGO clerical staff will sort grievances by issue code and forward the grievance and supporting documentation to the appropriate investigating authority.

Disciplinary grievances are investigated by grievance staff at the CGO.

Grievances concerning operational issues are forwarded to the respective region for investigation.

Grievances concerning highly technical areas such as, Medical, mail and legal are forwarded to the appropriate functional area proponent for investigation.

Image all documentation in the computer. Return the original signed Step 1 and Step 2 grievance to the offender with instructions to correct and resubmit the grievance within 15 days, if appropriate.

Unprocessed

Apply Screening Criteria

Mandatory

OIG Referrals

A Step 2 grievance that includes allegations of excessive or unreported use of force, criminal acts by staff, or evidence of harassment or retaliation for using the grievance procedure will be forwarded to Central Office OIG staff for review. If the Step 1 grievance was referred to a Regional OIG Investigator at Step 1, the Step 2 will be reviewed for accuracy.

A Step 2 grievance that includes allegations of excessive or unreported use of force, criminal acts by staff, or evidence of harassment or retaliation for using the grievance procedure that were not referred at Step 1 will be forwarded to Central Office OIG staff to determine: an OIG case will be opened, there is insufficient evidence to open a case, or the issue should be referred back to the Warden for action.

Processed

Conduct Investigation

The original, signed Step 2 grievance and all supporting documentation is returned to the CGO to be imaged into the computer and closed in the GR00 system

CGO will return the original signed Step 1 and Step 2 grievance to the UGI on the offender's unit of assignment who is responsible for forwarding the documents to the offender.

## PROCESSING STEP 2 (I-128) GRIEVANCES

A Step 2 grievance may be submitted when an offender is dissatisfied with the warden's response on the Step 1 grievance within 15 days of the warden's signature on the Step 1, or the date the Step 1 grievance was returned to the offender.  This date is located on the "Date Retd to Offender" line of the OFFICE USE ONLY box, or date stamped above the box on the front of the grievance form.

**Collection of Grievances**

1.  Offenders must place their completed Step 2 grievance in the collection box, or hand them directly to grievance staff.  Step 2 grievances that are mailed directly to the Central Grievance Office (CGO), bypassing the UGI, will be returned to the offender with instructions on how to submit the grievance correctly.

2.  Once the Step 2 grievance is received at the unit, the UGI will:

    *   Ensure all Step 2 grievances written in Spanish are translated to English by a TDCJ certified interpreter.

    *   Review the Step 2 for emergency issues.  If an emergency is identified, the UGI shall make the required notifications in accordance with the *Safe Prisons Plan*.  If an emergency issue is identified, the notification emails and all action taken by the UGI must be documented on an OG-01 Grievance Worksheet and all documents forwarded to CGO.

3.  The UGI will enter the date received at the unit into the GR00 Case Tracking System, as well as, record the 'UGI Recd Date', grievance number, and issue code in the OFFICE USE ONLY box on the front of the Step 2 form.  The grievance number and issue code are the same as listed on the Step 1 form.  The initial entry into the GR00 marks the beginning of the 35 days or 45 days for medical grievances, Step 2 process.

4.  All Step 2 grievances must be forwarded to the CGO **when received and not accumulated**.  Utilize the most expeditious, yet cost effective means available as noted in Chapter III.

5.  Grievances received by the CGO with insufficient documentation will immediately be brought to the attention of the appropriate CGO supervisor and regional grievance supervisor for correction and to identify future training needs.

6.  If an offender submits a grievance written in **pencil**, grievance staff will accept the grievance, make a copy to be used in place of the penciled original, and attach the original to the investigative documentation.  Any time that an original grievance must be replaced with a copy of the grievance, the verbiage **Accept as Original & staff initials** are to be written at the top.

**Sorting / Prioritizing Grievances**

> *All grievances received at the CGO that include requests for protection from staff or offenders will be immediately faxed to the appropriate regional grievance supervisor for processing and followed by a telephone call.  This includes those that were identified as a result of investigating other issues. The regional grievance supervisor is responsible for immediately making the required notifications to the warden, chief of unit classification and the major, as appropriate according to the TDCJ Safe Prisons Plan.*

At any point of the Step 2 review, if an emergency issue is identified, the grievance will be given immediate attention and processed according to the *TDCJ Safe Prisons Plan*.

**Fear of Another Offender or Requests for Protection Codes 000, 001, 013**

\*   Review and obtain copies of the following UCR screens;

    \*   UCR 02  Housing and Job Assignment History.
    \*   UCR 07  Current Institutional Adjustment Record such as enemies or security threat group (STG) affiliation.
    \*   UCR 11   Code 34 indicates an offender protection investigation has been completed, Code 02 indicates a safekeeping status review.

\*   If an offender protection investigation was conducted by the unit:

    \*   In cases where an OPI investigation was already conducted, but the UGI has not provided the investigation documentation, regional grievance staff shall contact the unit classification office to obtain a copy of the investigation and the Unit Classification Committee (UCC) docket.

    \*   Regional grievance staff shall review the unit investigation and the UCC decision.  If the UCC recommended a transfer, regional grievance staff shall obtain a copy of the transfer request and attach it to the OG-01 Grievance Worksheet as support documentation.

    \*   If an offender has provided additional information on the Step 2 grievance that could possibly affect the decision of the State Classification Committee (SCC), that information will be provided to the assistant director for Classification and Records, who will then provide it to the appropriate SCC member.

\*   If an OPI investigation <u>was not</u> conducted at Step 1, the regional grievance supervisor will coordinate an investigation with the unit chief of classification and the major by <u>immediately</u> faxing the narrative portion of the grievance and an OG-01 with the OFFICE USE ONLY section completed to the unit grievance and classification offices.

\*   The unit chief of classification will document all investigation notes on the OG-01 and return the signed OG-01 to the appropriate regional grievance supervisor to be included with the grievance investigation.

**Fear of Staff Codes 002, 015**

\*   If an offender alleges that staff either harmed him or threatened to harm him, the regional grievance supervisor shall immediately contact the warden to coordinate an investigation of the claim.  Any investigation, action, or involvement of the Office of the Inspector General (OIG) for a Step 2 grievance shall be at the discretion of the regional director; however, the offender must be provided a response to the grievance within established time limits.

**Medical Emergency Code 003**

\*   If an offender alleges a medical emergency in a Step 2 grievance, the Health Services Office of Professional Standards will investigate the grievance and take action when appropriate.  The offender must be provided a response to the grievance within established time limits.  **Refer to Chapter IX.**

**Sexual Assault or Sexual Abuse by Another Offender Codes 008, 009**

*   If an offender alleges that staff or another offender sexually assaulted or sexually abused him, the regional grievance supervisor shall immediately contact the warden to coordinate an investigation of the claim.  Any investigation, action, or involvement of the OIG for a Step 2 grievance shall be at the discretion of the regional director; however, the offender must be provided a response to the grievance within established time limits.

**Sexual Assault or Sexual Abuse by Staff Codes 011, 012**

*   If an offender alleges that staff sexually assaulted or sexually abused him, the regional grievance supervisor shall immediately contact the warden to coordinate an investigation of the claim.  Any investigation, action, or involvement of the OIG for a Step 2 grievance shall be at the discretion of the regional director; however, the offender must be provided a response to the grievance within established time limits.

**Allegations of sexual harassment are handled administratively through the offender disciplinary procedures for offenders or PD-22 for staff.**

**Extortion, Code 007**

*   If an offender alleges that he is a victim of extortion, the regional grievance supervisor shall immediately contact the warden to coordinate an investigation of the claim.  Any investigation, action, or involvement of the OIG for a Step 2 grievance shall be at the discretion of the regional director; however, the offender must be provided a response to the grievance within established time limits.

Grievances received at the CGO that are identified as medical, ADA, impermissible offender conduct, religion, mail, access to courts, and transportation will be forwarded to the appropriate program administrator for processing.

**Step 2 Routing**

Step 2 grievances will be sorted and routed to the appropriate regional office or program administrator for investigation, response, and signature according to the following table:

| CODE | ISSUE | AUTHORITY |
|------|-------|-----------|
| 000-002 | Requests for Protection (Offender or Staff) | Regional Director |
| 003 | Medical Emergencies | Program Administrator for Medical |
| 004, 526 | ADA Issues, Safety Issues | Program Administrator for Risk Management |
| 005 | Impermissible Conduct Issues | Program Administrator for Monitoring & Standards |
| 006, 007 | Discrimination Issues, Extortion | Regional Director |
| 008, 011 | Allegations of Sexual Assault (Offender or Staff) | Regional Director / OIG |
| 009, 012 | Allegations of Sexual Abuse (Offender or Staff) | Regional Director / OIG |
| 010, 013 | Allegations of Sexual Harassment (Offender or staff) | Regional Director |
| 014, 015 | Allegations of Verbal Threats (Offender or Staff) | Regional Director |
| 100's | Religious Issues | Program Administrator for Chaplaincy |
| 200's | Classification Issues | Regional Director |
| 300-303 | Communication Issues, Visits (non-legal), Telephone Calls, Interview Requests | Regional Director |
| 304-308 | Mail Issues | Program Administrator for MSCP |
| 400's | Disciplinary Appeals | Central Grievance Office |
| 500-511 | Operational Issues, Food, Commissary, Trust Fund, Sanitation, Necessities, Activity Rotation, Living and Working Conditions, Grooming, Recreation, Showers, etc. | Regional Director Central Grievance Office |
| 512, 513, 515, 525 | Confiscation/Contraband, Property Lost/Damaged/Stolen, Property Policy, Craft Shop | Regional Director Central Grievance Office |
| 518-522, 524 | Searches, Maintenance, Drug Testing | Regional Director |
| 523 | Institutional Lockdown | Central Grievance Office |
| 600's | Medical | Program Administrator for Medical |
| 700's | Access to Courts | Program Administrator for Access to Courts |
| 800, 801, 803 | Staff Claim (OIG) | OIG |
| 802, 804-815 | Staff Complaint | Regional Director Central Grievance Office |
| 900 | Transportation | Program Administrator for Transportation |
| 901, 903, 904 and 910 | Grievance Procedure / Miscellaneous Claims | Central Grievance Office |
| 911 | DNA Issues | Central Grievance Office |

**Issue Codes**

Issue Codes are assigned by the UGI at Step 1 and should not be added or changed when a Step 2 grievance form is received at the unit. The UGI will transfer the same issue code listed on the Step 1 form to the Step 2 form. Changes to issue codes will only be made at the Central Grievance Office (CGO) as directed by a central grievance office supervisor. A written justification, to include the initials of the person entering the change, will be entered into the GR00 Case Tracking System comment section when a code is changed.

Errors associated with the coding of grievances will immediately be brought to the attention of the appropriate central grievance office supervisor and regional grievance supervisor for correction and to identify future training needs.

For grievances which do not qualify for processing at the Step 2 level, issue codes are assigned by identifying the broad subject category (100, 200, 300, 400, 500, 600, 700, 800 or 900) that best describes the grievance, followed by the numbers **"99"**. For example, a grievance involving a staff complaint that is returned to an offender unprocessed would be coded 899. The **"8"** represents the broad category staff complaints and the **"99"** indicates that the grievance was screened and returned to the offender unprocessed.

**GR00 Case Tracking System**

Central Grievance Office clerical staff are responsible for entering data into the GROO for each Step 2 grievance received. The GR00 is updated as each stage of the grievance process is completed.

Designated CGO staff is responsible for closing the Step 2 grievance prior to forwarding the original Step 1 and Step 2 grievances to the UGI at the offender's current unit of assignment who is responsible for returning the documents to the offender.

**Screening Criteria**

Once the Step 2 Grievance is received at the CGO, designated staff will review the Step 2 grievance. Regular grievances may be screened based on screening criteria outlined by AD-03.82, "Offender Grievances". If multiple screening criteria exist, each applicable criterion must be checked and the grievance entered into the GR00 before being returned to the offender unprocessed.

Grievance investigators are expected to apply good correctional practice and exercise sound judgment when applying the screening criteria. If any level of uncertainty exists concerning the applicability of screening criteria, **grievance investigators should err on the side of caution,** and process the grievance.

If a grievance is screened and returned to an offender unprocessed, the offender will be afforded 15 days from the date of return to resubmit any correctable Step 2 grievance. **The following criteria noted with an asterisk (*) are eligible for correction and resubmission.**

1. **Grievable time period has expired.**

   Offenders have 15 days to appeal a Step 1 decision on a grievance, beginning from the date of the warden's signature on the Step 1 grievance, or the date of return of the Step 1 grievance to the offender. Grievances will be accepted for review up to and including the first working day beyond the 15 day time limit. Grievances received after that time may be returned to the offender unprocessed.

**When calculating the 15 day time limit, consideration should be given for the number of days grievances were not collected, such as holidays that fall during the workweek or weekends.**

2.  **Illegible/incomprehensible. \***

Offender grievances that are illegible or incomprehensible may be returned to the offender unprocessed.  If this criterion is continually utilized for the same offender, the grievance investigator **will interview the offender** to ensure he knows how to submit a grievance and there are no issues being missed that should be addressed.

3.  **Originals not submitted. \***

Offenders must submit the original, answered Step 1 grievance form with their Step 2 form.  Hand written or typed carbon copies are not considered original documents, even if an original signature is documented on the signature line.  Every effort should be made to make grievance forms available to all offenders; however, any document in original form, identifiable as a grievance, will be considered for processing.  Grievances that are not signed by the offender, or when an offender writes a name on the grievance other than his name of commitment such as, a Muslim name or an alias, the grievance may be returned unprocessed.

4.  **Inappropriate/excessive attachments. \***

Offenders must state the nature of the grievance **on a single grievance form** in the space provided.  Agency documents such as answered sick call request forms, answered I-60's, inventories, and receipts which substantiate or further prove the offenders allegations should be accepted and the grievance processed.  Unofficial documents, continuation pages, informal legal-like documents, petitions, unanswered I-60's or sick call requests, and drawings will not be accepted.  Items such as insects, food particles, or similar items will not be accepted as attachments.  Grievances submitted with excessive or inappropriate attachments may be returned to the offender unprocessed.

5.  **Malicious use of vulgar, indecent, or physically threatening language directed at an individual.\***

Offender grievances that contain blatant, malicious use of vulgar, indecent, or physically threatening language **directed at an individual** may be returned to the offender unprocessed.  Threats of physical harm to staff should be reported to unit officials.  The administrator for Offender Grievances must be contacted prior to using a grievance as the basis for a disciplinary case.

6.  **Inappropriate. \***

Offender grievances requesting disciplinary action against an employee, such as a reprimand, termination, counseling, or disciplinary action; or a request for compensation as a result of consequential or punitive damages may be returned to the offender unprocessed.  Requests regarding reimbursement for lost or damaged property are not considered consequential or punitive damages and should not be screened based on this criterion.

## STEP 2 GRIEVANCES THAT <u>DO</u> <u>NOT</u> QUALIFY FOR PROCESSING

Offender grievances that do not qualify for processing utilizing the definitions of the screening criteria may be returned to the offender unprocessed.  This means the grievances do not require investigation, response, or an approving signature.

CGO staff, regional staff, or functional area proponents will check the appropriate screening criteria on the back side of the grievance form, and then sign the CGO staff signature line of the grievance.  CGO staff will ensure that a brief summary of the grievance has been entered on the subject line of the GR00 and enter the screening criteria in the designated field.

Unprocessed grievances are closed using the outcome code **"H"**, and will be imaged prior to being returned to the offender.  Step 2 grievance records must be <u>updated</u> in the designated field if an offender corrects and resubmits a grievance.  Offenders shall have 15 days from the last signature and date on a returned grievance to correct and resubmit the grievance for processing.

> *Generally, comments written on returned grievances are discouraged; however, simple guidance may be useful to assist the offender when correcting and resubmitting the grievance.  If the written comment includes more than a few words of simple guidance, then the grievance should be processed as a regular grievance, to include investigation, response, and a signature by the signature authority.*

Once the grievance is returned to the offender, it is the offender's responsibility to make the corrections, if applicable, and resubmit the grievance within 15 days from the signature on the returned grievance.  If the offender resubmits the grievance without making the corrections, the grievance should simply be returned to the offender and the original guidance still applies.

If the offender corrects and resubmits the grievance but makes another error that qualifies for screening, the grievance is returned unprocessed and the offender given an additional 15 days to again correct and resubmit the grievance.  An entry to the GR00 will be made in the designated field.

If an offender attempts, but fails to correct and resubmit the grievance a third time, the CGO investigator will coordinate with the UGI to **interview the offender** and ensure he knows how to submit a grievance correctly.  The Instructions on How to Write and Submit Grievances (Appendix B) may be distributed to the offender.

If an offender attempts, but fails to correct and resubmit the grievance a fourth time, documentation of the previous interview will be attached to the original Step 2 grievance and imaged.  The Step 1 will be returned, however the Step 2 will not be returned to the offender.  Remember, it is the responsibility of Step 2 staff to identify <u>all</u> of the reasons that a grievance is returned unprocessed before it is returned to the offender.

## STEP 2 GRIEVANCES THAT QUALIFY FOR PROCESSING

Step 2 grievances that qualify for processing will be sorted and distributed to the regional office, functional area proponents, or Central Grievance Office (CGO) for investigation, as appropriate. Refer to the Step 2 Routing Section.

The program administrator or designee for each functional area shall review and evaluate the nature of the grievance. If the grievance does not come under the purview of the department, the grievance will be returned to the CGO with a written explanation and signature provided on the OG-01 Grievance Worksheet.

If the matter is verified as pertaining to the individual department, the program administrator or designee will review the Step 1 investigation. Initiate any additional investigation; attach investigative documentation; complete the OG-01; and print the response to the offender on the original form. The signed grievance and all investigative documentation is returned to the CGO for final processing.

**The signature authority for Step 2 grievances shall be the director or assistant director of the functional area, the program manager or assistant program manager of the functional area conducting the investigation. When multiple issues are identified in a grievance, the administrator of Offender Grievances or designee shall serve as the signature authority.**

A grievance may contain multiple issues related to a single incident. Step 2 grievances that include multiple issues will be identified and a copy of the Step 2 grievance, Step 1 grievance, investigative documentation from the Step 1 investigation, and an OG-01 will be forwarded to the appropriate functional area proponent who is responsible for investigation and suggested response. Designated CGO staff will coordinate the responses from the departments and submit the grievance to the administrator of Offender Grievances or designee for review and signature. Grievance responses for multiple issue grievances that involve medical shall be copied verbatim on the Step 2 grievance form.

According to AD-03.82, "Management of Offender Grievances", the Step 2 process must be completed within 35 days of receipt from the offender, 45 days for medical grievances (600 issue codes), except medical emergency and medical multiple issue grievances are 35 days.

An extension of up to an additional 35 days may be necessary to complete the investigation, 45 days for medical grievances (600 issue codes), and medical multiple issue grievances are 35 days. Extensions should be the **exception**, not the rule. The regional office or CGO will notify the offender in writing, using the Notice of Extension form (Appendix M) when an extension is applied. The original form will be sent to the offender and a copy attached to the grievance. Extensions are to be entered into GR00 by CGO clerical staff in the designated field. **Emergency grievances are not eligible for extensions.**

The administrator of Offender Grievances is the office of record for Step 2 grievances and will retain all Step 2 grievance records according to the TDCJ Records Retention Schedule.

**Office of Inspector General (OIG)**

Step 2 grievances that include allegations of excessive or unreported use of force, criminal activity by staff, or harassment and retaliation for exercising access to courts rights shall be given priority attention and processed in the same manner as outlined in Chapter IV, according to the following guidelines:

* If a copy of the Step 1 grievance was placed with the use of force report, and the grievance was closed with the outcome code **"U"**, CGO staff will forward the Step 2 grievance to the regional grievance office for investigation, response, and signature.

* If the Step 1 grievance was referred through the regional grievance office for coordination with the OIG, and was closed with an outcome code of **"D"**, copies of the Step 1 and 2 grievances, investigative documentation, and an OG-01 Grievance Worksheet will be forwarded to the designated OIG supervisor to review these grievances.  Responsibility for completion of the GR00 25 Screen, OIG Referral Tracking, is the CGO.

* New allegations of use of force or criminal activity by staff may be identified on Step 2 grievances that were not previously addressed on a Step 1.  If the use of force was documented, a copy of the completed Step 2 grievance that includes a response and signature, will be forwarded to the appropriate destination along with the UOF letter (Appendix P) for inclusion with the use of force report.  If the use of force was undocumented, designated CGO staff will complete the OIG Fact Sheet, make initial entries to the GR00 25 Screen, OIG Referral Tracking, and forward the referral to the designated OIG supervisor to determine if an OIG investigative case will be opened.


## MEDICAL

**For additional guidance for processing medical grievances, refer to Chapter IX.**


### * Americans with Disabilities Act (ADA)

ADA issues include denial of access to a program, service or activity based on a disability.  Step 2 grievances requesting relief through the ADA will be processed as specialty grievances.  The grievance will be forwarded to the **program administrator for risk management** for investigation.


### * Religion

Step 2 grievances regarding religious activities, dress, appearance, and religious grooming will be processed as specialty grievance and forwarded to the **program administrator for chaplaincy** for investigation.


### * Impermissible Conduct by Offenders

Impermissible offender conduct, as defined in AD 03.02, "Impermissible Offender Conduct", involves an offender; exercising authority over another offender; having access to sensitive information; or receiving special privileges.  The grievance will be processed as a specialty grievance and forwarded to the **program administrator for monitoring and standards** for investigation.

**Staff Use of Slurs / Hostile Epithets Referrals**

> *A referral regarding allegations of staff use of slurs or hostile epithets, PD-22 14b, is required according to guidelines set forth in PD-31 "Discrimination in the Workplace." A referral may be identified at any time during a Step 1 or Step 2 offender grievance investigation.*
>
> *Any time an employee admits to using slurs or hostile epithets, or a witness states that they heard another employee use slurs or hostile epithets, the grievance and staff statements are referred to the Human Resources, Employee Relations Intake Department for TDCJ employees only.*
>
> *Contract staff referrals are made as follows: Private Facility Contract Monitoring and Oversight Division (PFCMOD) for private facilities and treatment staff, the Office of Professional Standards for medical staff, and the Windham School District General Counsel's Office for Windham staff.*

9.  If an offender alleges that a staff member used slurs or hostile epithets **and** the offender does not state whether any other staff members were present; the grievance investigator is to interview the offender as to the location of where the alleged incident occurred and whether there was anyone else in the area. If there were only offenders in the area, then acquire a written statement from the staff member who the allegations are against. If the staff member states the incident did not occur, then the grievance **is not** referred. If the staff member states the incident occurred, the grievance **is** referred.

10. If an offender alleges that a staff member used slurs or hostile epithets **and** the offender states another staff member was present, this staff member is a witness. The **witness is to be interviewed first** and a written statement acquired. If the witness states the incident did not occur, then acquire a statement from the staff member who the allegations are against. If the staff member also states the incident did not occur, the grievance **is not** referred.

    If a witness states the incident occurred, **the UGI investigation stops**. Do not interview the staff member the allegations are against and refer the grievance and witness statement.

11. Issue Code 811 is documented on grievances that involve staff use of slurs or hostile epithets.

12. The Staff Use of Slurs or Epithets Referral form (Appendix R) is to be completed and taken to the warden who refers to the appropriate department. A completed and signed referral form will be attached to all offender grievances that are referred.

13. Employee information is confidential. Therefore, employee related information regarding a referral such as an intake number, or any related documents are not to be attached to an offender grievance in order to maintain confidentiality.

14. The following response will be provided on grievances that are referred to the appropriate department:

    > **"The issue regarding staff use of slurs or hostile epithets was referred to the appropriate Agency Official for investigation."**

15. Outcome Code **"O"**, Referred to Employee Relations for Investigation, was created to apply when:

    *   The only issue listed in the grievance is staff use of slurs or hostile epithets.
    *   The only issue code applied to the grievance is 811.
    *   The grievance was referred to the appropriate department.

16. <u>Multiple issue Grievances</u> – For example, an offender alleges an undocumented or excessive use of force which is issue code 800 and a staff member used slurs or epithets an issue code 811; an offender alleges that a nurse denied him his medication  which is issue code 621 and a staff member used slurs or hostile epithets an issue code 811; or an offender alleges an officer confiscated his personal property which is issue code 512 and  a staff member used slurs or hostile epithets an issue code 811.

The outcome code for multiple issue grievances also involving staff use of slurs or epithets will be the appropriate outcome code, other than **"O"**, and relate to the response provided the offender.   For example, **"D"** is listed for no action, or an **"R"** is listed when the issue is resolved.

**For additional guidance processing Property Grievances, refer to Chapter VI.**

**For additional guidance processing Disciplinary Grievances, refer to Chapter VII.**

**For additional guidance processing Medical Grievances, refer to Chapter IX.**

**OUTCOME CODES**

The outcome code assigned to a completed Step 2 grievance will reflect the action taken as a result of the grievance.  Refer to the Outcome Codes (Appendix E) for a detailed list and definitions of the outcome codes.

Several outcome codes are used in specific circumstances; for example:

* Outcome code **"C"**: is used when a grievance is lost and the offender is allowed to resubmit the grievance under a new grievance number, or an offender informs the unit grievance investigator (UGI) that he did not write the grievance.  **This code may only be entered into the GR00 Case Tracking System by a regional grievance supervisor or Central Grievance Office supervisor.**

* Outcome code **"H"** is used only to identify unprocessed Step 1 or Step 2 grievances.

* Outcome code **"T"** is used when the response from the Office of Inspector General states that a case will be opened based on the offender's allegation.

* Outcome code **"U"** is used when a copy of a grievance is included with a documented use of force report.

* Outcome code **"O"** is only used when a grievance is referred regarding staff use of slurs or hostile epithets.

Apply outcome codes in accordance with their definitions, and in accordance with the primary issue noted in the grievance.

**Final Step 2 Processing**

After final processing by the CGO, the following steps shall be taken:

* The Step 2 grievance and all investigative documentation are imaged and filed using a computer imaging system.

* CGO clerical staff will ensure the Step 2 grievance is closed with the appropriate outcome code.

* CGO staff will fold completed Step 2 grievances being returned to offenders in a manner that the response and grievance text are not visible, then tape the grievance closed.

* The folded grievances will be sorted by unit, placed in a large truck mail envelope addressed to the UGI at the offender's current unit of assignment, and forwarded to the UGI.

* The UGI will receive the completed Step 2 grievances and place a date stamp in the upper right hand corner above the OFFICE USE ONLY box indicating the date the Step 2 was returned to the offender.  The corresponding date of return will be entered into GR00 Screen 09, Option 02, Step 2 Returned to the Offender.  This is important for attorneys defending the agency during litigation.

* The UGI will review the TDCJ mainframe computer screens to determine an offender's current housing location and record the destination if different from when the grievance was submitted, or CGO forwarded.

* If an offender has transferred to another unit, the grievance will be mailed to the UGI at the offender's current unit.

* If an offender has discharged from TDCJ, the completed grievance will be maintained in the offender's inactive grievance file.  If the offender provided a forwarding address to the UGI, then the grievance may be mailed to him.

* The folded grievances will be delivered to the unit mailroom for distribution to the offenders.

## PROCESSING A PROPERTY GRIEVANCE

Administrative Directive 03.72, "Offender Property", permits offenders to utilize the Offender Grievance Procedure to resolve claims involving the loss, or damage of personal property. Property is defined as any item authorized by TDCJ policy for possession by an offender, to include a Trust Fund account.  Contraband is defined as any item which an offender is prohibited to possess or obtain while in custody, unless the offender received the item as a result of a state or federal court order or legitimately through the litigation process.

When a grievance is determined to involve offender personal property, the unit grievance investigator (UGI) shall review the grievance to determine what statements and documentation are necessary to process the claim.  **An investigation for all property claims at Step 1 and Step 2 shall include a review of all related property documentation:**

* Authorized Offender Property (PROP-01)

* Registered Property Receipt (PROP-02), or I-31

* Offender Intake Inventory (PROP-03)

*  Intake Money Receipt (PROP-03.1)

*  Storage Container Request and Tracking Log (PROP-04)

* Storage Container Record (PROP-04.1)

* Offender Property Inventory (PROP-05) or Personal Property Receipt (I-136)

* Property Room Log (PROP-06)

* TDCJ Property Tag (PROP-07)

* Disposition of Confiscated Offender Property (PROP-08) or Confiscation/Disposition Form (AD-92)

* Offender Property envelope (PROP-09)

* Recyclable Items Log (PROP-10)

* Offender Property Card (PROP-11)

* Memo Shipping Ticket (MST), or BU-175

**All Step 1 property grievances will be processed by the UGI on the offender's current unit of assignment.**

## Step 1 Investigation

The same investigative process generally applies for both Step 1 and 2 grievances.  The following was developed to assist the UGI in determining the validity of a property claim.   All documentation gathered during the investigation will be attached to the grievance.

* List the missing or damaged property on the OG-01 worksheet.  **Be specific.**  If the offender has not provided enough information, **an interview with the offender** should be conducted as the first documented step of the investigation.

* The missing property should be items that the offender either purchased through the commissary, from an outside vendor, or was allowed to keep at the time of intake.

* State issued property should not be listed.

* Contraband will not be considered for monetary reimbursement.

* Offenders will not receive compensation for the loss or damage of eyeglasses, dentures, or other medical devises brought in at the time of intake.  Claims involving these types of items will be referred to the Unit Medical Department at Step 1 or Health Services Division Headquarters Office at Step 2.  Careful documentation of the circumstances surrounding the loss is important for determining what action may need to be taken.

* Document the offender's claim of what happened.  Was the property lost, stolen, damaged, missing, or destroyed?

* Property lost or damaged during transfer between units is the most difficult to investigate.  In these situations, begin with the history screen of the offender's movement.  Obtain copies of all property inventory forms and BU-175 or MST documents from the time of departure from the last unit until the date the offender arrived at his current unit.

* Excess offender property may be shipped separately when an offender is transferred from one unit to another via Prison Store.  In this case, contact the previous unit and obtain a copy of the MST and indicate the date of shipment on the OG-01 worksheet.  Also, obtain and compare all corresponding PROP-05 or I-136 forms.  Ensure that the inventory of items being shipped matches the offender's claim.

* Establish where the property was located and who was in possession of the property when the alleged loss occurred.

  * *Was the property stored in the property room?*
  * *Was it left in the mailroom to be mailed home or some other location awaiting shipment to a new unit?*

* If staff took possession of the property, even if a determination cannot be made as to what happened after that point, the agency may be responsible for replacement or reimbursement, including theft by other offenders.

  * *For example, assume that an officer confiscates an offender's property, but leaves it unattended in the hallway, or some other unsecured location, to help with corridor control.  The property subsequently disappears.  The property was in the possession and control of TDCJ at the time of loss, and the offender may be compensated for the loss.*

* Obtain a statement from staff involved, to include staff that conducted the inventory or confiscated the property, and anyone else who might have handled the property.  **A written statement by itself from property room staff is insufficient to conclude offender personal property investigations. The property may not have even been sent to the property room.**

* In cases where offenders contribute to their personal property loss, or in cases where the loss is due to consequences of unit activities, the claim will not generally be considered.

  * The offender left his property unsecured in his cell or another area.
  * The offender flooded his cell or started a fire that caused the damage or loss.
  * Other offenders flooded the cellblock or started fires.
  * Disturbances or riots.
  * Staff responses to emergencies situations such as fighting fires, quelling riots or a use of force.
  * Extortion by other offenders or theft.
  * Natural disasters such as hurricanes, floods, or tornadoes.

* Review the offender's unit classification file and the issuing property room for copies of registration forms (PROP-02 or I-31) for registered property items such as fans, radios, watches, rings, and typewriters.  Copy and attach the form and all related documents to the grievance.  If no documentation is found in the offender's unit file or the property room, then the UGI shall note such finding on the OG-01 worksheet.

\*      According to AD-03.72, "Offender Property", staff is responsible for completing a property inventory form (PROP-05) or confiscation form (PROP-08) each time the agency takes possession of offender property. Copies of these inventories are maintained in the offender property room and the offender's unit classification file. The older versions prior to September 2002 are the I-136 and the AD-92. Property claims will require these documents in order for a proper review of the offender's claim.

\*      If the loss involved commissary purchased items such as food, hygiene items, or stationary, review the offender's banking history to determine if recent commissary purchases were made. Document if the offender has been indigent for the relevant period of time preceding the alleged loss or damage and document on the OG-01 worksheet.

\*      If the property item was received from an outside vendor, consult with mailroom staff and obtain copies of log entries. All documentation reviewed should be copied and attached to the grievance as part of the investigation.

\*      For items claimed missing or damaged, review the past PROP-08s for earlier confiscation of the item in question, and compare confiscated items with subsequent commissary purchases for replacements.

\*      Obtain the most recent property inventory forms to determine when the offender last had authorized possession of the item in question and a copy of the registration receipt to verify ownership. These documents are necessary to complete a thorough investigation.

\*      If the property officer submits a written statement that the offender received his property, the PROP-06, PROP-05 or I-136; PROP-08 or AD-92 forms documenting the return of the property must be attached.

\*      Magazines, publications, packages or other items received by the mailroom via a private carrier, such as United Parcel Services (UPS), Airborne, Federal Express, or other private carriers are documented on the mailroom log. The offender must also sign for receipt of any item that was signed for by the agency. Gather the documentation to include a copy of the mailroom log, or delivery log and obtain a copy of the receipt from the offender to verify the value of the item in question. Attach all documentation as part of the grievance investigation and note all findings on the OG-01 worksheet.

\*      The offender should provide information in the grievance or attach documentation that establishes a tangible value such as a receipt, an invoice, or another indication of cost. Grievance staff may verify the value by requesting more detailed information from the offender. The information that the offender provides to establish value may be cross-referenced with the official record in the offender unit file or property office files to ensure authenticity. This value becomes the basis for any offer of monetary reimbursement, settlement, or replacement. Tangible value may also be established by:

    \*      Review of commissary receipts or purchase history.

    \*      Price lists from the commissary.

    \*      Value of comparable items from retail stores, catalogues, or the internet.

    \*      The date the offender purchased the item.

\*      When the determination is made that the offender's claim is valid and a tangible value has been established, the UGI shall attempt to resolve the claim with replacement items, if possible.

\*      Excess property from the recyclable inventory stored in the property room and recorded on the Recycled Property Log may be used to make the settlement.  The replacement offer should be fair, and reasonably equivalent to the items lost.  The items offered should also be of use to the offender and electrical items such as fans, radios, and typewriters in good repair.

        \*    *For instance, an offer of cookies would be of no value to a diabetic offender, and coffee would be of no value if the offender did not drink coffee.*

\*      Recycled property may not be available to make settlement for a variety of reasons.  The UGI may contact neighboring units, or contact their regional grievance supervisor for assistance in obtaining suitable property for replacement offers.

\*      If the investigation supports that the TDCJ is responsible for the property claim, document any corrective action taken by unit administration.  The information may or may not be appropriate for inclusion in the response to the offender, depending upon the sensitivity of the issues.

\*      Many claims can be avoided by training staff regarding property accountability; the proper use of the property forms; and by reinforcing AD-03.72, "Offender Property", through shift briefings and staff meetings.

\*      When completed, the investigation should address the following questions.

     1.   What items of property were lost, damaged, missing or destroyed?

     2.   How did the alleged loss occur?

     3.   Who was in possession of the property at the time of loss?

     4.   Can the offender establish ownership of the items?

     5.   Can a tangible value be established for the items?

     6.   Can the claim be resolved by an offer of settlement or replacement?

     7.   If the agency is responsible, what action has been taken to compensate the loss?

     8.   What has the agency done to prevent future occurrence?

**To qualify for any type of compensation, the investigation must establish each of the following:**

     \*    The property item lost or damaged must have been in the possession of TDCJ at the time of its loss or damage.

     \*    The offender must have had authorized ownership of the property.

     \*    The property item was not contraband.

     \*    The property item had a tangible value.

Grievance responses shall be factual and informative.  If the claim is not valid and there is no evidence to support the allegation, the offender should be informed of the reason for the denial of his claim.  If the offender was offered a settlement, include a statement to that effect in the response.  The UGI should attempt to resolve all substantiated claims at the unit level.  This can typically be accomplished with an equitable property settlement offer using recycled property.

All investigative information and the suggested response shall be presented to the warden for review and approval.

If the investigation substantiates the claim, and it could not be resolved at the Step 1 level, an outcome code **D** will be documented on the OG-01 worksheet and entered into the GR00 Case Tracking System. The offender must file a Step 2 for further appeal of the loss.

If restitution was accomplished, the grievance will be closed with the **"R"** outcome code documented on the OG-01 worksheet and entered into the GR00.  If the offender refused an offer of restitution at Step 1, a **"D"** outcome code will be documented on the OG-01 worksheet and entered into the GR00.


**Step 2 Property Appeals**

In some cases, the CGO or regional investigator will begin another property investigation based on new allegations presented by the offender in the Step 2 grievance.  The Step 2 investigation begins with a review of all investigative documentation from the Step 1 grievance.

If the offender refused a fair and equitable offer for settlement, the claim may be denied on the appeal; however, the fairness and equitability of the offer made during the Step 1 process must be reviewed.

The Step 2 investigation will either support the Step 1 response, or result in a granted property claim requiring an additional settlement offer or payment directly to the offender's trust fund account.  Property settlements resulting from Step 2 grievances require the cooperation of unit staff.

## The Payment Process

All reasonable steps, including an equitable property settlement offer, will have been completed to avoid the time and expense of requiring the Texas Comptroller's Office to issue a warrant to deposit funds into the offender's trust fund account.  Monetary reimbursement **is a last resort to settle property claims**; however, when necessary the following steps shall be taken:

1. The grievance and supporting investigative documentation will be submitted to the director of Administrative Review for final approval and signature.  ***Flag for director signature.***  The documents necessary for payment will be presented in the following order:

   *a)* Typed Evaluation.

   *b)* Step 2 Grievance, including the Step 1 and all investigative documentation.

   *c)* Payment Processing Request Letter.

2. After the director of Administrative Review has approved payment, the Step 2 grievance will be returned to the CGO for final processing by CGO staff:

3. The response will be typed on the grievance.  The grievance will be closed with the **"R"** outcome code documented on the OG-01 worksheet and entered into the GR00 Case Tracking System.

1. The grievance and all supporting documentation, including any documents submitted by the offender, will be copied and retained until the payment process is completed.

2. The completed original Step 2 grievance, including a response and signature, shall be returned to the offender.  Any documents submitted by the offender will also be returned with the Step 2 grievance.

3. **Notification Emails** will be sent to the warden, regional director, and other departments advising that monetary reimbursement for lost or damaged property was approved.

4. The UGI will receive an email with instructions to complete the Monetary Reimbursement Agreement Form (Appendix O).

5. Designated CGO staff will maintain and monitor the flow of documents to and from the unit to ensure that the completed forms are received in a timely manner.

6. Monetary Reimbursement Agreement Forms returned to the CGO from the unit will be reviewed for accuracy and completeness by the designated CGO supervisor.

7. Completed Monetary Reimbursement Agreement Forms and the signed Payment Processing Request Letter will be sent to the TDCJ Accounts Payable Department, Payment Processing, who in turn will forward the request to the State Comptroller's Office.

8. If the offender refuses the settlement offer, a letter will be sent to the offender explaining the consequences of the refusal and he will be given a second opportunity to accept the offer.

9. The State Comptroller's Office will return a copy of the warrant to the CGO indicating that the money was deposited into the offender's trust fund account.

10. CGO staff will be instructed to update the GR00 with the amount of reimbursement noted in the comment section.

11. CGO staff will image all documentation, including the grievance, warrant, and investigative documentation.

12. Occasionally, the State Comptroller's Office may reject a payment request if the offender owes back child support or does not have a social security number.  In these cases, the CGO will send a letter to the offender explaining the circumstances.

If resolution can only be made by depositing money into the offender's trust fund account, the following response should be typed on the Step 2 grievance:

"Property Claim # **(enter grievance #)** was reviewed by this office and responsibility for the loss or damage appears to rest with the agency.  You were offered and accepted $ **(amount of reimbursement)** as reimbursement for your **(list property items)** as noted by your signature on the Monetary Reimbursement Agreement form dated **(list date)**.  The amount of reimbursement was based on the age and fair market value of the item.  The funds have been deposited into your trust fund account."

## DISCIPLINARY APPEALS

The Central Grievance Office (CGO) confers regularly with the Office of Disciplinary Coordination and the Counsel Substitute Headquarters Office, as well as the Office of General Counsel to ensure that disciplinary appeals receive a consistent review and appropriate action is taken when needed.

The disciplinary hearing officer (DHO) is required to notify offenders at the completion of a disciplinary hearing that they have 15 days from the date of the hearing to appeal the outcome.

Disciplinary appeals are exempt from the following screening criteria:

> #2 Submission in excess of 1 every 7 days.
> #5 No documented attempt at informal resolution.

**All Step 1 disciplinary appeals will be processed by the UGI on the offender's current unit of assignment within 30 days of receipt from the offender.**

The **incident date** entered into the GR00 Case Tracking System for a disciplinary appeal will be the **hearing date**. The disciplinary case number will be entered in the designated field of the GR00.

The UGI will collect and review all documentation relevant to the disciplinary case, even if the additional evidence was not available to the DHO at the time of the hearing. The review will not only ensure that all due process and procedural requirements were met, but also that the case itself was fair and consistent with the evidence. The offender should provide the disciplinary case number; however, the grievance will still be processed even if the case number is not provided. The UGI will formulate a recommended response for the warden's review and signature.

Grievance investigations are dependent upon information gathered from the disciplinary report, the counsel substitute investigation, and the notes and comments made by the DHO. Each of these elements is essential when reviewing a grievance to determine if the offender was afforded all of his due process rights. The hearing tape serves to support the documentation, but does not replace it.

**If the disciplinary paperwork is lost, the disciplinary case must be overturned and the unit given the option to re-hear the case.**

If an offender requests a review of the disciplinary tape within 15 days of the hearing and was not allowed access to the tape prior to the expiration of the grievance time limits, the grievance will be accepted and processed. The UGI shall contact the counsel substitute to ensure that the offender has an opportunity to listen to the tape and file a grievance. If the counsel substitute can show that the offender was allowed to listen to the tape, but did not file his grievance within 15 days of listening to the tape, the grievance may be screened and returned to the offender unprocessed. Attach a copy of the log to the grievance.

**Processing**

1. **Three basic grounds for disciplinary appeals.**

   * Due Process and Procedural Rights violations.
   * Insufficient evidence to support a finding of guilt.
   * Penalty imposed by the DHO was too severe.

2. **Guidelines.**

   * Complete the Disciplinary Worksheet and Document Checklist (Appendix K) to ensure due process requirements were met; to provide a summary of the case process; and to record that all appropriate documentation is attached.

* If the documentation provided is not sufficient to review the case, the disciplinary hearing tape may be reviewed and the information used to formulate a response.

* Each issue raised by the offender that can be appealed shall be noted, investigated, and directly addressed on the OG-01 Grievance Worksheet at the Step 1 and the Step 2 review.  **It is not appropriate to simply write disciplinary appeal or to list a case number as the offender's point of appeal when clear points of appeal are presented by the offender.**

* The review will ensure:  All due process and procedural requirements were met; the case was fair and consistent with the evidence; the punishment imposed was within the guidelines and consistent with the charge; and the punishment was progressive when considering the seriousness of the charge and the offender's prior disciplinary record.

## Major Disciplinary Case

**Documentation required** when the offender **is present** at the hearing:

* I-47 MA – TDCJ Disciplinary Report and Hearing Record
* I-210 Front – Offense Report
* I-210 Back – Preliminary Investigation Report
* CS-10.11A and CS-10.11B – Service Investigation Worksheet
* CS-12 – Hearing Worksheet
* CS-09 – Witness Statement(s)
* AD-06.56, "Procedures for Handling Offenders Identified as Suicide Risks", Attachment A – Mental Health Disciplinary Review Form.  This form must be attached to the cases of offenders who are MHMR restricted for participation in the disciplinary process, as well as, any offender charged with code 31 Self-inflicted bodily injury or threatening to self-inflict bodily injury.
* Other documentation related to the disciplinary case such as disciplinary forms, written statements, documentary evidence, photos, or other evidence.

**Additional documentation required** when the offender **is not present** at the hearing.

* CS-14 – Notification of Disciplinary Hearing, Refusal to Attend Hearing.  Completed when an offender in administrative segregation, PHD, or any form of lockdown status that requires an escort who does not wish to attend a major disciplinary hearing.
* I-217 – Disciplinary Hearing Results Notification. Completed for both general population and segregation offenders.

## Minor Disciplinary Hearing

**Documentation required** when the offender **is present** at the hearing:

* I-47 MI – TDCJ Disciplinary Report and Hearing Record
* I-210 Front – Offense Report
* I-210 Back – Preliminary Investigation Report
* Other documentation related to the disciplinary.

**Additional documentation required** when the offender **is not present** at the hearing.

* I-217 – Disciplinary Hearing Results Notification

**Reviewing for Due Process Violations**

* The offender did not receive notice of the charges at least 24 hours prior to the hearing, unless waived by the offender.  A request for a 24-hour waiver may not be granted unless the offender has **signed** the 24-hour notice waiver line on the I-47MI or I-47MA.

* The offender was denied witnesses, questioning the accusing officer through his counsel substitute, or presentation of documentary evidence without adequate justification.

* The DHO failed to take the appropriate actions when non-frivolous evidence was presented in defense of an offender.

* The offender is on the Mental Health Services caseload **and** restricted from participation in the disciplinary process without clearance by the Mental Health Services Staff.  All offenders charged with offense code 31 require MHMR clearance.

* Offender was excluded from the hearing without justification.

* Interpreter was not provided, when required.

* The reason for the finding of guilt must be documented on the I-47MA.

* The reason for the penalty imposed must be documented on the I-47MA.

* Any other due process issues that affect fundamental fairness which are consistent with, but not limited to the above.


**Reviewing for Sufficient Evidence**

* Lab reports such as field test kits in drug-related cases.

* Medial record for work restrictions when dealing with refusing to work or housing restrictions when refusing to accept a housing assignment.

* Testimony of the charging officer, accused offender, or witnesses.  Does the charging officer, the accused offender, or witnesses substantiate the charge at the hearing?  Do they refute the charge?

* Any other evidence that may support or refute the charge.

* Ensure the evidence satisfies elements of the offense.  The elements are defined for each charge in the *Disciplinary Rules and Procedures for Offenders* (GR-106) and the *Standard Offense Pleadings Handbook* (GR-107).

**Reviewing Disciplinary Cases Involving Confidential Informant Testimony**

* Staff may not always observe rule violations by offenders.  When an offender observes a rule violation by another offender and informs staff of the violation, an investigation, separate and from the counsel substitute investigation should be initiated in accordance with Administrative Memorandum – 89.V.I.E. 4.01.   A confidential investigation must reveal **corroborating evidence to sustain the charges** so that the case is not based solely on information provided by the informant.  Evidence provided by a confidential source may be utilized as additional evidence at a disciplinary hearing; however, **this evidence alone is not sufficient to establish guilt**.

* Information provided by a confidential informant must be corroborated by evidence gathered from or provided by a **non-informant source**.

* Care must be exercised to protect the identity of confidential informant.

* Confidential informant investigations must be conducted by a staff member holding the rank of captain or above.

* The Confidential Informant (CI) checklist must be completed and attached to the documentation.

* Designated confidential informant questions **must be asked and answered at the hearing**.

**Disciplinary Penalties**

Penalty guidelines are outlined in the ***Disciplinary Rules and Procedures for Offenders Handbook***.   Good time loss limits are applied based on the cumulative number of convictions resulting in major penalties within the 180 days preceding the current case.   A single case with multiple charges resulting in guilty findings should be counted as one case.

**Remedies Available for Disciplinary Appeals**

The result of a grievance investigation:

* If grievance staff identifies a due process error in the disciplinary hearing, any punishment imposed as a result of the hearing may be modified or overturned.  When a disciplinary case is overturned, the offender should be advised of this action in the grievance response.
* If grievance staff identifies correctable administrative errors in the disciplinary case processing or hearing of a disciplinary case, the charge and punishment may be modified.
* If grievance staff identifies the disciplinary charge was inappropriate or if there was insufficient evidence to support the charge, the charge and penalties may be modified or the case overturned.

**NOTE:  Grievance staff will notify the warden before modifying or overturning a disciplinary case.**

<u>**Step 2 Appeal**</u>**s:**   A Central Grievance Office (CGO) supervisor will forward an email to the senior warden and all assistant wardens outlining the reason for modification or overturn, to include the policy and procedure reference that validates the corrective action.   Unit administration will be given five business days from the date of the email to review the case.  On the sixth business day, the Request for Disciplinary Case Correction E-Form will be completed and the grievance closed.  The email will be imaged with the grievance for record.

**Rehearing the Disciplinary Case**

* An offender who successfully appeals a disciplinary hearing may be served with notice of rehearing if the error for which the case was overturned can be corrected.  Notice of charges for a rehearing must be served within 30 days from the date the appeal was granted, unless an extension is obtained.
* A rehearing may not be conducted on an overturned case in which the offender did not receive timely notice of the charges, within 30 days of the date of discovery of the incident unless an extension was granted, or the offender did not receive a disciplinary hearing within the established time limits of 20 days from the date of notice unless an extension is granted.
* Penalties assessed at a rehearing cannot exceed those imposed at the initial hearing.  However, if additional evidence was presented at the rehearing that was not available at the initial hearing, an increase in penalty may be justified.
* Rehearings will be conducted according to AD-04.35, "Review of Offender Disciplinary Actions," and other relevant disciplinary policies.

**Processing the Correction**

* When a disciplinary case is overturned or modified, a Request for Disciplinary Case Correction E-Form will be sent to the chairman of the State Classification Committee requesting that the offender's records be corrected to reflect a modification or deletion of the charges and punishment.

## INSTRUCTIONS FOR COMPLETING THE
## REQUEST FOR DISCIPLINARY CASE CORRECTION E-FORM

To access the E-Form on the TDCJ mainframe, type EMS from the MENU, or from a clear screen.  At the EMS SYSM Main Menu type 4.4, and press enter.  Disciplinary Case Correction is the name of the e-form.  Select the form by entering **"S"** under the option column.  The form will appear.  Enter the necessary information as listed below.

1. *To:*  Enter the name of the State Classification Committee member designated to review and process the corrections.

2. *From:*  Enter the name, work title, and unit of the person completing the e-form.

3. *Date:*  Enter the date the decision was made to correct the disciplinary case which is the date the appeal was granted.

4. *Offender:*  Enter offender's last name, and first name.

5. *TDCJ No:*  Enter the offender's number with zeroes (00) in front of it, if applicable.

6. *Disciplinary Report Number:*  Enter the 9-digit number of the disciplinary case being corrected.

7. *Unit:*  Enter the two-letter abbreviation for the unit where the hearing was held.

8. *Hearing Date:*  Enter the date of the disciplinary hearing.

9. *Offense Date:*  Enter the offense date.

10. *Hearing and Penalty Category:*  Enter the two letter code of the disciplinary case:  MA = major hearing with major punishment; MM = major hearing with minor punishment; MI = minor hearing; and MR = major reduced to minor.  This information can be found on the UCR Screen 06 or DI00 Screen 05 under the LVL column.

11. *Grievance No:*  Enter the grievance number or ADMIN if the correction is not the result of a grievance appeal.

12. *Offense:*  Enter the offense code and title of the offense listed on the disciplinary report.  There may be more than one.

13. *Punishment:*  Enter the punishments listed on the disciplinary report.

**At this point, you have to tab back to the Enter Command and type "d" to go to the next page.**

14. *Recommendation:*  Enter an **"X"** in front of one of the following, but **NOT BOTH**.

   *a. Delete:*  This means the case will be removed from the offender's disciplinary computer records and the deletion will be posted on the State Classification Committee's offender files.

   *b. Modify:*  This means an offense or punishment will be changed.  Enter the offense or punishment that the disciplinary report should list.

15. *Correction Request Authorized By:*  Enter the name and title of the person requesting the correction.  It must be one of the persons listed in Section IV of AD 04.35, "Review of Offender Disciplinary Actions."

16. *Reason for Correction:*  Enter the reason why the correction is being requested.  This will assist if a rehearing will be conducted, and in preventing similar occurrences through training.

17. *Form Copy Distribution:*  The copy distribution of the e-form will depend on the source of the correction request, and is outlined below.  Locate the user ID numbers for the persons in each point of distribution prior to preparing the e-form.  If the person does not have a User ID, make a copy of the e-form and forward to them.

* **Press F3 to access the Routing Screen.**

* **Tab down until one space under the routing information, then tab one time.**

* **Enter the first User ID number and tab seven times.  Type the next user ID number and continue until all ID numbers have been entered**

* **When finished entering User ID numbers, press enter.**

* **Routing information errors that need correction will be highlighted.**

* **When routing information is correct, type send at the Enter Command.**

* **Message will be sent to those on the routing list.**

The **e-form distribution** for a grievance appeal granted at **Step 1, or an independent administration review** initiated by the unit, is as follows:

1. Classification and Records Office (CRO) member or designee – Record copy.
2. UGI – Copy will be attached to the grievance in the offender's grievance file.
3. Unit counsel substitute supervisor.
4. Disciplinary hearing officer – Omit if the DHO is coordinating the correction.
5. Chief of Unit Classification – Copy will be attached to the respective disciplinary case maintained in the offender's unit file in the Records Office.
6. Absentee tracking coordinator and countroom supervisor.
7. Regional grievance supervisor.
8. Regional counsel substitute supervisor.
9. Deputy administrator, Offender Grievance.
10. Administrator, Counsel Substitute Program.
11. Administrator, Disciplinary Coordination.

**The Signature Authority for Step 2 Disciplinary Appeals will be the administrator for Offender Grievances or designee.**

The **e-form distribution** for a grievance appeal granted at **Step 2**, **or an independent administration review** at the region, division or central administrative level includes the individuals listed above and the addition of:

12.     Warden.

A copy of the e-form will be imaged with the Step 2 grievance and investigative documentation.

### PROCESSING STEP 1 TRANSPORTATION GRIEVANCES

The Unit Grievance Investigator (UGI) will collect, review, and screen grievances regarding offender transportation issues the same as any other regular grievance. The UGI should check for a chain roster in the unit courtroom to ensure the grievance is a transportation department grievance and not a transfer using unit staff to transport the offender.

> These guidelines apply to the Offender Transportation Headquarters Office, not the Manufacturing and Logistics Departments.

**Step 1 Transportation Grievance**

1. The UGI will review the grievance for emergency allegations. If none are identified, the grievance may be screened and returned to the offender unprocessed.

2. The UGI will further scrutinize the grievance to identify whether the issue presented is related to **offender personal property,** or **transportation operational issues** regarding the enforcement of policy or conflicts with staff during transport.

3. The UGI will assign the grievance the appropriate issue code, and enter the data in the GR00 Case Tracking System the same as any other regular grievance.

   * If the grievance is a **single issue**, 900 issue code, the UGI will forward the **original** grievance **first class mail** to the Central Grievance Office (CGO).

   * If the grievance is a **multiple issue,** 900 issue code and another issue code, the UGI will **fax a copy** of the grievance to the CGO.

   * Upon receipt at CGO if the 900 issue code is **incorrect**, a CGO supervisor will be immediately notified to decide the appropriate issue code to assign to the grievance. The CGO clerical staff will update the issue code in the GR00 Screen 06 and contact the UGI regarding the issue code change. The original grievance is mailed back to the UGI **first class mail**. A copy of the grievance is faxed to the UGI so they may begin the investigation. The CGO will maintain a copy of the grievance until the original is received at the unit.

**Grievances relating to property issues**

   * The UGI on the offender's unit of assignment will process the grievance.

   * The UGI will enter the grievance into the GR00 the same as any other regular grievance.

   * The UGI on the unit of assignment will contact the UGI on the previous unit of assignment for any information needed to complete an investigation.

   * If the investigation requires statements from transportation staff, the UGI may contact the Offender Transportation Headquarters Office for assistance. Refer to the Administrative Offices listed in Chapter III.

   * The signature authority for a transportation property grievance will be the warden at the offender's current unit of assignment.

**Grievances relating to transportation operational issues and actions of transportation staff**

* The UGI will enter the grievance in the GR00 the same as any other regular grievance.

* The UGI will **retain a copy** of the grievance in the grievance office and **forward the original** Step 1 grievance to the CGO via **first class mail**.

* The UGI will enter a note in the GR00 comment section stating that the grievance was forwarded to the CGO and the date it was mailed.

**CGO Step 1 Transportation Grievance Processing – 900 issue code only**

* Designated CGO clerical staff responsible for handling transportation grievances will review the grievance to ensure the 900 issue code is correct.

* The CGO clerk will assign the grievance to the Transportation Headquarters Office by entering their investigator ID in GR00 Screen 02. Two copies of Screen 02 are printed, one is maintained in CGO for tracking and the other is forwarded with the original Step 1 grievance to the designated Offender Transportation grievance investigator (OTGI).

* The OTGI will conduct an investigation, attach all investigative documentation, formulate a response to the offender, and acquire a signature from the Transportation Headquarters Office signature authority.

* If an extension of the 40-day time limit is needed to complete the investigation, the OTGI will send a written request for the extension to the CGO clerk.

* The CGO clerk will enter the extension in GR00 Screen 06 in the designated field, complete a Notice of Extension (Appendix M), make a copy of the form to attach to the grievance, and mail the original form to the offender.

* Once the investigation is completed, the OTGI will forward the original Step 1 grievance and all investigative documents to the CGO clerk.

* The CGO clerk will update the GR00 by entering the date received and mailed in all "date fields," **except the date closed**. The date will be the same.

* The CGO clerk completes an inter-office communication (IOC) instructing the UGI to **enter the closed date** when the grievance is received at the unit, and to make a copy of the grievance for the offender's grievance file.

* The CGO clerk will forward the original Step 1 grievance and all investigative documentation to the UGI via **first class mail**. A copy of all documents will be retained until the grievance is closed at the unit.

* The UGI will update the GR00 **date closed** when the grievance is received from the CGO and make a copy of the completed grievance for the offender's grievance file.

* The UGI will return the original step 1 grievance with response and signature to the offender.

**Step 1 Transportation Grievance Processing – 900 and other issue codes**

* The UGI will enter the grievance in the GR00 the same as any other regular grievance and will complete all data entry.

* The UGI will fax a copy of the grievance to the CGO designated clerk who will coordinate the investigation with the OTGI.

* The UGI will enter a note in the GR00 comment section stating that the grievance was faxed to the CGO and the date it was faxed.

* The UGI will conduct an investigation for all issue codes other than the 900 code.

* If an extension of the 40-day time limit is needed to complete the investigation, the UGI will enter the extension in the GR00 Screen 06 in the designated field, complete a Notice of Extension (Appendix M), make a copy of the form to attach to the grievance, and mail the original form to the offender.

* The CGO clerk will enter a note in the GR00 comment section stating the fax was received, the date, and initials.

* The CGO will make a copy to retain in the CGO and forward the grievance to the OTGI for investigation.

* The OTGI will conduct an investigation, complete an OG-01 to include a suggested response, attach all investigative documentation, and return all documents to the CGO clerk.

* The CGO clerk enters a note in the GR00 comment section that the investigation is being forwarded **first class mail** and the date.  A copy of all documents will be retained until the grievance is closed at the unit.

* The UGI will complete the grievance investigation by formulating a response that addresses all issue codes assigned to the grievance, including the suggested response provided by the Transportation Department staff.

* The signature authority for a multiple issue transportation grievance will be the warden at the offender's current unit of assignment.

* The UGI will return the original step 1 grievance with response and signature to the offender.

## PROCESSING MEDICAL GRIEVANCES

***Medical grievances are received, reviewed, coded, entered and closed in the GR00 Case Tracking System the same as all grievances.***

Medical grievances are identified as emergency, specialty, or regular at the Step 1 level, based on the nature of the complaint.  A non-emergency medical grievance regarding quality of care, treatment received, or specific medical programs will be processed as a specialty grievance, subject to all screening criteria, except:

#2 Submission in Excess of 1 Every 7 Days

A claim regarding a co-pay, or actions of medical staff shall be processed as a regular grievance, subject to all screening criteria, except #2 as the GR00 will not accept that criteria with a 699 issue code.  **A grievance involving medical issues is given special attention.**

When a medical grievance meets the eligibility requirements of the screening criteria, the unit grievance investigator (UGI) will forward to the unit practice manager, health administrator, director of nursing or nurse administrator as appropriate, for review.  If they determine that application of the screening criteria for the grievance would not adversely affect the offender's health, then they will sign the Medical Signature Authority section on the back of the Step 1 form and return to the UGI.  The UGI will print and sign their name on the line provided, complete the OFFICE USE ONLY box on the back of the Step 1 form and return to the offender.  It is the offender's responsibility to correct the grievance after being screened and resubmit within the appropriate time frame.

If an offender alleges or implies that his life is in danger due to a medical emergency such as threats of suicide, chest pains, or difficulty breathing, the UGI will immediately notify the Health Services administrator, unit practice manager, the director of nursing, or nurse administrator as appropriate, via TDCJ mainframe email and follow up with a telephone call.  An investigation will be initiated and coordinate with the unit medical department.

## Step 1 Medical Grievances

1.   The **UGI will forward** the following documents to the unit practice manager, health administrator, director of nursing or nurse administrator, as appropriate:

   *   The **original** grievance received from the offender.

   *   An **OG-01** grievance worksheet completed through the Requested Remedy section.

   *   A copy of the medical grievances **checklist** titled Documents and Forms Required for Investigation of Medical Grievances Checklist (Appendix L – **first page only**).  The UGI records the information on line #1 of the checklist prior to forwarding to the medical department.

Only the **narrative portion** of the grievance will be forwarded if a medical grievance involves **multiple issues**. See multiple issue grievance section below.

2.   The **unit practice manager, health administrator, director of nursing or nurse administrator**, as appropriate, will:

   *   Review the issues presented in the grievance.

   *   Route the grievance to the responsible party for investigation who will:

      *   Compile the support documentation from the offender's Electronic Medical Record (EMR).

    \*   Record information on lines #2 – 2(d) and sign line #3 of the medical grievances checklist.

    \*   Document the findings.

\*   Sign the OG-01 worksheet.  For allegations of harassment or retaliation, the 606 issue code: also complete the Warden or Designee or Medical Signature Authority box at the bottom of the form; check the appropriate box for no action warranted or administrative action; and provide their signature, title and date.

\*   Type a response on the original grievance form

\*   The signature authority will sign and date the completed grievance.

\*   Return the answered and signed grievance with all investigative documentation to the UGI within 30 days of the date the grievance was received from the offender.  Additional time may be requested; however, the 40-day time limit still applies.

**The only approved signature authorities for Step 1 medical grievances are the unit practice manager, health administrator, director of nursing or nurse administrator, as appropriate.**

3.   When medical department staff returns the completed grievance, **the UGI will**:

    \*   Record the information on line #4 of the medical grievances checklist.

    \*   Conduct a quality review of the grievance investigation ensuring that:

        \*   The medical grievances checklist is attached to the grievance; all applicable sections of the checklist are recorded; and the form is signed by medical staff.

        \*   The documents marked on the checklist match the documentation attached to the grievance.

        \*   A copy of any medical policy referenced in the investigation and response to the offender is attached to the grievance.

        \*   Support documentation is attached to the grievance for all investigative notes listed on the OG-01 worksheet.

        \*   The response matches the issue presented by the offender in the grievance.

        \*   Contact the unit practice manager, health administrator, director of nursing or nurse administrator as appropriate, to acquire support documentation that is not attached to the grievance.

        \*   Obtain statements that are needed as support documentation from non-medical staff such as security or, departmental staff.

    \*   Forward the signed grievance and response to the warden for review.  The warden acknowledges their review of the grievance by placing their **initials** on the front, upper left-hand corner of the original grievance form.

    \*   Complete the final grievance process and return the original grievance with a response and signature to the offender.

**This process will be completed within the 40 day time limit for processing Step 1 grievances, or if extended, within the extended due date.**

**Multiple Issue Medical Grievances**

1. The **UGI will forward** the following documents to the unit practice manager, health administrator, director of nursing or nurse administrator, as appropriate:

    * A **narrative portion** only of the original grievance.

    * An **OG-01** grievance worksheet completed through the Requested Remedy section.

    * A copy of the medical grievances **checklist** titled Documents and Forms Required for Investigation of Medical Grievances Checklist (Appendix L – **first page only**).  The UGI records the information on line #1 of the medical grievances checklist prior to forwarding to the medical department.

2. The **unit practice manager, health administrator, director of nursing or nurse administrator** as appropriate, will:

    * Review the issues presented in the grievance.

    * Route the grievance to the responsible party for investigation who will:

        * Compile the support documentation from the offender's Electronic Medical Record (EMR).

        * Record information on lines #2 – 2(d) and sign line #3 of the medical grievances checklist.

        * Document the findings, type a suggested response, and sign the OG-01 worksheet.

    * Sign the OG-01 to verify the completed investigation and return the narrative copy of the grievance and support documentation to the UGI within 10 days of the date the grievance was received from the offender.  Additional time may be requested by contacting the UGI; however, the 40 day time limit still applies.

3. When medical department staff returns the completed grievance, **the UGI will**:

    * Record the information on line #4 of the medical grievances checklist.

    * Conduct a quality review of the grievance investigation by ensuring that:

        * The medical grievances checklist is attached to the grievance, all applicable sections of the checklist are recorded, and the form is signed by medical staff.

        * The documents marked on the checklist match the documentation attached to the grievance.

        * A copy of any medical policy referenced in the investigation and response to the offender is attached to the grievance.

        * Support documentation is attached to the grievance for all investigative notes listed on the OG-01 Worksheet.

        * The response matches the issue presented by the offender in the grievance.

        * Contacts the unit practice manager, health administrator, director of nursing or nurse administrator as appropriate, to acquire support documentation that is not attached to the grievance.

    \*    Obtain statements that are needed as support documentation from non-medical staff such as security or, departmental staff.

    \*    Formulate a response that includes all of the issue codes listed on the grievance, and forward the original grievance and investigative documentation back to the medical signature authority who shall acknowledge a review of the multiple issue grievance response by initialing the front, upper left-hand corner of the original form.  After the medical signature authority review, the original documents will be returned to the UGI.  The documents will be forwarded to the warden who is the signature authority for multiple issue medical grievances.

**Responses provided by medical department staff are to be typed verbatim.**

    \*    Complete the final grievance process and return the original grievance with response and signature to the offender.  This process will be completed within the 40-day time limit for processing Step 1 grievances, or if extended, within the extended due date.

**Step 2 Medical Grievances**

Step 2 medical grievances are received at the unit by the UGI, reviewed for emergencies in the same manner as all Step 2 grievances, entered into the GR00 Case Tracking System, and forwarded to the Central Grievance Office (CGO).  Refer to Chapter V.

When Step 2 medical grievances are **received at the CGO**:

    \*    CGO clerical staff will enter the grievance in the GR00 Screen 10.

    \*    Review the Step 1 and Step 2 grievance to ensure no emergency issue exists, the grievance was properly coded by the UGI at Step 1, and all investigative documentation is attached.

    \*    Contact a CGO supervisor if issue codes need to be added or deleted.

    \*    Acquire any medical documentation and security staff statements that may have been missed during the Step 1 investigation.  Attach an inter-office communication (IOC) informing the Health Services Step 2 grievance staff that additional documents or statements will follow for a specific grievance.  When the documents or statements are received, attach an IOC to the documents informing Health Services grievance staff to attach the documents to a specific grievance.

    \*    Attach a cover sheet created from GR00 Screen 11 and forward the **original** Step 2 grievance and all investigative documentation to the Health Services Division to conduct an appellate review.  Health Services Division staff will sign the cover sheet for grievances received and CGO clerical staff shall maintain the sheet for tracking.

When received at the Health Services Division Headquarters Office, the **Step 2 Health Services Investigator**:

1.    Is responsible for determining whether the grievance will be processed as an emergency, specialty, or regular grievance.

2.    If an issue code change is needed, a health services supervisor will contact the administrator of Offender Grievance or designee.  CGO clerical staff will update the grievance by entering data into GR00 Screen 15 and adding a note in the comment section regarding the reason for the change.

3.  Will apply all applicable screening criteria for grievances that do not qualify for processing and return to the CGO.

4.  Will conduct the appellate review and attach additional investigative documentation as needed.

5.  Document the findings, prepare a suggested response, and sign the OG-01 worksheet.

6.  Enter data into GR00 Screen 12 and Screen 13 when sending the grievance to acquire a signature and date on the completed Step 2 grievance.

7.  Type a response on the **original** Step 2 grievance.

8.  Return the answered and signed Step 2 grievance and all investigative documentation to CGO clerical staff within 45 days, or 35 days for emergency medical grievances and multiple issue medical grievances of the 'UGI Recd Date' in the OFFICE USE ONLY box on the front of the Step 2 grievance form.

9.  If additional time is needed to conduct an investigation, a written request that includes the grievance number, the offender name and TDCJ number, and the original due date may be forwarded to the administrator of Offender Grievance, or designee requesting an extension.

10. An additional 45 days may be granted.

11. Emergency medical grievances, issue code 003, must be completed in the 35 day time limit established for Step 2 grievances **and are not eligible for extension**.

Multiple issue medical grievances that include an issue code 600 series and another issue code, must be completed in the 35-day time limit established for Step 2 grievances and an additional 35 day extension may granted for investigation.

When the answered and signed Step 2 medical grievances are **returned to the CGO**:

*   CGO clerical staff will enter data into GR00 Screen 14.

*   The Step 2 grievance and all investigative documentation are imaged and filed using a computer imaging system.

*   CGO clerical staff will ensure the Step 2 grievance is closed and the appropriate outcome code in the GR00 Screen 16.

*   CGO clerical staff will fold completed Step 2 grievances being returned to offenders in a manner that the response and grievance text are not visible; then tape the grievance closed.

*   The folded grievances will be sorted by unit; placed in a large truck mail envelope addressed to the UGI at the offender's current unit of assignment; and the envelope mailed to the UGI.

*   The UGI will receive the completed Step 2 grievances and place a date stamp in the upper right hand corner, above the OFFICE USE ONLY box, indicating the date the Step 2 was returned to the offender.  The corresponding date of return will be entered into GR00 Screen 09, Option 02 Step 2 "Returned to the Offender."  This is important for attorneys defending the agency during litigation.

**Multiple Issue Medical Grievances**

When multiple issue Step 2 medical grievances are **received at the CGO**:

* CGO clerical staff will enter the grievance in the GR00 Screen 10.  All GR00 data entry is completed by CGO staff.

* Review the Step 1 and Step 2 grievance to ensure no emergency issue exists, the grievance was properly coded by the UGI at Step 1, and all investigative documentation is attached.

* Contact a CGO supervisor if issue codes need to be added and deleted.

* Acquire any medical documentation and security staff statements that may have been missed during the Step 1 investigation.  Attach an inter-office communication (IOC) informing the Health Services Step 2 grievance staff that additional documents or statements will follow for a specific grievance. When the documents or statements are received, attach an IOC to the documents informing Health Services grievance staff to attach the documents to a specific grievance.

* Attach a cover sheet created from GR00 Screen 11 and forward **a copy** of the Step 2 grievance and all investigative documentation to the Health Services Division to conduct an appellate review.  The original grievance remains at CGO.  Health Services Division staff will sign the cover sheet for grievances received and CGO clerical staff shall maintain the sheet for tracking.

When multiple issue Step 2 medical grievances are received at the Health Services Division Headquarters Office, the **Step 2 Health Services Investigator**:

1. Is responsible for determining whether the grievance will be processed as an emergency, specialty, or regular grievance.

2. If an issue code change is needed, a Health Services supervisor will contact the administrator of Offender Grievance or designee.  CGO clerical staff will update the grievance by entering data into GR00 Screen 15 and adding a note in the comment section regarding the reason for the change.

3. Will apply all applicable screening criteria for grievances that do not qualify for processing and return to the CGO.

4. Will conduct the appellate review and attach additional investigative documentation as needed.

5. Document the findings, prepare a suggested response, and sign the OG-01 worksheet.

6. Return the completed OG-01 and all investigative documentation to the CGO clerical staff within 35 days of the 'UGI Recd Date' in the OFFICE USE ONLY box on the front of the Step 2 grievance form.

7. If additional time is needed to conduct an investigation, a written request that includes the grievance number, the offender name, and TDCJ number, and the original due date may be forwarded to the administrator of Offender Grievance, or designee requesting an extension.

8. An additional 35 days may be granted for multiple issue medical grievances.

When the answered and signed multiple issue Step 2 medical grievances are **returned to the CGO**:

*      CGO clerical staff will enter all data in the GR00 Screen 14.

*      The CGO investigator will formulate a response combining the response verbatim provided by Health Services, as well as any other proponent involved in the investigation.

*      The administrator for Offender Grievance or designee is the signature authority for multiple issue medical grievances.

*      The Step 2 grievance and all investigative documentation are imaged and filed using a computer imaging system.

*      CGO clerical staff will ensure the Step 2 grievance is closed with the appropriate outcome code in the GR00 Screen 16.

*      CGO clerical staff will fold completed Step 2 grievances being returned to offenders in a manner that the response and grievance text are not visible; then tape the grievance closed.

*      The folded grievances will be sorted by unit; placed in a large truck mail envelope addressed to the UGI at the offender's current unit of assignment; and mailed to the UGI.

*      The UGI will receive the completed Step 2 grievances and place a date stamp in the upper right hand corner, above the OFFICE USE ONLY box, indicating the date the Step 2 was returned to the offender.  The corresponding date of return will be entered into GR00 Screen 09, Option 02 Step 2 Returned to the Offender.  This is important for attorneys defending the agency during litigation.

## STAFF MEETINGS, TRAINING AND PROGRAM MONITORING

### Staff Meetings

Staff meetings are an efficient and effective tool to communicate and share ideas; discuss policy changes; work through problems; and set goals for the future.  The role of the regional grievance supervisor is vital to accomplishing the goals and objectives of the Offender Grievance Program.

* Conducted four times per year, once a quarter, which allows unit grievance staff the opportunity to discuss issues with one another.  Regional supervisors shall coordinate these meetings with the Central Grievance Office (CGO) so that current policy changes, modifications to operating procedures, and any other issues worthy of discussion may be included on the agenda.

* Regional grievance supervisors shall forward a copy of the meeting agenda, a summary of the topics discussed, and a copy of the sign-in roster to the CGO within 10 days after the meeting is held.  If necessary, these meetings may be conducted via video teleconference.

### Training for Unit Grievance Staff

Grievance staff are defined as grievance investigator II's, grievance investigator III's, grievance alternates, and grievance clerical staff.  Training for new grievance staff will be accomplished **within 30 days** of their selection to the position.  Experienced grievance staff who have been in the position at least a year will be utilized in assisting to train new staff when possible.  Immediate contact should be made with the new staff member to assess what training needs exist and how urgent the need is for an on-site visit.

Training materials will be provided by the CGO.  A comprehensive review of the Offender Grievance Operations Manual (OGOM), data entry into the GR00 Case Tracking System, and how to use the TDCJ mainframe system will be provided to all new grievance staff.

When training has been completed, the New Grievance Employee Training Verification form (Appendix S) will be completed and signed by the new grievance staff member and the individual who provided the training to verify training has been completed.  The original signed form will be mailed to the regional grievance supervisor to maintain for the units within their region and a copy of the form faxed or mailed to the deputy administrator of Offender Grievance.  The deputy administrator will maintain the original forms for central office staff.

> **The 30 day requirement for completion of training will not begin until staff report to the grievance office for those staff who are required to attend the TDCJ Training Academy.  Staff may be required to take accrued time worked after the conclusion of the academy.**

* New grievance investigator II's are trained by investigator III's who have at least one year experience in the grievance program.

  * New grievance investigator II's at units that do not have an investigator III are trained by the regional grievance supervisor or an investigator II or III from another unit who has at least one year experience in the grievance program.

* New grievance investigator III's are trained by the regional grievance supervisor or another investigator III who has at least one year experience in the grievance program.

* Grievance clerical staff will be trained by the investigators in the grievance department, unless they are also new to the grievance program.  The regional grievance supervisor will coordinate training in this situation.

* If the regional grievance supervisor is new to the position, then the deputy administrator of Offender Grievance will assist in training new unit and regional grievance staff.

**Regional Grievance Staff**

* New regional grievance supervisors are trained by the deputy administrator or designee. Another regional grievance supervisor that has at least one year experience in the grievance program may also assist in training new supervisors.

* New regional grievance supervisors will participate in as many division-level reviews as possible.

* Regional supervisors in the position at least one year are experienced and can train new regional investigators and clerk positions in their office.

* Regional supervisors will request assistance regarding training new staff as needed from the deputy administrator.

* If the regional grievance supervisor is new to the position, then the deputy administrator assists training of new unit and regional grievance staff.

**Central Grievance Office (CGO) Staff**

* The administrator of Offender Grievance trains a new deputy administrator;

* The deputy administrator trains new Program Specialist Is;

* Program Specialist Is train new investigators and clerks.  New investigators and clerks work with experienced investigators and clerks for up to two weeks.

**Private Facility Contract Monitoring and Oversight Division (PFCMOD) Grievance Staff**

* Trained by regional grievance supervisors within 30 days of selection to the position.

* PFCMOD grievance staff attends all meetings and training sessions held by the regional grievance supervisor or the CGO.

* The regional grievance supervisor and CGO provides technical assistance, as needed.

**Offender Grievance Program Monitoring**

**Bi-Annual Reviews**

Regional grievance supervisors shall conduct biannual reviews of each unit grievance office under their supervision.

* The time frame for the reviews shall be September – February (**reports due March 10**) and March – August (**reports due September 10**).

* The Offender Grievance Operational Review Checklist and the Offender Grievance Office Checklist shall be utilized for each unit review.  A copy of the checklists must accompany the biannual report to the CGO.

* If a unit is scheduled for a division-level operational review during the time period listed above, it is not necessary to conduct a biannual review.

* When extenuating circumstances occur and a regional supervisor cannot complete the bi-annual reviews as scheduled, the regional supervisor will submit a written request explaining the situation to the administrator of Offender Grievance.  The administrator may exempt the regional supervisor from completing the reviews.

* PFCMOD contract monitors conduct reviews for the PFCMOD and provides a report to the PFCMOD Headquarters Office which satisfies the biannual review requirement.  Therefore, regional supervisors do not conduct biannual reviews at these facilities.


**Unit Level Operational Reviews**

Unit level reviews are conducted each month by the unit operational review sergeant according to the Inspection Schedule published by the Monitoring and Standards Department.   Offender grievance is reviewed two times per year, during the months of **October** and **April**.  The same checklist used during the division-level review is also utilized during the unit-level review.

* The UGI is responsible for sending an email to the regional grievance supervisor noting any findings requiring corrective action that are identified by the operational review sergeant. The checklist number and an explanation of the finding will be included in the email.

* The regional grievance supervisor is responsible for ensuring corrective action occurs and conducts follow-up.  The email and any follow up review documents are to be filed in their regional office.

* The Monitoring and Standards Department provides a copy of unit level reports to the administrator of Offender Grievance or designee for those units that findings requiring corrective action are identified.

* The administrator or designee reviews the findings and then forwards the report to the regional grievance supervisor who is responsible for contacting the unit to ensure corrective action has occurred.   In some cases, a unit visit to the grievance department may be necessary.

* The regional grievance supervisor then provides a report of actions they have taken since first learning of the finding from the UGI, as well as the outcome to the administrator or designee.


**The biannual reviews and the unit level reviews provide a mechanism for monitoring the Offender Grievance Program during the time period between the division level operational reviews conducted every three years.**

**Division Level Operational Reviews**

Division level operational reviews are conducted on each facility every three years in accordance with ED 02.92, "Operational Review Program," and the monitoring schedule published by the Monitoring and Standards Department.

*   CGO staff schedule and conduct the division level reviews utilizing the Offender Grievance Operational Review Checklist and the Offender Grievance Office Checklist.

*   CGO staff contact the regional grievance supervisor to coordinate their schedule, as they assist in the review for the units within their region.

*   The regional grievance supervisor participates in interviewing staff and offenders, reviews grievance investigations, as well as participates in the outbriefing with the warden.

*   CGO staff completes and submits a report regarding the outcome of the review to the Monitoring and Standards Department according to the guidelines set forth in ED-02.92.

**Offender Grievance Operations Manual (OGOM)**

Annually, all unit, regional, and central office grievance staff are required to read the *Offender Grievance Operations Manual* to ensure they remain current with grievance policy and procedures.

*   The administrator or designee will send an email to grievance staff informing them to read the OGOM and provide a date that the task is to be completed.

*   All staff in each grievance department actively involved in the grievance process will sign an Employee Verification form (Appendix T) when the task has been accomplished

*   The completed original verification forms will be mailed to the regional grievance supervisor to maintain for the units within their region.

*   The regional grievance supervisor will forward an email to the deputy administrator when all units within their region have reported completion.

**Grievance Reports and GR00 Case Tracking System Data**

The administrator of Offender Grievance or designee may disseminate additional reports to the regional grievance supervisors to review regarding the offender grievance program at the units within their region such as the overdue report, #99 report, administratively closed grievances report, UGI grievance stats, and exception report data.  These reports may indicate corrective action should be taken; a unit visit is warranted; or additional training is needed for staff.  New reports or monitoring mechanisms may be implemented to monitor the grievance program as identified.

**Step 2 Operational Reviews**

Units have limited involvement with Step 2 Grievances.  Therefore, a separate auditing checklist has been developed to assess operations in the Central Grievance Office, regional offices, and other headquarters offices that perform Step 2 investigations and responses.  Reviews of Step 2 grievance operations will be completed by the deputy administrator as directed by the administrator.

**Random Reviews**

Special reviews may be conducted at any time as directed by management staff.  The purpose of these special reviews may be division level pre-audits, staffing change in a grievance office, or as a response to reported problems.  The reviews may be completed by the administrator, deputy administrator, regional grievance supervisor, or a combination of all three.  The administrator shall be provided a copy of any report generated from these operational reviews.

**DUTIES OF UNIT GRIEVANCE OFFICE CLERICAL PERSONNEL**
**STEP 1**

The grievance clerk will be responsible for much of the initial organization of the grievance office. The clerk will create and maintain a set of start-up files as well as maintaining office and reference materials in easily accessible areas.

1.  The following is a list of files for the grievance office:

    a.  Active Files for offenders currently assigned to the unit who have submitted grievances

    b.  Incoming Grievance Files for offenders who have transferred to the unit

    c.  Permanently Inactive Files for offenders who have discharged from TDCJ

    d.  Temporary Inactive Files for offenders who have temporarily left the unit such as for a medical appointment

    e.  Outgoing grievance files to other facilities for offenders who have transferred to another unit

    f.  Grievances awaiting copies of documentation

    g.  Copies of modified or overturned disciplinary records

    h.  Supply order forms

    i.  Statistical reports

    j.  Fax records

    k.  Original forms used in the grievance office

2.  The unit grievance clerk will process all newly received grievance files upon receipt from other units:

    a.  The unit grievance clerk will utilize the TDCJ mainframe system to verify the offender is assigned to the unit.

    b.  If the offender is on the unit, the unit grievance clerk will review all the grievances contained in the file to ensure they are in proper order.  The grievances should be in date order based on the signature date on the grievance with **the most recent date in the front**.

    c.  The unit grievance clerk will complete the **GR00 Screen 24** by entering the unit's two digit code and the date the file was received.

3.  The UGI will be responsible for forwarding the grievance files of transferring offenders to their new unit of assignment.

    a.  The unit grievance clerk will acquire the outgoing chain list and check the active files for offenders transferring from the unit.

    b.  If an offender is being paroled or released on mandatory supervision, the file will be placed in a file designated as **permanently inactive** and maintained until agency records retention requirements have been exhausted.

    c.  If the offender is temporarily transferred, the file will be placed in an area designated as temporarily inactive.

* The unit grievance clerk will retrieve the records from the temporarily inactive file and place them in the active file upon the offender's return and assignment to that unit.

* If an offender is transferred to a new unit of assignment, the unit grievance clerk will complete the **GR00 Screen 24** by entering the unit's two digit code and the date the file was mailed, and then forward the file to the offender's new unit.

4. The unit grievance clerk will be responsible for daily filing of all completed Step 1 grievances.

   a. Prior to filing a grievance, the unit grievance clerk will ensure the documents are in the correct order:

      * Signed and answered Step 1 grievance form.

      * CONFIDENTIALITY form.

      * OG-01.

      * All support documents.

   b. If a particular offender's file becomes too thick, the unit grievance clerk will create an auxiliary file.  The new file will be placed in front of the old file, with both files remaining active.

   c. If the unit grievance clerk cannot locate an offender's records when attempting to file a completed Step 1 grievance, the unit grievance clerk will ascertain, by utilizing the TDCJ mainframe, the offender's previous unit of assignment.  The unit grievance clerk will contact the previous unit of assignment in an attempt to locate the file.  If the previous unit does not have the offender's grievance file or the offender has not previously filed a grievance, the unit grievance clerk will create a file.

5. The unit grievance clerk will be responsible for entering data for each grievance received into the GR00 Case Tracking System.

6. The grievance clerk will be responsible for typing the response in the appropriate space on the Step 1 form.

7. The unit grievance clerk will make copies of completed grievances, attach the investigation and all related documents to the copy, and place them in the offender's file.  The original is returned to the offender, along with any documentation the offender may have submitted.

8. The unit grievance clerk is responsible for submitting the Request for Disciplinary Case Correction E-Form to the appropriate offices for any modified or overturned disciplinary cases. Refer to Chapter 7 for instructions on completing the e-form.

9. The unit grievance clerk will review the Step 1 overdue report from the TDCJ mainframe infopac on a daily basis to check whether grievances from their unit are listed, **INGRV015**.

10. The unit grievance clerk will generate a monthly statistical report to be submitted to the warden listing the number and types of grievances submitted during the previous month and maintain a file of these reports in the grievance office.

11. The unit grievance clerk will also be responsible for general duties, including completion and submittal of the weekly supply order.  The unit grievance clerk will maintain an inventory of blank I-127 and I-128 grievance forms and ensure that the forms are available to the offender population.

**Step 2 Grievances Received at the Unit**

When Step 2 grievances are received, the unit grievance clerk shall:

   a.  Stamp the current date in the on the "Office Use Only" box on the UGI Rec'd Date line.

   b.  Write the grievance number on the line provided in the "Office Use Only" box on the front of the form.

   c.  Write the issue code on the line provided in the "Office Use Only" box on the front of the form.

   d.  Enter the Step 2 grievance as received at the unit in the GR00 Option 09 on each line provided for each Step 2 grievance received (not inappropriately submitted grievances [ISG's] or resubmissions). Print two copies of the screen when all grievances have been entered. Include one copy with the Step 2 grievances mailed to CGO and keep one copy for the unit grievance office. This is the cover sheet used for tracking.

   e.  Copy and attach all investigative documentation obtained during the investigation of the Step 1 grievance. This may include copies of property inventories, staff statements, disciplinary reports, and hearing records.

   f.  Attach an official copy of the disciplinary report from the offender's unit classification file even if the offender has submitted a legible copy of his disciplinary report with his grievance. The offender's copy will be returned to him with the completed grievance.

   g.  All documents are to be stapled to the Step 2 grievance

   h.  Step 2 grievances must be forwarded to the Central Grievance Office in Huntsville in the most expeditious and cost effective means available within 24 hours of receipt.

**Do not accumulate grievances before sending them to the CGO, as time limits are in progress.**

**Unit grievance staff are not to keep copies of Step 2 grievances.**

## DUTIES OF CENTRAL GRIEVANCE OFFICE CLERICAL PERSONNEL
## STEP 2

The Central Grievance Office (CGO) clerical staff is responsible for processing, duplication, and dissemination of grievances submitted for appeal at Step 2.

1. CGO clerical staff will process all grievances received each work day.

2. CGO clerical staff will sort grievances to ensure:

   a. Name and TDCJ number on the Step 1 and Step 2 correspond.

   b. The Step 1 and Step 2 grievance numbers correspond.

   c. The issue code listed on the Step 1 is recorded on the Step 2.

   d. The Step 2 was entered into GR00 when received at the unit.

   e. A cover sheet is included with each envelope or package that lists all grievances included in the envelope or package.

   f. All grievances written in Spanish were translated to English prior to being forwarded to CGO.

3. CGO clerical staff will complete the mail log for all incoming mail received.

4. CGO clerical staff will stamp the receive date and write the date due in the OFFICE USE ONLY box.

5. CGO clerical staff are responsible for entering data for each grievance received into the GR00 Case Tracking System.

6. CGO clerical staff will review the Step 2 overdue report from the TDCJ mainframe infopac on a daily basis to check whether grievances from their area of responsibility are listed, **INGRV016**.

7. CGO clerical staff will forward the grievance to the appropriate investigating authority:

   a. Sexual assault or sexual abuse allegations will be forwarded to the regional supervisor.

   b. Undocumented use of force or criminal acts by staff allegations will be forwarded to the Office of Inspector General.

   c. Offender protection claims will be forwarded to the Regional Supervisor.

   d. Religious issues will be forwarded to the Department of Chaplaincy.

   e. Discrimination issues will be forwarded to the regional supervisor.

   f. Classification issues will be forwarded to the regional supervisor.

   g. Communication issues will be forwarded to the regional supervisor.

   h. Mail issues will be forwarded to the Mail Systems Coordinating Panel (MSCP).

   i. Disciplinary appeals will be addressed at the Central Grievance Office.

   j. Operational issues will be forwarded to the regional supervisor.

   k. Property claims will be addressed by the regional supervisor and Central Grievance Office.

l.  Medical issues will be forwarded to the Department of Health Services.

m.  Access to courts issues will be forwarded to the Access to Courts Department.

n.  Staff complaints will be addressed by the regional supervisor and Central Grievance Office.

o.  Transportation issues will be forwarded to the Department of Transportation.

p.  Impermissible offender conduct complaints will be forwarded to the Monitoring and Standards Department.

q.  *Americans with Disabilities Act* issues will be forwarded to the TDCJ Risk Management Department.

r.  DNA issues will be addressed by the Central Grievance Office.

8.  CGO clerical staff will ensure each grievance has been signed at the Step 2 level.

9.  CGO clerical staff will ensure the original forms and documents are sent to imaging personnel and each grievance is closed with the proper outcome code.

10. CGO clerical staff will check the offender's unit of assignment and mail the original grievance forms to the offender.

11. CGO clerical staff will locate files and grievances for CGO investigators and administrators.

12. CGO clerical staff date stamp and disperse all incoming mail to the appropriate personnel or department.

13. CGO clerical staff will type Inter-Office Communications (IOC), correspondence, or complete special assignments as required.

## FORMS

1. **Instructions on How to Write and Submit Grievances (OG-02):**  Detailed instructions are available to offenders in the Law Library, Orientation Handbook, and posted in prominent locations throughout the unit.  The form is printed in English and Spanish.  **(Appendix B)**

2. **Non-Grievable Issues Return Form:**  Completed for grievances that are returned for certain non-grievable issues as identified on the form.  The unit grievance investigator (UGI) will check the appropriate box, attach to the returned grievance, and return it to the grievance to the offender unprocessed.  **(Appendix C)**

3. **Issue Codes Table of Contents & Issue Codes:**  Listing of codes that identifies the subject of a grievance.  **(Appendix D)**

4. **Outcome Codes.**  Listing of codes that identify the outcome of a grievance investigation.  **(Appendix E)**

5. **Step 1 Offender Grievance Form (I-127):**  Formal complaint form completed by offenders when informal resolution does not resolve an issue.  **(Appendix F)**

6. **Step 2 Offender Grievance Form (I-128):**  Form completed by offenders when they are dissatisfied with the response on a Step 1 grievance.  **(Appendix G)**

7. **Grievance Investigation Worksheet (OG-01):**  Completed by the UGI as each section applies to the grievance being investigated.  All investigative information shall be documented in the designated spaces provided on the form or attached to the form.  **(Appendix H)**

8. **Emergency Checklist (OG-004):**  Checklist is completed to determine if a matter presented in a grievance or correspondence should be processed as an emergency and given priority attention.  **(Appendix I)**

9. **Fact Sheet for OIG Investigation (OG-009):**  Completed to facilitate basic fact-finding issues that warrant referral to the Office of Inspector General (OIG).  This completed document and a copy of the grievance will be forwarded according to the current instructions found in Chapter IV, OGOM.  **(Appendix J)**

10. **Disciplinary Worksheet and Document Checklist (OG-005):**  Checklist is required for all offender disciplinary appeals.  **(Appendix K)**

11. **Documents and Forms Required for Investigation of Medical Grievances Checklist:**  Checklist is required for all medical grievances.  **(Appendix L)**

12. **Notice of Extension (OG-007):**  Complete this form when additional time is needed to complete an investigation.  The original is forwarded to the offender and a copy attached to the file copy of the grievance being extended.  **(Appendix M)**

13. **Property Settlement Agreement Form:**  Completed when an offender is offered restitution for property items lost or damaged while in possession of TDCJ at the time its loss or damage.  **(Appendix N)**

14. **Monetary Reimbursement Agreement Form:**  Completed during the Step 2 process when resolution of lost or damaged property can only be made by depositing money into the offender's trust fund account.  The UGI will receive an email with instructions from the Central Grievance Office when to complete the form.  **(Appendix O)**

15. **Use of Force Cover Letter:**  Completed for all grievances submitted regarding a documented use of force incident.  **(Appendix P)**

16. **AD-02.29 Attachment A, TDCJ Records Disposition Log:**  The purging of grievance files is documented on this log and forwarded to the Executive Services Department.  **(Appendix Q)**

17. **Staff Use of Slurs or Hostile Epithets Referral Form.**  Allegations are referred to the appropriate agency authority when credible evidence exists.  **(Appendix R)**

18. **New Grievance Employee Training Verification Form.**  Completed for all new grievance staff within 30 days of selection; after graduation from the TDCJ Training Academy; or reports to the grievance office.  **(Appendix S)**

19. **Offender Grievance Operations Manual Employee Verification Form.**  Annually completed by all grievance staff actively involved in processing grievances.  **(Appendix T)**

**Texas Department of Criminal Justice**
**INSTRUCTIONS ON HOW TO WRITE AND SUBMIT GRIEVANCES**

1.  *Grievance forms are available from the law library, housing area, shift supervisors, or by contacting the unit grievance office*. After completely filling out the form, place it in the grievance box yourself or hand it directly to the grievance investigator on your unit.  *Step 2 appeals must be accompanied by the original, answered Step 1.*

2.  An attempt to informally resolve your problem must be made before filing a grievance.  *Informal resolution* is defined as any attempt to solve the issue at hand and must be noted on the Step 1 grievance form (I-127).  You have 15 days from the date of the alleged incident or occurrence of the issue presented in which to complete the Step 1 grievance form and forward it to the unit grievance investigator (UGI).  The Step 1 process may take up to 40 days from the date the unit grievance office receives the Step 1 form to respond.  If you are not satisfied with the Step 1 response, you may appeal the Step 1 decision by filing a Step 2 (I-128).  You have 15 days from the date of the Step 1 signature to submit the Step 2 to the grievance investigator on the unit.  The Step 2 process may take up to 35 days to provide you a written response or 45 days for medical grievances.  *Present only one issue per grievance.*

3.  *Additional time* may be required in order to conduct an investigation at either Step 1 or Step 2 and in either case; you will be *notified of the extension in writing*.

4.  *Complete your grievance using a typewriter or dark ink.  If you need assistance filing a grievance or understanding a response, contact your unit grievance investigator.*

5.  *The following issues are grievable through the Offender Grievance Procedure.*  Remember that you may only file a grievance on issues that PERSONALLY APPLY TO YOU.
    *   The interpretation or application of TDCJ policies, rules, regulations, and procedures.
    *   The actions of an employee or another offender, including denial of access to the grievance procedure.
    *   Any reprisal against you for the good faith use of the grievance procedure or Access to Courts.
    *   The loss or damage of authorized offender property possessed by persons in the physical custody of the Agency, for which the Agency or its employees, through negligence, are the proximate cause of any damage or loss.
    *   Matters relating to conditions of care or supervision within the authority of the TDCJ, for which a remedy is available.

6.  *You may not grieve*:
    *   State or federal court decisions, laws and/or regulations;
    *   Parole decisions;
    *   Time-served credit disputes which should be directed to the Classification and Records, Time Section;
    *   Matters for which other appeal mechanisms exist;
    *   Any matter beyond the control of the agency to correct.

7.  *Grievances that do not meet the following established screening criteria will be returned to you unprocessed*; however, most grievances may be corrected and resubmitted within 15 days from the signature date on the returned grievance.
    *   Grievable time period has expired.   (Step 1 grievances must be submitted within 15 days from the date of incident and Step 2 Appeals must be submitted within 15 days from the date of the signature on the Step 1.)
    *   Submission in excess of 1 every 7 days.  (All grievances received in the grievance office will be reviewed; however, only one grievance will be processed every Seven days [with the exception of disciplinary, specialty, and emergency grievances].)
    *   Originals not submitted. (Carbon copies are not considered originals even if they have an original signature.  The original answered Step 1 must be submitted with a Step 2 Appeal.)
    *   Inappropriate/excessive attachments. (Your grievance must be stated on one form and in the space provided.  Attach only official documents that support your claim, such as I-60's, sick call requests, property papers, and other similar items)
    *   No documented attempt at informal resolution. (You are required to attempt to resolve issues with a staff member prior to filing a grievance.  Remember, the attempt must be documented in the space provided on the I-127 form.)
    *   No requested relief is stated. (The specific action required to resolve the complaint must be clearly stated in the space provided.)
    *   Malicious use of vulgar, indecent, or physically threatening language directed at an individual.
    *   The issue presented is not grievable. (Refer to #6 above.)  **Disciplinary appeals will not be processed until after the disciplinary hearing.**
    *   Redundant. (You may not repeatedly grieve matters already addressed in a previous grievance)
    *   The text is illegible/incomprehensible. (Write your grievance so that it can be read and understood by anyone.)
    *   Inappropriate. (You may not ask for monetary damages or any form of disciplinary action against staff.)

8.  *Do not use a grievance form to comment on the effectiveness and credibility of the grievance procedure; instead, submit a letter or I-60 to the administrator of the Offender Grievance Program.*

## Departamento de Justicia Criminal de Texas
### INSTRUCCIONES EN COMO ESCRIBIR Y ENVIAR QUEJAS

1. ***Las formas para Quejas están disponibles en la biblioteca de ley, área de vivienda, supervisores o contactando la oficina de quejas de la unidad**. Después de llenar completamente la forma, colóquela usted mismo en la caja de quejas o entréguela directamente al investigador de quejas en su unidad. *Las apelaciones en el Paso 2 deben estar acompañadas por el original, respuesta del Paso 1.*

2. Primero debe de tratar de resolver su problema informalmente antes de presentar su queja. ***Resolución Informal** se define como cualquier intento por resolver el problema a la mano y debe anotarlo en la queja Paso 1 forma (I-127). Usted tiene 15 días de la fecha del incidente o de cuando ocurrió el problema presentado para completar la queja Paso 1 y enviarla al investigador de quejas de la unidad (UGI). El proceso de Paso 1 puede tomar hasta 40 días desde la fecha que la oficina de quejas de la unidad recibe la forma Paso 1 para responder. Si usted no esta satisfecho con la respuesta del Paso 1, usted puede apelar la decisión del Paso 1 llenando un Paso 2 (I-128). Usted tiene 15 días desde la fecha firmada en el Paso 1 para presentar el Paso 2 al investigador de quejas de la unidad. El proceso Paso 2 puede tomar hasta 35 días para darle una respuesta escrita o 45 días por quejas médicas. ***Presente solamente un asunto por queja.***

3. ***Tiempo adicional** se puede requerir para efectuar una investigación ya sea del Paso 1 o Paso 2 y en cualquier caso; usted será *notificado de la extensión por escrito.*

4. ***Llene su queja usando una máquina de escribir o tinta negra. Si usted necesita ayuda para llenar una queja o entendiendo una respuesta, comuníquese con el investigador de quejas de su unidad.***

5. ***Los siguientes asuntos son tratados a través del Proceso de Quejas del Ofensor.** Recuerde que usted puede solamente presentar quejas en asuntos que APLICAN PERSONALMENTE A USTED.
   * La interpretación o aplicación de políticas, reglas, reglamentos y procedimientos de TDCJ.
   * Las acciones de un empleado u otro ofensor, incluyendo la negación de acceso al procedimiento de quejas.
   * Cualquier represalia en su contra por el uso en buena fe del procedimiento de quejas o Acceso a Cortes.
   * La pérdida o daño de la propiedad autorizada del ofensor en posesión de personas en la custodia física de la agencia, por la cual la Agencia o sus empleados, por negligencia, son la causa aproximada de cualquier daño o pérdida.
   * Asuntos relacionados a condiciones de cuidado o supervisión dentro de la autoridad de TDCJ, por el cual un remedio es disponible.

6. ***Usted no puede quejarse por:*
   * Decisiones de cortes Estatales o federales, leyes y/o regulaciones;
   * Decisiones de Libertad Condicional (Parole);
   * Disputas en crédito de Tiempo-servido las cuales deberán ser dirigidas a Classification and Records, Time Section;
   * Asuntos por los cuales otros mecanismos de apelación existen;
   * Cualquier asunto fuera del control de la Agencia para corregirlo.

7. ***Quejas que no reúnen las siguientes reglas establecidas le serán regresadas a usted sin procesarlas**; sin embargo, la mayoría de las quejas pueden ser corregidas y enviadas otra vez dentro de 15 días de la fecha firmada en que se regresó la queja.
   * El período para presentar su queja ha terminado. (Quejas Paso 1 deben de entregarse dentro de 15 días de la fecha del incidente y apelaciones Paso 2 deben ser enviadas dentro de 15 días de la fecha firmada en el Paso 1).
   * Presentar quejas en exceso de 1 cada 7 días. (Todas las quejas recibidas en la oficina de quejas serán revisadas; sin embargo, solamente una queja será procesada cada Siete días [con la excepción de disciplina, especialidad y quejas de emergencia].)
   * Original no presentada. (Copias carbón no son consideradas originales aún si ellas tienen una firma original. El original del Paso 1 contestado debe ser enviado con una apelación Paso 2.)
   * Demasiadas páginas o inapropiadas. (Su queja debe ser escrita solo en una forma y en el espacio proveído. Adjunte solo documentos oficiales que apoyen su reclamo, tales como I-60's, llamadas de enfermo (sick call), papeles de propiedad, y otros artículos similares)
   * No documentó el intento de resolución informal. (Se le pide a usted intentar de resolver problemas con un empleado antes de enviar una queja. Recuerde, el intento debe de ser documentado en el espacio proveído en la forma I-127.)
   * No especifica que remedio pide. (La acción especifica requerida para resolver el reclamo debe ser claramente anotada en el espacio proveído.)
   * Uso malicioso de lenguaje vulgar, indecente o amenazador fisicamente dirigido a un individuo.
   * El asunto presentado no es de queja (Consulte el #6 arriba.) Apelaciones disciplinarias no serán procesadas hasta después de la audiencia disciplinaria.
   * Repetición. (Usted no puede quejarse repetidamente de asuntos ya presentados en una queja anterior.)
   * El texto es ilegible e incomprensible. (Escriba su queja de manera que pueda ser leído y entendido por cualquiera.)
   * Inapropiado. (Usted no puede pedir por daños monetarios o por ninguna forma de acción disciplinaria contra un empleado.)

8. ***No use una I-127 para comentar la efectividad y credibilidad del proceso de quejas; en su lugar, envíe una carta o I-60 al administrador del Programa de Quejas del Ofensor.***

**NON-GRIEVABLE ISSUES**

☐      Direct this issue to Director's Review Committee (DRC).

☐      Direct this issue to the Classification and Records – Time Credit Section.

☐      You may not submit a Step 2 appeal with a Step 1 grievance that was screened and returned to you unprocessed. If you feel that the Step 1 was returned in error, you may contact the grievance investigator for clarification.

☐      Disciplinary matters will not be addressed prior to the hearing.  If you are not satisfied with the outcome of the hearing submit a Step 1 grievance form stating the reasons for the appeal within 15 days of the hearing date.

Grievance Investigator:_____

---

**NON-GRIEVABLE ISSUES**

☐      Direct this issue to Director's Review Committee (DRC).

☐      Direct this issue to the Classification and Records – Time Credit Section.

☐      You may not submit a Step 2 appeal with a Step 1 grievance that was screened and returned to you unprocessed. If you feel that the Step 1 was returned in error, you may contact the grievance investigator for clarification.

☐      Disciplinary matters will not be addressed prior to the hearing.  If you are not satisfied with the outcome of the hearing submit a Step 1 grievance form stating the reasons for the appeal within 15 days of the hearing date.

Grievance Investigator:_____

**Appendix C**

## TDCJ OFFENDER GRIEVANCE PROCEDURE ISSUE CODES
## TABLE OF CONTENTS

EMERGENCY (*Codes 000 – 015*)                                    Page 1


MISCELLANEOUS (*Codes 004 – 006*)                                Page 2

SPECIALTY – RELIGION (*Codes 100 – 199*)

SPECIALITY – MEDICAL / HEALTH SERVICES (*Codes 607 – 623*)


SPECIALTY – MEDICAL / HEALTH SERVICES (*Codes 624 – 654*)        Page 3


SPECIALTY – MEDICAL / HEALTH SERVICES (*Codes 655 – 699*)        Page 4


SPECIALTY – LEGAL (*Codes 700 – 799*)                            Page 5

SPECIALTY – STAFF COMPLAINTS (*800 – 806, 811 & 899*)

SPECIALTY – GRIEVANCE STAFF / GRIEVANCE PROCEDURE
   (*Codes 903 – 904, 910 & 999*)


REGULAR – CLASSIFICATION MATTERS (*Codes 200 – 299*)             Page 6

REGULAR – COMMUNCATION (*Codes 300 – 399*)


REGULAR – DISCIPLINARY (*Codes 401 – 499*)                       Page 7


REGULAR – FACILITY OPERATIONS (*Codes 500 – 599*)                Page 8


REGULAR – MEDICAL / HEALTH SERVICES                              Page 9
   (*Codes 600 – 606, 673 & 699*)

REGULAR – STAFF COMPLAINTS
   (*Codes 807 – 810, 812 – 815 & 899*)

REGULAR – MISCELLANEOUS (*Codes 900 – 999*)

## TDCJ OFFENDER GRIEVANCE PROCEDURE
## ISSUE CODES

**Instructions:**  An issue code is assigned to all grievances utilizing this detailed list.  The issue code should reflect the issue presented in the grievance and the action requested.  If several issues arise from one incident, the first or primary code should reflect the most serious issue presented.  If a specialty issue is identified in the grievance, the specialty issue must be presented as the primary issue code.  In most cases, a single code is sufficient to identify the issue addressed in the grievance.  Additional codes may be used when there are significant secondary issues arising from the same incident.

There are 11 screening criteria that were developed to manage caseload and encourage offenders to utilize the Offender Grievance Procedure responsibly.   Refer to Chapter IV for Step 1 grievances and Chapter V for Step 2 grievances.  Grievance investigators are to err on the side of caution when there is any level of uncertainty regarding using the screening criteria.  Screening criteria is utilized as follows:  Emergency grievances shall be processed and are not eligible; some specialty grievances are eligible for screening criteria as noted in this document; and regular grievances are eligible for all screening criteria.   Screening criteria not eligible for correction or resubmission are:  #1; #8, except a disciplinary appeal submitted prior to a hearing; and #9.  Therefore, no other screening criteria should be listed with any of the three criteria.

**EMERGENCY**  (*Screening criteria does not apply*)

**000**   ALLEGATIONS OF PHYSICAL HARM FROM ANOTHER OFFENDER (Physical contact occurred, for allegations of sexual assault, use Code 008 and for allegations of sexual abuse, use Code 009)

**001**   REQUEST FOR PROTECTION (Protective Custody or Safekeeping)

**002**   ALLEGATIONS OF STAFF CONDUCT THAT PLACES AN OFFENDER IN DANGER (If physical contact occurred, use code 800)

**003**   MEDICAL EMERGENCIES (To include threats of Suicide. For Hunger Strike use Code 671)

**007**   EXTORTION (Obtaining currency, property, or demanding the performance of an action by coercion, violence, or threat of violence [sexual favors, commissary items or trust fund deposits])

**008**   ALLEGATIONS OF SEXUAL ASSAULT BY ANOTHER OFFENDER (Penetration of the anus, sexual organ, or mouth of another person by any means, without that person's consent).

**009**   ALLEGATIONS OF SEXUAL ABUSE BY ANOTHER OFFENDER (Sexual contact between the genitals of one person and the genitals, mouth, anus, or hands of another person, to include sexual fondling, without that person's consent)

**010**   ALLEGATIONS OF OFFENDER SEXUAL HARASSMENT (Repeated verbal statements, comments of a sexual nature; demeaning references to gender, derogatory comments about the body)

**011**    ALLEGATIONS OF SEXUAL ASSAULT BY STAFF (Penetration of the anus, sexual organ, or mouth of another person by any means, without that person's consent).

**012**   ALLEGATIONS OF SEXUAL ABUSE BY STAFF (Sexual contact between the genitals of one person and the genitals, mouth, anus, or hands of another person, to include sexual fondling, without that person's consent)

**013**   ALLEGATIONS OF STAFF SEXUAL HARASSMENT (Repeated verbal statements, comments of a sexual nature; demeaning references to gender, derogatory comments about body or clothing; or gestures to an offender by an employee, volunteer, contractor, official visitor, or agency representative)

**014**   ALLEGATIONS OF VERBAL THREATS OF PHYSICAL HARM FROM ANOTHER OFFENDER

**015**   ALLEGATIONS OF VERBAL THREATS OF PHYSICAL HARM FROM STAFF

**Appendix D**

**MISCELLANEOUS**   *(Screening criteria does not apply)*

**004**    ADA ISSUES (Denial of access to a program, service or activity based on a disability)

**005**    IMPERMISSIBLE OFFENDER CONDUCT AND PRIVILEGE ISSUES (Situations where an offender is receiving preferential treatment with regard to services or privileges, access to sensitive information, or an offender in authority over another offender)

**006**    DISCRIMINATION BASED ON GENDER OR NATIONALITY


**SPECIALTY – RELIGION**   *(All screening criteria, except #2 apply)*

**100**    RELIGIOUS SERVICE OR MEMBERSHIP

**101**    RELIGIOUS PARAPHERNALIA

**102**    RELIGIOUS GROOMING

**104**    DISCRIMINATION BASED ON RELIGION

**112**    CONFISCATION OF RELIGIOUS PROPERTY

**199**    IMPROPER OR UNPROCESSED RELIGIOUS GRIEVANCE (Screened using criteria on reverse of grievance forms)


**SPECIALTY – MEDICAL / HEALTH SERVICES**   *(All screening criteria, except #2 apply)*

**600-606** *Listed in the Regular – Medical / Health Services Section.*

**607**    CONFIDENTIALITY / PRIVACY ISSUES

**608**    DENIED / DELAYED ACCESS TO MEDICAL TREATMENT / INFIRMARY SERVICES

**609**    DENIED / DELAYED ACCESS TO MENTAL HEALTH SERVICES

**610**    DENIED / DELAYED ACCESS TO DENTAL SERVICES

**611**    DENIED / DELAYED ACCESS TO SPECIALIST SERVICES (Specialty Clinic appointments. Includes delays and missed Specialty clinic appointments)

**612**    CONFISCATED MEDICAL PROPERTY (May include, but not limited to the following:  e.g., partials, dentures, glasses, contacts, braces, medications, canes, crutches, walkers, wheelchairs, medical supplies, special footwear, appliances, etc.)

**613**    CANCELED / MISSED APPOINTMENT ISSUES (Routine unit based appointments)

**614**    DELAYED / MISSED APPOINTMENTS ATTRIBUTED TO SECURITY / OPERATIONAL STAFF / LACK OF ESCORTS (Add an 814 with this code)

**615**    HEALTH CARE INTERPRETER SERVICES ISSUES

**616**    DENIAL / DELAYS IN OBTAINING NEW OR RENEWED MEDICATIONS

**617**    TIME SENSITIVE / KOP (KEEP-ON-PERSON PROGRAM) / NON-FORMULARY MEDICATION ISSUES

**618**    INSUFFICIENT OR INEFFECTIVE MEDICATION ISSUES

**619**    PILL LINE / PILL WINDOW / MEDICATION DISTRIBUTION ISSUES (Includes medication deliverance through Pill Window, Direct Observed Therapy [DOT], TYLENOL distribution by correctional staff and supervisors, etc.)

**620**    MEDICATION DISPENSING IN ADMINISTRATIVE SEGREGATION (All aspects, includes during lockdown)

**621**    ALLERGIC REACTION / ADVERSE EFFECTS / MEDICATION ERRORS ISSUES

**622**    PHOTOSENSITIVE / HEAT SENSITIVE MEDICATION ISSUES

**Appendix D**

**623**   LIQUID / CRUSHED MEDICATION / INJECTION / SPECIAL DISPENSING ISSUES

**624**   INEFFECTIVE / NSUFFICIENT / DENIAL / DELAY IN RECEIVING MEDICAL TREATMENT

**625**   TREATMENT PROCEDURES ORDERED BY A PROVIDER NOT FOLLOWED

**626**   CHRONIC CARE / PRE-EXISTING CONDITIONS /CONTINUITY OF CARE ISSUES

**627**   DIABETIC ISSUES

**628**   HEPATITIS / LIVER ISSUES

**629**   HIV ISSUES

**630**   TB ISSUES

**631**   HEART / BLOOD PRESSURE ISSUES

**632**   ONCOLOGY ISSUES

**633**   STAPH INFECTION ISSUES

**634**   CLIPPER SHAVE ISSUES

**635**   WHEELCHAIRS / WALKERS / CANES / CRUTCHES / ACE WRAPS / BRACES / SPECIAL EQUIPMENT ISSUES (C-PAP machines/tens units etc.)

**636**   LABORATORY TESTING / X-RAYS / DIAGNOSTIC TESTING ISSUES

**637**   DISAGREEMENTS WITH OR MISDIAGNOSIS ISSUES

**638**   WORK RESTRICTIONS / HOUSING ISSUES / HEALTH SUMMARY FOR CLASSIFICATION (HSM-18) ISSUES (Medical restrictions not being followed)

**639**   WORK ASSIGNMENT NOT COMMENSURATE WITH THE HEALTH SUMMARY FOR CLASSIFICATION (HSM-18) ISSUES (Medical restrictions not being followed)

**640**   WORK ASSIGNMENT PRIOR TO / DURING / OR AFTER SURGERY / TREATMENT / ILLNESS ISSUES

**641**   MEDICAL UNIT REASSIGNMENT ISSUES

**642**   PROVIDER NOT FOLLOWING PRIVATE PHYSICIAN / SPECIALTY CLINIC RECOMMENDATIONS

**643**   DENIAL OF SPECIALTY CLINIC REFERRALS / APPOINTMENTS

**644**   SPECIALTY CLINIC SCHEDULING ISSUES (Includes delays, missed appointments, and elective surgery issues)

**645**   SPECIAL TRANSPORTATION FOR MEDICAL REASONS (Ambulance, ADS van, Multi-Purpose Vehicle for medical [MPV], other)

**646**   DENIED / DELAYED RECEIPT OF TREATMENT / SPECIAL DIETS WHILE IN TRANSIT STATUS

**647**   SICK CALL REQUEST RESPONSE ISSUES (Includes not responded to, responded to but not in a timely manner, inappropriate responses)

**648**   MEDICAL PASSES ISSUES

**649**   NON-TDCJ MEDICAL RECORDS / OPEN RECORDS REQUESTS

**650**   RELEASE OF INFORMATION ISSUES (Authorization for Use and Disclosure of Protected Health Information [PHI])

**651**   HEALTH RECORDS INFORMATION (Allegations of discrepancies, falsification, omissions, missing or unauthorized changing)

**652**   HEALTH RECORD / DOCUMENT REVIEW ISSUES (Offender requests to review own health records)

**653**   HEALTH RECORD / DOCUMENT COPY ISSUES (Offender requests to obtain a copy of own health records, private historical medical records and archived records)

**654**   ASSISTIVE DISABILITY SERVICES (ADS) / HANDICAPPED/SPECIAL MEDICAL NEEDS

**Appendix D**

**655** GERIATRIC ISSUES

**656** HOSPICE ISSUES

**657** SPECIAL THERAPEUTIC DIET ISSUES (Includes supplements and snacks, Diet for Health)

**658** WEIGHT LOSS / WEIGHT GAIN ISSUES

**659** SPECIAL FOOTWEAR / APPLIANCE ISSUES (Replacement / repair of missing, broken, worn out footwear or appliance / eligibility for services.  Also includes not satisfied with treatment / footwear / appliances)

**660** OPHTHALMOLOGY / OPTOMETRY / GLASSES / OPTICAL PROSTHESIS ISSUES (Includes requests for appointments, tinted lenses and contact lens)

**661** VISUAL ACUITY AND ELIGIBILITY FOR OPTOMETRY / OPHTHALMOLOGY REFERRALS / APPOINTMENT ISSUES (Includes denial of appointment)

**662** DENTAL ISSUES (Includes eligibility for services / requests for services / not satisfied with services)

**663** DENIAL / DELAYS IN RECEIVING DENTAL SERVICES

**664** DENTURE / PARTIAL DENTURE ISSUES

**665** MENTAL HEALTH ISSUES (Requests for mental health treatment / denial / delays in being seen / not satisfied with treatment)

**666** MENTAL HEALTH MEDICATION ISSUES

**667** FORCED MENTAL HEALTH MEDICATION ISSUES

**668** DEVELOPMENTAL DISABILITY PROGRAM (Formerly Mentally Retarded Offender Program [MROP])

**669** PAMIO ISSUES (Physically Aggressive Mental Ill Offender Program)

**670** CRISIS MANAGEMENT ISSUES (Mental Health, includes precaution and restraint issues)

**671** HUNGER STRIKE ISSUES

**672** MENTAL HEALTH PROGRAM ISSUES (Step Down Program, etc)

**673** *Listed in the Regular – Medical / Health Services Section.*

**674** NON-MEDICAL PERSONNEL INTERFERENCE WITH HEALTH SERVICES

**675** HEAT / COLD (Temperature related medical issues)

**676** PHYSICAL THERAPY / OCCUPATIONAL THERAPY ISSUES

**677** RESPIRATORY THERAPY / CARE ISSUES

**678** AUDIOLOGY ISSUES (Hearing Issues)

**679** BRACE AND LIMB CLINIC ISSUES

**680** DIALYSIS CLINIC ISSUES

**699** IMPROPER OR UNPROCESSED MEDICAL GRIEVANCE (Screened using criteria on reverse of grievance forms)

**SPECIALTY– LEGAL**   *(All screening criteria, except #2 apply)*

**700**   ACCESS TO COURTS (Interference with Legal Activities)
**701**   INDIGENT CORRESPONDENCE SUPPLIES/MAIL (Denial of Indigent Legal, or Personal Writing Supplies, Postage, Certified Mail)
**702**   TELEPHONE ACCESS (Attorney / Consular Phone Calls)
**703**   LAW LIBRARY LEGAL RESEARCH MATERIAL (Availability, Restriction, Delivery, etc.)
**704**   LAW LIBRARY (Hours of Operation, Accessibility, etc.)
**705**   LEGAL VISITS WITH OTHER OFFENDERS
**706**   ATTORNEY VISITS
**707**   NOTARY SERVICE
**709**   LEGAL PROPERTY (Search, or Denial of Access)
**710**   INADEQUATE LEGAL SERVICES PROVIDED BY STATE COUNSEL FOR OFFENDERS
**711**   OPEN RECORDS REQUESTS
**712**   CONFISCATED LEGAL PROPERTY
**713**   ADDITIONAL STORAGE (Denial of Additional Storage for Legal, Religious, Educational, or Medical)
**799**   IMPROPER OR UNPROCESSED LEGAL GRIEVANCE (Screened using criteria on reverse of grievance forms)


**SPECIALTY – STAFF COMPLAINTS**   *(All screening criteria, except #2 apply)*

**800**   USE OF FORCE (Allegations of Inappropriate, Excessive, Unreported Use of Force)
**801**   USE OF CHEMICAL AGENTS (Inappropriate Use of, Decontamination, etc.)
**802**   POINTED A WEAPON
**803**   CRIMINAL ACTIVITY BY STAFF (Alleged Violations of State or Federal Law)
**804**   RETALIATION / HARASSMENT FOR USE OF GRIEVANCE PROCEDURE
**805**   RETALIATION / HARASSMENT FOR EFFORTS TO EXERCISE ACCESS TO COURTS RIGHTS
**806**   ALLEGATIONS OF HARASSMENT FOR CONTRIBUTING TO OR COOPERATING WITH AN OFFICIAL INVESTIGATION
**811**   USE OF SLURS / HOSTILE EPITHETS
**899**   IMPROPER OR UNPROCESSED STAFF COMPLAINT GRIEVANCE (Screened using criteria on reverse of grievance forms)


**SPECIALTY – GRIEVANCE STAFF / GRIEVANCE PROCEDURE**   *(All screening criteria, except #2 apply)*

**903**   GRIEVANCE STAFF
**904**   GRIEVANCE PROCEDURE / PROCESSING / UNTIMELY RESPONSE
**910**   ACCESS TO GRIEVANCE FORMS
**999**   IMPROPER OR UNPROCESSED MISCELLANEOUS GRIEVANCE (Screened using criteria on reverse of grievance forms)

**Appendix D**

## REGULAR – CLASSIFICATION MATTERS   *(All screening criteria apply)*

**200**   HOUSING ASSIGNMENT (Complaints regarding Housing Assignment including Medical Restrictions not being followed)

**201**   JOB ASSIGNMENT (Complaints regarding Work Assignment including Medical Restrictions not being followed)

**202**   ADMINISTRATIVE SEGREGATION (Initial Placement, Pre-Hearing Detention, Review Hearings, Status, Leveling)

**206**   EDUCATIONAL / VOCATIONAL TRAINING (Windham School, Educational Testing, Lee College, Class Schedules, Project RIO, Changes, etc.)

**207**   REHABILITATION PROGRAMS (Sex Offender Rehabilitation Program (SORP), Substance Abuse Treatment Program (SATP), Pre-Release & Innerchange)

**209**   CLASSIFICATION STATUS / CUSTODY LEVEL FOR OFFENDERS NOT IN ADMINISTRATIVE SEGREGATION (UCC and SCC Decisions.  For Administrative Segregation Offenders, use Code 202)

**210**   FURLOUGH / WORK RELEASE (Including Emergency Absences and Medical Reprieves)

**211**   SECURITY THREAT GROUP (Confirmation, SCC, "Ex"-Gang Investigations initiated to confirm status, etc.)

**212**   IN-CELL INTEGRATION / ASSIGNMENT TO TWO-PERSON CELLS / OFFENDER REQUEST FOR HOUSING REASSIGNMENT

**214**   GOOD TIME (Absentee Tracking Issues, Work time, etc.)

**299**   IMPROPER OR UNPROCESSED CLASSIFICATION GRIEVANCE (Screened using criteria on reverse of grievance forms)


## REGULAR – COMMUNICATION   *(All screening criteria apply)*

**300**   VISITATION (Any issue regarding Visitation.  For Legal Visits, use Code 706)

**301**   TELEPHONE ACCESS (Any issue regarding Telephone access.  For Legal Telephone Access, use Code 702)

**302**   INTERVIEW REQUESTS (I-60 not answered, Administration will not interview, etc.)

**303**   ACCESS TO FORMS (I-60, Sick Call, Other Non-Grievance Forms.  For Grievance forms, use Code 910.)

**304**   GENERAL MAIL (May include complaints about Mailroom Staff tampering with General Mail, Distribution, Rejection, etc.  For complaints involving Security Staff, use Code 814 and for complaints involving Indigent Mail, use Code 701.)

**305**   PACKAGES (May include complaints about Mailroom Staff tampering with Packages, Mishandling, Distribution, Rejection, etc.  For Lost Publications, use Code 515 and for complaints involving Security Staff, use Code 814.)

**306**   PUBLICATIONS (May include complaints about Mailroom Staff tampering with Publications, Mishandling, Distribution, Rejection, etc.  For Lost Publications, use Code 515 and for complaints involving Security Staff, use Code 814.)

**307**   SPECIAL / LEGAL / MEDIA MAIL (May include complaints about Mailroom Staff tampering with Special/Legal Mail, Opening Mail in Error, Not Sealing Mail, Mishandling, Distribution, Rejection, etc. For complaints involving Security Staff, use Code 814.)

**308**   MAIL NOT DELIVERED IN ACCORDANCE WITH CORRESPONDENCE RULES TIME LIMITS

**399**   IMPROPER OR UNPROCESSED COMMUNICATION GRIEVANCE (Screened using criteria on reverse of grievance forms)

**Appendix D**

**REGULAR – DISCIPLINARY**  *(All screening criteria apply, except #2 & #5)*

**401**  IMPROPERLY CHARGED (Charge was inconsistent with the offense, or was false.  This includes lesser-included offense claims.)

**402**  NOTICE / SERVICE DEFICIENCY (Inadequate, Violation of the 24 Hour Rule, Charge not Specified as Major or Minor, or Other Service Document Errors.)

**404**  INVESTIGATION DEFICIENCY (Preliminary investigation was not conducted or was not conducted properly.)

**405**  FAILURE TO ALLOW / CALL / INTERVIEW WITNESSES, OR CROSS EXAMINATION (Requested witnesses were improperly excluded or cross-examination of the witness was denied. Denials must be adequately justified.)

**406**  DENIED PRESENTATION OF DOCUMENTARY OR OTHER EVIDENCE (Denial of Documentary or other evidence such as lay-in slips, written statements, photographs, written statements from offenders and/or items, etc.)

**408**  HEARING / INVESTIGATION WAS NOT IMPARTIAL (Disciplinary Hearing Officer was biased, etc.)

**409**  COUNSEL SUBSTITUTE DEFICIENCY (Counsel Substitute did not conduct an adequate investigation or adequately represent him at the hearing.)

**410**  INSUFFICIENT / IMPROPER EVIDENCE TO SUPPORT FINDINGS (Falsified statements, not a preponderance of evidence for a finding of guilt.)

**411**  IMPROPER PUNISHMENT (Punishment was too severe, or the punishment was outside of the established guidelines.)

**412**  ACCUSED EXCLUDED FROM HEARING (Offender excluded from the hearing without sufficient justification, or was not called to the hearing.)

**413**  DEFICIENT HEARING RECORD (Hearing record inadequately completed. e.g., Reason witness was not present, justification for punishment was not noted, or reasons for finding of guilt were not noted, etc.)

**414**  MITIGATING FACTORS FOR OFFENSE (Offender admits committing the offense but provides valid reasons for his behavior, e.g., Too Sick to Turn out for Work.)

**415**  NO MENTAL HEALTH REVIEW/CLEARANCE (Clearance was not obtained from Mental Health Staff to determine the offender's eligibility to participate in the Disciplinary Process)

**416**  NEW WITNESS / EVIDENCE AFTER HEARING (This type of information should be presented to the warden by the offender)

**418**  CONSPIRACY / RETALIATION (Charge or verdict was due to Conspiracy or Retaliation by staff, or the disciplinary hearing officer)

**419**  FRIVOLOUS ISSUES (A reason or excuse which does not refute the charge)

**421**  NON-FRIVOLOUS EVIDENCE ERROR (Evidence, which, if true, contradicts the facts alleged in the Disciplinary Report)

**422**  FAILURE TO PROVIDE AN INTERPRETER

**423**  "JUST OVERTURN MY CASE" (No specific stated season, or due process error claimed)

**499**  IMPROPER OR UNPROCESSED DISCIPLINARY GRIEVANCE (Screened using criteria on reverse of grievance forms)

**Appendix D**

**REGULAR – FACILITY OPERATIONS**   *(All screening criteria apply)*

**500**   FOOD (Food Services Issues e.g., Improper Temperature, Unsanitary Serving Practices, Portions, Quality of Food, Non-Provision of Special Diet.  For Medical Diets, use Code 657)

**501**   COMMISSARY (Warranties, Hours, Product Availability, Accessibility, Lost ID Cards, etc.)

**502**   TRUST FUND (ITF Holds, Improper Deductions, Failure to Withdraw Funds.  For Medical Co-Pay Issues, use Code 673)

**503**   SANITATION (Issues regarding the cleanliness of any area of the unit)

**504**   NECESSITIES (Bedding, Clothing, Shoes, Boots, or State-Issued Hygiene Items, such as Toothpowder, Soap, Toilet Paper, etc.)

**505**   ACTIVITY ROTATION (Building Schedule)

**506**   LIVING CONDITIONS (Temperature, Ventilation, etc.)

**507**   WORKING CONDITIONS (Pertaining to the Work Environment Only, e.g., Temperature, Hazards, Hours, etc.)

**508**   GROOMING (Shaving, Haircuts.  For Religious Grooming concerns, use Code 102.)

**509**   RECREATION (Denials, Inclement Weather, Equipment)

**510**   SHOWERS (Denials, Schedules)

**512**   CONFISCATED / CONTRABAND PROPERTY (For Religious items, use Code 112; for Medical items, use code 612; and for Legal items, use Code 712)

**513**   REGULATIONS / OFFENDER PERSONAL PROPERTY

**514**   PROPERTY IN TRANSIT / SHIPPED PRISON STORE (As a result of unit transfer, transportation, or events [An MST# is required for Prison Store shipping])

**515**   PROPERTY LOST / MISSING / DAMAGED / STOLEN / (As a result of staff, other offenders, or events.  Includes lost publications)

**518**   SEARCHES (Body Cavity, Living Area, Housing, Pat, Strip, Work, etc.)

**522**   MAINTENANCE (All areas of the unit)

**523**   FACILITY LOCKDOWN (Includes suspension of activities less than 24 hours)

**524**   OFFENDER DRUG TESTING PROCEDURES (Includes any issue regarding Random Drug Testing Program through the operational review sergeant)

**525**   CRAFT SHOP (Participation, Denial, Storage Space, etc.)

**526**   SAFETY ISSUES (Injuries sustained as a result of behavior/conditions [Injuries beyond first aid require completion of RM-04 form])

**599**   IMPROPER OR UNPROCESSED FACILITY OPERATIONS GRIEVANCE (Screened using criteria on reverse of grievance forms)

**Appendix D**

**REGULAR – MEDICAL / HEALTH SERVICES**  *(All screening criteria apply)*

**600**   COMPLAINTS AGAINST NURSING STAFF (R.N., LVN, medication aids)

**601**   COMPLAINTS AGAINST PHYSICIANS (Unit based MD, DO)

**602**   COMPLAINTS AGAINST PHYSICIAN EXTENDERS (PA, NP, FNP, etc.)

**603**   COMPLAINTS AGAINST ANCILLARY MEDICAL STAFF (Medical records, lab techs, phlebotomists, x-ray techs, CCA's, etc.)

**604**   COMPLAINTS AGAINST MENTAL HEALTH STAFF

**605**   COMPLAINTS AGAINST DENTAL STAFF

**606**   HARASSMENT, RETALIATION, DISCRIMINATION, UNETHICAL BEHAVIOR, OTHER, BY HEALTH CARE STAFF

**673**   COPAYMENT ISSUES

**699**   IMPROPER OR UNPROCESSED MEDICAL GRIEVANCE (Screened using criteria on reverse of grievance forms)


**REGULAR – STAFF COMPLAINTS**  *(All screening criteria apply)*

**807**   UNPROFESSIONAL STAFF APPEARANCE (Uniform, Name Tags, etc.)

**808**   THREATS FROM STAFF (Not of Physical Harm)

**810**   ALLEGATIONS OF STAFF USE OF PROFANITY / OBSCENE LANGUAGE

**812**   HARRASSMENT, RETALIATION / TAUNTING / BADGERING / INTIMIDATION

**814**   ALLEGATION OF STAFF DENIAL / INTERFERENCE WITH AN ACTIVITY (Such as, Recreation, Shower, etc.)

**815**   UNPROFESSIONAL STAFF CONDUCT (Behavior That Does Not Fall into any Other Category)

**899**   IMPROPER OR UNPROCESSED STAFF COMPLAINT GRIEVANCE (Screened using criteria on reverse of grievance forms)


**REGULAR – MISCELLANEOUS**  *(All screening criteria apply)*

**900**   TRANSPORTATION (Any issue regarding Offender Movement via Bus, Van, etc.  For issues involving Property Lost / Damaged during Transportation, use Code 514 and for Medical Transportation Issues, use Code 645)

**901**   ALLEGATIONS AGAINST OTHER OFFENDERS (Action taken by another offender against the grievant not covered under any other code)

**911**   DNA Issues

**999**   IMPROPER OR UNPROCESSED MISCELLANEOUS GRIEVANCE (Screened using criteria on reverse of grievance forms)

**Appendix D**

# OUTCOME CODES:

**C      Administratively Closed**

This code is primarily used when a grievance is lost and the offender is allowed to resubmit the grievance under a new grievance number, or an offender informs the UGI during an investigation that he did not write the grievance. In the latter case, the UGI will obtain a written statement from the offender to attach with the grievance. **A regional grievance supervisor or Central Grievance Office supervisor are the only staff who close a grievance with this outcome code.** There may be other extenuating circumstances that warrant use of this code, but only at the direction of the administrator of the Offender Grievance Program.

**D      No Action**

- Available evidence does not support the complaint
- Insufficient evidence for further investigation
- Redundant complaint
- Property settlement offer refused
- Grievances that include allegations of excessive or unreported use of force; criminal acts by staff; or harassment or retaliation for access to courts rights (e.g., filing grievances or other legal activities) are referred to the OIG for review. This code should be used when OIG staff determines there is <u>insufficient evidence</u> to open an OIG investigation.

**H      Grievances Screened/Returned to the Offender for Correction and Re-Submission**

Use of this code is restricted to grievances that are screened during the review process using one or more of the screening criteria listed on the reverse side of a Step 1 or Step 2 grievance form. The offender will have an additional 15 days to correct and resubmit the grievance.

**R      Resolved**

- Policy, procedure, rules, or practice changed
- Records corrected
- Property returned / Property settlement made
- Other corrective actions as appropriate

**T      Referred to the Office of the Inspector General (OIG) for Appropriate Action**

Grievances that include allegations of excessive or <u>unreported use of force</u>; inappropriate use of chemical agents; or harassment/retaliation for access to courts rights (e.g., filing grievances or other legal activities) are referred to the OIG for review. This code should be used when OIG staff reviewed the grievance and determined there is <u>sufficient evidence</u> to open an OIG investigation and an OIG case number has been assigned.

*OIG staff may determine there is <u>insufficient evidence</u> to open an OIG investigation, but recommends a <u>review by the unit warden</u>. In this case, the warden's decision will determine the outcome code, either "**D**" (no action) or "**R**" (resolved), as appropriate.*

**U      Grievance Included with the Use of Force Report for review**

This code should be used when the grievance involves a <u>reported use of force</u> and a copy of the grievance was included with the use of force documentation. The grievance may be reviewed in conjunction with the offender's participant statement, or serve as the offender's participant statement if one has not already been submitted.



**Texas Department of Criminal Justice**

# STEP 1

**OFFENDER
GRIEVANCE FORM**

**OFFICE USE ONLY**

Grievance #: _____

Date Received: _____

Date Due: _____

Grievance Code: _____

Investigator ID #: _____

Extension Date: _____

Date Retd to Offender:_____

Offender Name: _____ TDCJ # _____

Unit: _____ Housing Assignment: _____

Unit where incident occurred: _____

---

**You must try to resolve your problem with a staff member before you submit a formal complaint.  The only exception is when appealing the results of a disciplinary hearing.**

Who did you talk to (name, title)? _____ When? _____

What was their response? _____

What action was taken? _____

**State your grievance in the space provided.  Please state who, what, when, where and disciplinary case number if appropriate.**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**I-127 Front** (Revised 11-2010)          **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**          (OVER)

Appendix F

_____

_____

_____

_____

_____

_____

**Action Requested to resolve your Complaint.**

_____

_____

**Offender Signature:** _____   **Date:** _____

**Grievance Response:**




**Signature Authority:** _____   **Date:** _____

**If you are dissatisfied with the Step 1 response, you may submit a Step 2 (I-128) to the Unit Grievance Investigator within 15 days from the date of the Step 1 response. State the reason for appeal on the Step 2 Form.**

**Returned because:     *Resubmit this form when corrections are made.**

☐ 1. Grievable time period has expired.

☐ 2. Submission in excess of 1 every 7 days. *

☐ 3. Originals not submitted. *

☐ 4. Inappropriate/Excessive attachments. *

☐ 5. No documented attempt at informal resolution. *

☐ 6. No requested relief is stated. *

☐ 7. Malicious use of vulgar, indecent, or physically threatening language. *

☐ 8. The issue presented is not grievable.

☐ 9. Redundant, Refer to grievance #_____

☐ 10. Illegible/Incomprehensible. *

☐ 11. Inappropriate. *

**UGI Printed Name/Signature:** _____

**Application of the screening criteria for this grievance is not expected to adversely Affect the offender's health.**

**Medical Signature Authority:**_____

**I-127 Back** (Revised 11-2010)

| OFFICE USE ONLY | |
|---|---|
| Initial Submission | UGI Initials:_____ |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender:_____ | |
| **2nd Submission** | **UGI Initials:_____** |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender: _____ | |
| Date Returned to Offender: _____ | |
| **3rd Submission** | **UGI Initials:_____** |
| Grievance #: _____ | |
| Screening Criteria Used: _____ | |
| Date Recd from Offender:_____ | |
| Date Returned to Offender: _____ | |

**Appendix F**



# Departamento de Justicia Criminal de Texas

# PASO 1

## FORMULARIO DE QUEJAS

**OFFICE USE ONLY**
Para Uso De La Oficina Solamente

Grievance #: _____

Date Received: _____

Date Due: _____

Grievance Code: _____

Investigator ID #: _____

Extension Date: _____

Date Returned to Offender: _____

**Nombre:** _____  **TDCJ #** _____

**Unidad:** _____ Celda Asignada: _____

**Unidad donde ocurrió el incidente:** _____

**Es obligatorio que trate de resolver su problema con un empleado antes de presentar su queja formalmente. La única excepción es cuando apela los resultados de un caso disciplinario.**

Con quién habló (nombre y rango):_____ Cuándo?_____

Cuál fue su respuesta? _____

Qué medidas fueron tomadas?_____

**Escriba su queja en el espacio de abajo. Por favor, incluya quién, qué, cuándo, donde y el # de caso disciplinario si se requiere.**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**I-127S Frente** (Revisión 11-2010)      **SE REQUIERE SU FIRMA AL REVERSO DE ESTA FORMA**      (Continua al reverso)

**Appendix F**

_____

_____

_____

_____

_____

**Acción que usted solicita para resolver su problema.**

_____

_____

**Firma del Ofensor:** _____  **Fecha:** _____

**Decisión Administrativa:**




**Firma de la Autoridad** _____  **Fecha:** _____
Si usted no esta satisfecho con la respuestra del Paso 1, (I-127), usted puede enviar el Paso 2 (I-128) al Investigador de Quejas de la unidad dentro de 15 días de la fecha de la respuesta del Paso 1. Escriba la razon de su apelación en la forma del Paso 2.

**Su Queja fue regresada por las siguientes razones:**
*Presente su queja cuando haya corregido su error en el formulario.*

☐ **1. El límite establecido de 15 días para presentar su queja ha terminado.**

☐ **2. Presentó mas de una queja en el período establecido de 7 días.***

☐ **3. La forma original no fue presentada. ***

☐ **4. La queja tiene páginas excesivas o inapropiadas. ***

☐ **5. No hay documentación que indique que usted trato de resolver su queja informalmente.**

☐ **6. No indicó que remedio solicita para resolver su problema.***

☐ **7. Contiene lenguaje vulgar, indecente o amenazador físicamente. ***

☐ **8. Su problema no se puede solucionar presentando esta queja. ***

☐ **9. Ya presentó esta queja anteriormente, queja #** _____

☐ **10. No se puede leer, no se entiende. ***

☐ **11. No es apropiado. ***

**UGI Printed Name/Signature:** _____

**La aplicación del criterio de revisión para esta queja no se espera que afecte adversamente la salud del ofensor.**

**Medical Signature Authority**:_____

**I-127S** Reverso (Revisión 11-2010)

### OFFICE USE ONLY
Para Uso De La Oficina Solamente

Initial Submission         UGI Initials:_____

Grievance #: _____

Screening Criteria Used: _____

Date Recd from Offender: _____

Date Returned to Offender: _____

**2nd Submission**              **UGI Initials:_____**

Grievance #: _____

Screening Criteria Used: _____

Date Recd from Offender: _____

Date Returned to Offender: _____

**3rd Submission**              **UGI Initials:_____**

Grievance #: _____

Screening Criteria Used: _____

Date Recd from Offender: _____

Date Returned to Offender: _____

**Appendix F**



**Texas Department of Criminal Justice**

# STEP 2     OFFENDER GRIEVANCE FORM

<table>
<tr><td colspan="2" align="center"><strong>OFFICE USE ONLY</strong></td></tr>
<tr><td>Grievance #:</td><td>_____</td></tr>
<tr><td>UGI Recd Date:</td><td>_____</td></tr>
<tr><td>HQ Recd Date:</td><td>_____</td></tr>
<tr><td>Date Due:</td><td>_____</td></tr>
<tr><td>Grievance Code:</td><td>_____</td></tr>
<tr><td>Investigator ID #:</td><td>_____</td></tr>
<tr><td>Extension Date:</td><td>_____</td></tr>
</table>

**Offender Name**: _____ **TDCJ #** _____

**Unit**: _____ **Housing Assignment**: _____

**Unit where incident occurred**: _____

*You must attach the completed Step 1 Grievance that has been signed by the Warden for your Step 2 appeal to be accepted. You may not appeal to Step 2 with a Step 1 that has been returned unprocessed.*

**Give reason for appeal (Be specific).** *I am dissatisfied with the response at Step 1 because...*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**I-128 Front** (Revised 11-2010)     **YOUR SIGNATURE IS REQUIRED ON BACK OF THIS FORM**     (OVER)

Appendix G

_____

_____

_____

_____

_____

**Offender Signature:** _____   **Date:** _____

**Grievance Response:**

**Signature Authority:** _____   **Date:** _____

**Returned because:**   *Resubmit this form when corrections are made.*

☐ **1.  Grievable time period has expired.**

☐ **2.  Illegible/Incomprehensible. ***

☐ **3.  Originals not submitted. ***

☐ **4.  Inappropriate/Excessive attachments. ***

☐ **5.  Malicious use of vulgar, indecent, or physically threatening language**

☐ **6. Inappropriate. ***

**CGO Staff Signature:** _____

| OFFICE USE ONLY |
|---|
| **Initial Submission**          **CGO Initials:**_____ |
| Date UGI Recd:_____ |
| Date CGO Recd:_____ |
| (check one) ____Screened      ____Improperly Submitted |
| Comments:_____ |
| Date Returned to Offender:_____ |
| **2ⁿᵈ Submission**          **CGO Initials: _____** |
| Date UGI Recd:_____ |
| Date CGO Recd:_____ |
| (check one) ____Screened      ____Improperly Submitted |
| Comments:_____ |
| Date Returned to Offender:_____ |
| **3ʳᵈ Submission**          **CGO Initials:_____** |
| Date UGI Recd:_____ |
| Date CGO Recd:_____ |
| (check one) ____Screened      ____Improperly Submitted |
| Comments:_____ |
| Date Returned to Offender:_____ |

**I-128 Back** (Revised 11-2010)

**Appendix G**



**Departamento de Justicia Criminal de Texas**

# PASO 2

### FORMULARIO DE QUEJAS

**OFFICE USE ONLY**
Para Uso De La Oficina Solamente

Grievance #: _____

UGI Recd Date: _____

HQ Recd Date: _____

Date Due: _____

Grievance Code: _____

Investigator ID #: _____

Extension Date: _____

**Nombre:** _____ **TDCJ #** _____

**Unidad:** _____ **Celda Asignada:** _____

**Unidad donde ocurrió el incidente:** _____

*Para procesar su apelacion al Segundo nivel, necesita mandar junto con su formulario (I-128) el original del formulario (I-127) con la respuesta y la firma del guardian.  Usted no puede apelar su queja al Segundo nivel, si su queja al primer nivel fue regresada sin procesar.*

**Escriba la razón de su apelación (sea específico).**    *Yo no estoy satisfecho con la respuesta del Paso 1 porque....*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**I-128S Frente** (Revisión 11-2010)        **FIRME AL REVERSO DE ESTA FORMA**        (Continua al reverso)

**Appendix G**

_____

_____

_____

_____

_____

**Firma del Ofensor:** _____ **Fecha:** _____

**Respuesta Administrativa en referencia a su apelacion:**

**Firma de la Autoridad:** _____ **Fecha:** _____

| | |
|---|---|
| **Su queja fue regresada por las siguentes razones:** | **OFFICE USE ONLY** |
| | **Para Uso De La Oficina Solamente** |
| ***Presente esta forma otra vez cuando haya hecho las correcciones** | **Initial Submission**          **CGO Initials:**_____ |
| | Date UGI Recd:_____ |
| ☐ **1.  El periodo para presentar su queja ha terminado. *** | Date CGO Recd:_____ |
| ☐ **2.  No se puede leer, no se entiende. *** | (check one) ____Screened        ____Improperly Submitted |
| ☐ **3.  El documento original no fue presentado. *** | Comments:_____ |
| ☐ **4.  La queja tiene páginas excesivas o inapropiadas. *** | Date Returned to Offender:_____ |
| | **2ⁿᵈ Submission**              **CGO Initials: _____** |
| ☐ **5.  Contiene lenguaje vulgar,  indecente o amenazador físicamente. *** | Date UGI Recd:_____ |
| ☐ **6.  No es apropiado.*** | Date CGO Recd:_____ |
| | (check one) ____Screened        ____Improperly Submitted |
| | Comments:_____ |
| **CGO Staff Signature:** _____ | Date Returned to Offender:_____ |
| | **3ʳᵈ Submission**              **CGO Initials:_____** |
| | Date UGI Recd:_____ |
| | Date CGO Recd:_____ |
| | (check one) ____Screened        ____Improperly Submitted |
| **I-128S Reverso** (Revisión 11-2010) | Comments:_____ |
| **Appendix G** | Date Returned to Offender:_____ |

# GRIEVANCE INVESTIGATION WORKSHEET
## *Restricted & Confidential*

| GRIEVANCE OFFICE USE ONLY | | STEP 1 |
| --- | --- | --- |
| | | STEP 2 |

| Unit: _____ | Investigator ID: _____ | Date Initiated: _____ | Date Completed: _____ Date Due: _____ |
| --- | --- | --- | --- |
| Offender Name: _____ | | TDCJ No: _____ | Grievance No: _____ |

| Issue Code: | **EMERGENCY** | **ADA** ( ) | **Property** ( ) | **Impermissible Offender Conduct** ( ) |
| --- | --- | --- | --- | --- |
| | **YES ( )** | **Disciplinary** ( ) | **Religion** ( ) | **Use of Force (UOF)** ( ) |
| | **NO ( )** | **Medical** ( ) | **OPI Investigation** ( ) | **Harassment or Retaliation\*** ( ) |
| | | | | **\*Harassment or Retaliation for Use of the Grievance Procedure, Access to Courts, or other Legal Activity** |

NOTE:  **Offenders are not allowed to review the grievance investigation worksheet at any time.**  *For claims of sexual assault, sexual abuse, criminal acts by staff, Excessive or Unreported UOF, the investigation must be conducted by the Office of the Inspector General (OIG) and the OIG Fact Sheet completed.*

**Summary of Issue:**  *(Include date, time and location.)*_____

_____

_____

_____

_____

_____

**Requested Remedy:**_____

_____

_____

The following is to be completed and signed by the Investigating Official, a separate form is required for multiple issue medical grievances.  Attach Statements/Support Documentation, if applicable.

**Summary of Fact Finding Activity:**_____

_____

_____

_____

_____

**Suggested Response to Offender:**_____

_____

_____

_____

_____

_____

_____

**OUTCOME CODE:**_____  *(Grievance Office Use Only)*

Investigating Official completes the section below.

**Printed Name:**_____     **Signature:**_____

**Title:**_____     **Date:**_____

| **WARDEN OR DESIGNEE OR MEDICAL SIGNATURE AUTHORITY:**  This grievance involves an offender protection request or allegations of Harassment or Retaliation from staff. |
| --- |
| ☐ No Action Warranted     ☐ Refer to the OIG *(For use only with Harassment/Retaliation)*     ☐ Cell Change or Transfer |
| ☐ Protective Custody     ☐ Administrative Action |
| **Signature:**_____     **Title:**_____     **Date:**_____ |

This grievance is being processed in an effort to resolve a problem through the established procedures identified in BP-03.77 and AD-03.82.  It is expressly prohibited to subject the grievant, other offenders, or staff to any form of reprisal for the use of these procedures.

Unit:_____   Staff Name:_____   Grievance #:_____   Date:_____

Offender Name:_____   TDCJ #:_____   Housing Location:_____

### Official Statement

In accordance with BP 03.77, you are required to participate in this investigation as noted.  Address each allegation thoroughly.  **Do not respond with indefinite answers such as "I don't know" or "I have no knowledge of".**  If you have no knowledge, explain the reason why.  (e.g., I was on vacation; I was not assigned there, etc.)  Your answers are to be factual, professional, and complete.  Do not include opinions or unrelated comments.  Remember, the Executive Director, Office of the Inspector General (OIG), Attorney General's Office and State and Federal Court Officials may review your response.  **All grievances are confidential and may not be discussed between you and the offender or with other individuals.**   You are expected to return this investigation within 10 working days of receipt.  Additional time may be requested by contacting the grievance investigator.  Sign and date the form in the designated locations when completed and return it to the Unit Grievance Office.  If you were provided a narrative copy of the grievance, it must also be returned to the Unit Grievance Office.  **The grievance may not be duplicated or shared with the accused staff member.**

### Please Provide the Following Documents

☐   **Participant(s) Statement**   _____

☐   **Witness(es) Statement (signed)**   _____

☐   **Activity Logs (Recreation, Shower, Feeding)**   ☐   **Other**   _____

☐   **Shift Roster**   ☐   **Staff or Offender Protection Investigation**

☐   **Ingress/Egress Log**   ☐   **Property Inventory Forms**

☐   **Property Confiscation Form**   ☐   **Property Logs**

**ALLEGATIONS:**_____

_____

_____

_____

_____


**OFFENDER INTERVIEW:**   Offender interviews and written statements should be completed on a separate document (Inter-Office Communication (IOC), legal pad) and attached to the OG-01 that includes the offender's statement, name, TDCJ #, and date.

**EMPLOYEE STATEMENT:**_____

_____

_____

_____

_____

_____

_____

_____


**PRINTED NAME**                                                                 **DATE**

**SIGNATURE**                              **RANK/TITLE**                **SHIFT/DEPARTMENT**

**SUPERVISORS COMMENTS:**_____

_____

_____


**PRINTED NAME**                                                                 **DATE**

**SIGNATURE**                              **RANK/TITLE**                **SHIFT/DEPARTMENT**

Offender Name: _____  TDCJ #:_____  Unit:_____  Grievance #:_____

## Emergency Checklist

An Emergency complaint is defined as any matter (past or present) for which disposition within regular time limits would subject the offender to substantial risk of personal injury or cause other serious or irreparable harm.

The following checklist may be used to determine if the matter presented in the complaint should be processed as an emergency or otherwise given priority attention.  It is imperative that the following questions be answered as fairly, impartially and objectively as possible.  If the answer is "yes" to any of these questions, the complaint should be processed as an emergency/priority in accordance with agency policy.

If the complaint is determined not to be an emergency, it may be processed as a regular complaint.  This checklist must be maintained with the grievance in the offender's file (subject to record retention requirements).

1.  **Does the allegation describe an incident of sexual abuse (sexual contact) or sexual assault (penetration by any means) without that person's consent?**

    ☐ YES          ☐ NO

2.  **Does the allegation describe an unreported use of force or any physical contact that would present a substantial risk to the offender, irreparable harm, or place the offender in serious danger?**

    ☐ YES          ☐ NO

3.  **Does the allegation describe a situation, or a specific threat by a staff member or another offender that would present a substantial risk to the offender, cause irreparable harm, or place the offender in serious danger?**

    ☐ YES          ☐ NO

4.  **Does the allegation describe a situation that would present a substantial risk to the offender, irreparable harm, or place the offender in serious danger?**

    ☐ YES          ☐ NO

5.  **Does the allegation involve the denial of a program, activity or treatment that would present a substantial risk to the offender, cause irreparable harm, or place the offender in serious danger?**

    ☐ YES          ☐ NO

I have thoroughly reviewed the information that was provided to me.  All of the answers given to the above questions are true and correct to the best of my knowledge.

_____          _____          _____
Printed Name of Reviewer                          Signature of Reviewer                            Date

Offender Grievance/Ombudsman/Office of the Inspector General

**OG-004 11/2010**                                                                    **Appendix I**

**FACT SHEET FOR OIG INVESTIGATION**

| Section I.    Grievance Information |
|---|

***Instructions:*** *Upon receipt of a grievance alleging sexual assault, sexual abuse, excessive or unreported use of force, or harassment/retaliation for exercising access to courts, the Grievance Investigator (UGI) shall complete Section I, and forward a copy of the grievance along with the Fact Sheet to the Regional Grievance Supervisor (RGS) for Step 1 grievances and a Central Grievance Office Supervisor (CGOS) for Step 2 grievances.*

Offender Name: _____   TDCJ #: _____   Grievance #: _____

Alleged incident:   Date: _____   Time: _____; Unit; _____   Location; _____

What were the employee's alleged actions? 
_____
_____

Other staff/offenders alleged to be involved:

| Participant | Witness | Name: | Shift/Title | Social Security/Offender ID # |
|---|---|---|---|---|
| ☐ | ☐ | 1. | | |
| ☐ | ☐ | 2. | | |
| ☐ | ☐ | 3. | | |
| ☐ | ☐ | 4. | | |
| ☐ | ☐ | 5. | | |
| ☐ | ☐ | 6. | | |

**M**edical:_____

**U**OF:_____

**D**isciplinary:_____

**G**rievance:_____

UGI *Printed Name:* _____          *Signature/Date:* _____

| Section II.    Review by Regional or Central Grievance Office Supervisor |
|---|

***Instructions:***        *The RGS or CGOS shall review the grievance and Fact Sheet, sign, date, and forward to the designated OIG Regional Supervisor (Regional Office for Step 1 or Huntsville OIG Huntsville Office for Step 2).*

RGS *Printed Name:* _____          *Signature/Date:* _____

| Section III.    Review by OIG Supervisor |
|---|

***Instructions:***        *Upon review of the grievance, support documentation, and Fact Sheet, the OIG Supervisor shall make a determination and check the appropriate box (a, b or c).  Sign and return a copy of the grievance and the Fact Shee' to the RGS or CGOS, as appropriate.*

a.   ☐    OIG case #_____ assigned.

b.   ☐    Insufficient evidence to open an OIG investigation; or

c.   ☐    Recommend further review by warden for possible PD-22 violations.

OIG Supervisor *Printed Name:* _____          *Signature/Date:* _____

| Section IV.    Processing (Step 1) |
|---|

*RGS Received Printed Name:* _____          *Signature/Date:* _____

***Instructions:*** *The RGS shall review the OIG decision, check the appropriate guidance below, and forward the grievance and Fact Sheet to the UGI for final processing.*

a.   ☐    Formulate a response for Warden's signature and complete the Step 1 grievance process (*when the OIG supervisor checks the 'a or b' box above*).

b.   ☐    Review the grievance and Fact Sheet with Warden for any action deemed appropriate.  Once the review is completed, formulate a response for the Warden's signature and complete the Step 1 grievance process (*when the OIG supervisor checks the 'c' box above*).

UGI *Received Printed Name:* _____          *Signature/Date:*_____

Warden *Printed Name:*____          _____          *Signature/Date:*_____

| Section V.    Processing (Step 2) |
|---|

*CGO Received Printed Name:* _____          *Signature/Date:* _____

***Instructions:***        *The CGO shall review the OIG decision and check the appropriate guidance below:*

a.   ☐    Formulate a response for signature and complete the grievance process (*when the OIG supervisor checks the 'a or b' box above*).

b.   ☐    Forward a copy of the grievance and Fact Sheet to the UGI for review with Warden for appropriate response.  Coordinate with the UGI to formulate a response for the Step 2 grievance and complete the grievance process (*when the OIG supervisor checks the 'c' box above*).

*Grievance Investigator Received Printed Name:*____          _____          *Signature/Date:* _____

OG-009  (11/2010)                                                                                                                **Appendix J**

**Appendix J**

# Disciplinary Worksheet and Document Checklist

*This form **must** be used in combination with the OG-01 Grievance Worksheet*

Offender Name: _____ TDCJ #: _____ Grievance #: _____

Disciplinary Case #: _____  ☐ **MAJOR**   ☐ **MINOR**

---

☐ I-47 MA      ☐ I-210 (Front and back)   ☐ CS 09          ☐ Outpatient Mental Health Services
☐ I-47 MI      ☐ I-217                    ☐ CS 10-11 A and B    Disciplinary Case Review
                                          ☐ CS 12          ☐ CS 14 (if applicable)

---

Offender Plea:   ☐ Guilty        ☐ Not Guilty      ☐ None

| | |
|---|---|
| Was the disciplinary tape reviewed? | ☐ Yes  ☐ No  ☐ N/A (Minor)  Disciplinary Tape #_____ |
| Was the offender served with notice of charges within 30 days of the date of discovery of offense? | ☐ Yes  ☐ No  _____ |
| If no to the above, was an extension approved/attached? | ☐ Yes  ☐ No  _____ |
| Did the offender receive 24-hour notice prior to the hearing? | ☐ Yes  ☐ No  _____ |
| Did the offender waive the 24-hour notice? | ☐ Yes  ☐ No  _____ |
| Was hearing held within 20 days after notice service? | ☐ Yes  ☐ No  _____ |
| If no, to the above, was an extension approved/attached? | ☐ Yes  ☐ No  _____ |
| Was an Interpreter requested/required at the hearing? | ☐ Yes  ☐ No  ☐ N/A _____ |
| Was offender present at the hearing? | ☐ Yes  ☐ No  _____ |
| Did the CS/offender make a statement at the hearing? | ☐ Yes  ☐ No _____ |
| Did the CS/staff/offender statement refute the charge? | ☐ Yes  ☐ No  (If yes, indicates if non-frivolous rule is activated) |
| Was the charging officer requested at the hearing? | ☐ Yes  ☐ No  _____ |
| Was charging officer present at the hearing? | ☐ Yes  ☐ No  _____ |
| Were offender/staff witnesses requested? | ☐ Yes  ☐ No  _____ |
| Were offender/staff witnesses present? | ☐ Yes  ☐ No  _____ |
| Was the offender allowed to submit documentary evidence at the hearing? | ☐ Yes  ☐ No  _____ |
| If so, did the evidence refute the charge? | ☐ Yes  ☐ No  _____ |
| Were witness statements, lab reports (drug related cases), medical records if appropriate, presented as evidence? | ☐ Yes  ☐ No  _____ |
| Did either staff or offender testimony refute the charge? | ☐ Yes  ☐ No  _____ |
| Does a preponderance of the evidence presented justify the finding of guilt or innocence, and any disciplinary sanctions imposed? | ☐ Yes  ☐ No  _____ |
| Was the punishment consistent with the guidelines established in the Disciplinary Rules and Procedure? | ☐ Yes  ☐ No  _____ |

**Notes:** _____
_____
_____
_____

Completed By:   Signature: _____   Date: _____

Printed Name: _____   Title: _____

**Appendix K**

Offender Name: _____ TDCJ #: _____ Unit: _____ Grievance #: _____

## Documents and Forms Required for Investigation of Medical Grievances
### The following forms and documentation are generally required for grievance investigations.

| | | Date | | Name & Title | |
|---|---|---|---|---|---|
| 1 | Unit Grievance Investigator forwards the original grievance, or a copy for multiple issue medical grievances, the OG-01 worksheet, and **page 1 of this checklist** to the Medical Department. | | | | |
| 2 | Unit Practice Manager/Health Administrator, or Director of Nursing/Nurse Administrator reviews issues, routes to responsible party and compiles the following paperwork: | | | | |
| 2(a) | Supporting documentation from the medical record | Y | N | N/A | Comments |
| | • Provider/Nursing/Clinic Notes | | | | |
| | • Refusal forms | | | | |
| | • Sick Call Requests/Sick Call logs | | | | |
| | • Master Problem List | | | | |
| | • X-ray reports | | | | |
| | • Specialty clinic notes | | | | |
| | • Lab reports | | | | |
| | • PULHES/HSM-18 | | | | |
| | • Passes-medication/medical issue items (braces, crutches, shoes, etc.) | | | | |
| | • Dental records | | | | |
| | • Mental health records | | | | |
| | • Treatment flow sheets | | | | |
| | • Lay-in lists | | | | |
| | • Security Logs | | | | |
| | • Compliance reports | | | | |
| | • Discharge summaries | | | | |
| | • Release of Information-Hospital Galveston only | | | | |
| | Provide other written records required to offer proof of provision of services. All persons participating in clinical and non-clinical services to offenders are bound by the same rules of confidentiality and shall not be excluded from viewing such records necessary to complete the review/appeal process. | | | | |
| 2(b) | Copies of all signed statements from medical/dental/mental health staff who are specifically named in the Step 1 Grievance. | | | | |
| 2(c) | Individual medical/dental/mental health discipline manager/designee findings & recommendations. | | | | |
| 2(d) | Informal resolution attempted by the offender through the Facility Medical Complaints Coordinator before the Step 1 Grievance was filed. | | | | |
| 3 | Sign and forward all compiled Health Services documentation and statements to the Grievance Investigator. | | | | |
| 4 | Received by the Unit Grievance Investigator signature. | | | | |

*\* The Unit Grievance Staff is responsible for obtaining non-medical statements and forwarding all investigative documents to the Central Grievance Office in Huntsville, if a Step 2 Offender Grievance is filed.*

**Appendix L**

Steps 2(a) through (d) will be needed on every Step 2 Grievance.  Each Facility Medical Department has a Complaints Coordinator who maintains a database of informal attempts at resolution and on Step 1 Grievances.

On Step 2(a), the following information is provided to help delineate the amount and type of records required from the medical record.

1. Infirmary issues - Definition of an infirmary is an in-patient facility that has beds for offenders requiring definitive treatment that cannot be performed in an outpatient clinic.  (e.g., IV's, oxygen bottles, 24-hour observation and nursing care).

    a. Documentation required – Inpatient records, which includes, provider orders, integrated progress notes, medication administration sheets, vital sign flow sheets, lab reports, x-ray reports and discharge summaries.

2. Hospital admissions, specialty clinic issues.

    a. Documentation required – EMS Reports if the offender was transferred via EMS, admission report, inpatient records as noted above, Specialty Clinic notes, and discharge summaries.

**Appendix L**

| Step 1 | | Grievance # | Offender Name | TDCJ # | Unit |
|---|---|---|---|---|---|
| Step 2 | | | | | |

*(Check which box applies (Step 1 or Step 2)*



Texas Department of Criminal Justice
**NOTICE OF EXTENSION**
Offender Grievance Office

In accordance with the procedures outlined in BP-03.77, "Offender Grievances," and AD-03.82, "Management of Offender Grievances,", you are hereby notified that additional time is necessary to complete the investigation of your:

**Step 1 Grievance:** (*check the applicable box*)

☐ An additional 30 days is needed for appropriate response to your disciplinary appeal.

☐ An additional 40 days is needed for appropriate response to your grievance.

**Step 2 Grievance**: (*check the applicable box*)

☐ An additional 30 days is needed for appropriate response to your disciplinary appeal.

☐ An additional 35 days is needed for appropriate response to your Step 2 grievance.

☐ An additional 35 days is needed for appropriate response to your medical multiple issue grievance.

☐ An additional 45 days is needed for appropriate response to your medical Step 2 grievance.

_____        _____
Name and Title                                              Date

**Original – Send to the Offender**
Copy – Attach to the Grievance

**Appendix M**

# PROPERTY SETTLEMENT AGREEMENT

I, _____, TDCJ # _____, do voluntarily accept the below listed items as full settlement of the property claim submitted in Grievance/Claim # _____.   By acceptance of these items, I agree to no longer hold the Texas Department of Criminal Justice liable, past, present or future, for the property mentioned in the above stated claim.   I also hereby agree to abandon all claims against the Texas Department of Criminal Justice and all persons for any damages arising from the loss or damage.

**Items offered as Settlement**

_____     _____
_____     _____
_____     _____
_____     _____


_____                       _____
Date                                  Offender Signature
                                      _____
                                      TDCJ #
Witnessed By:
                                      _____
_____      _____
Printed Name                          Signature

_____      _____
Printed Name                           Signature

**Appendix N**

**Texas Department of Criminal Justice**
**Inter-Office Communication**

**To:**   Property Claim File              **Date:**   _____
#_____

**From:**  Offender_____   **Subject:**  Monetary Reimbursement
TDCJ #_____                 Agreement Form
Unit   _____

I, _____, TDCJ# _____,
do hereby voluntarily agree to accept $_____ as full settlement of Property Claim
#_____.  By acceptance of the above, I agree to no longer hold the
Texas Department of Criminal Justice liable, past, present or future, for the property mentioned
in the above stated claim.  I also hereby agree to abandon all the claims against the Texas
Department of Criminal Justice and all persons for any damages arising from the loss or damage.
I understand that the amount to be reimbursed will be deposited directly into my Trust Fund
Account.

_____              _____
   Date                                        Claimant's' Signature

                                              _____
                                              Claimant's Social Security Number

WITNESSED BY:

_____        _____
Print Name                              Signature

_____        _____
Print Name                              Signature

**Appendix O**



## TEXAS DEPARTMENT OF CRIMINAL JUSTICE
### Offender Grievance Office
_____Unit

**DATE:** _____

**TO:**      *(Check one)*

☐    _____, Unit Use of Force Coordinator
        *(Print Name)*

☐    _____, Regional Grievance Supervisor
        *(Print Name)*

☐    _____, Administrative Monitor for Use of Force
        *(Print Name)*

**FROM:** _____, Unit Grievance Investigator
        *(Print Name)*

**RE:**     Offender_____ TDCJ# _____
                *(Print Name)*


The above reference offender has submitted the attached grievance # _____ that pertains to a use of force incident documented in Report # _____ that occurred at the _____ Unit.  Please ensure the grievance is included for review with the use of force report.


cc:    File
        Attachment

**Appendix P**

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE
## Records Disposition Log

Once records have been maintained for the required amount of time, as specified in the Records Retention Schedule, they shall be prepared for final disposition.  Final disposition will either be the destruction of records, or the transfer of records to the State Archivist for review and/or further archiving.  Upon disposition, the information below must be completed for each record series and a copy returned to:

TDCJ Records Management Officer
Executive Services

U.S. Mail:                                    Truck Mail:
P.O. Box 99                                  TDCJ Headquarters Complex
Huntsville, TX 77342-0099          Huntsville

| Records Series Title | Agency Item No. | Retention Period | Dates of Records/ Additional Description | Disposition | Signature Authorizing Disposition | Disposition Date |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Submitted by: _____   Unit/Department/Division Name: _____

Warden/Department Head: _____   Phone #: (___)_____   Date Submitted: _____



**TEXAS DEPARTMENT OF CRIMINAL JUSTICE**
**OFFENDER GRIEVANCE**
**STAFF USE OF SLURS OR HOSTILE EPITHETS**
**Referral Form**

_____

*(Location:  Unit, Regional Office, or Central Grievance Office [CGO])*

**Instructions:**  **A referral regarding allegations of staff Use of Slurs/Hostile Epithets (PD-22, 14b.)  may be identified at any time during an offender grievance investigation.  When it is determined that a referral is required, Offender Grievance investigators shall inform the warden; complete this notification form; acquire a signature; and fax a copy of the grievance and staff statements to the Employee Relations Intake Department in Huntsville for TDCJ employees, or the appropriate department for contract employees at the number listed below (_treatment program contract employees are also referred to the Private Facility Contract Monitoring and Oversight Division (PFCMOD)_).**

**Human Resources information regarding employees is confidential; therefore, this form will serve as notice that a referral was made as required by policy.  The information listed below regarding the referral is the only documentation that is to be included with an offender grievance.**

Offender: _____   TDCJ #: _____   Grievance #: _____

           *Print Name*

Information regarding the possible use of racial slurs and/or hostile epithets by staff is contained within the above listed offender grievance form.  The information was referred on _____ to:

                                                                          *Date*

*(Check the applicable box)*                    **Telephone**        **Fax**

☐      Employee Relations Intake Department – TDCJ Employees        936-437-4240        936-437-3105

☐      PFCMOD Headquarters Office – PF Employees        936-437-7172        936-437-2873

☐      Rehabilitation Programs – Treatment Employees (e.g., SATP)        936-437-7172        936-437-2873

☐      Office of Professional Standards – UTMB/Texas Tech Employees        936-437-3533        936-437-3659

☐      Windham School District General Counsel – WSD Employees        936-291-5304        936-437-3105

_____
*Warden or Designee, Regional or CGO Printed Name*

_____
*Warden or Designee, Regional Staff or CGO Signature*

**Appendix R**



**NEW EMPLOYEE TRAINING VERIFICATION**
**ADMINISTRATIVE REVIEW & RISK MANAGEMENT**
**OFFENDER GRIEVANCE**

**Instructions:**  Complete this form at the conclusion of initial training for each new employee in Unit Grievance Offices, Regional Grievance Offices and the Central Grievance Office.  Training is required within 30 days of each employee's selection date.  For those employees required to attend the Training Academy, provide the dates of attendance, mark N/A if the employee was not required to attend.  Training is then required within 30 days from the date the employee reported to the grievance office.  Staff may be required to take accrued time after the conclusion of the academy.  Unit grievance staff will forward the original completed form to the Regional Grievance Supervisor who will maintain the form in a file.  The Regional Grievance Supervisor will submit a copy to the Central Grievance Office by the fifth of each month for those employees whose training has been completed.

**Position Selection Date:**            _____

**Training Academy Dates:**            _____

**Position Report Date:**            _____

**Training Date(s)**            _____

**Training Instructor(s)**            _____

                          _____

I _____  have received training regarding the
                 *Print Name*

  ➢    Offender Grievance Operations Manual (OGOM)
  ➢    GR00 Tracking System
  ➢    TDCJ Mainframe

_____            _____
**Signature**                                      **Date**

_____            _____
**Position Title**                                  **Unit**

**Appendix S**



**ADMINISTRATIVE REVIEW & RISK MANAGEMENT**
**OFFENDER GRIEVANCE OPERATIONS MANUAL**
**EMPLOYEE VERIFICATION**

I _____ have read the *Offender Grievance Operations*

               *Print Name*

*Manual* (OGOM) and understand the procedures for processing grievances and entering data into the GR00 Case Tracking System.


_____        _____
**Signature**                                                         **Date**


_____        _____
**Position Title**                                                   **Unit**

**Appendix T**